

A national public interest law firm defending life, family and religious liberty.

August 26, 2022

Hon. Philip M. Halpern
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re: **Jane Doe, et al. v. County of Westchester, et al.**
**Case No. 7:22-cv-6950 PMH**

Dear Judge Halpern:

For the reasons more amply explained in the supporting Memorandum of Law, Plaintiffs intend to file a motion for preliminary injunction against the challenged provisions of Chapter 425 of the Laws of Westchester County, which blatantly infringes on numerous First Amendment protections for Plaintiffs' pro-life sidewalk counseling and advocacy. The Supreme Court has recognized that government regulations that restrict pro-life "sidewalk counseling," including "normal conversation and leafletting on a public sidewalk," "impose[] an especially significant First Amendment burden," *McCullen v. Coakley*, 573 U.S. 464, 488-89 (2014), and that laws regulating such speech must give "adequate breathing space to the freedoms protected by the First Amendment," *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 768 (1994).

Yet, three days after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), the Westchester County Board of Legislators adopted via Chapter 425 *seven different restrictions* on pro-life speech on public sidewalks in the County. These restrictions contain nearly every Free Speech defect imaginable, and at least one also violates the Free Exercise Clause. All told, Chapter 425 brazenly chills pro-life sidewalk counseling and advocacy absent an injunction protecting the required "breathing space" to engage in such speech.

As background, Plaintiffs Jane Doe and Sally Roe are two longtime pro-life sidewalk counselors and advocates who regularly pray and engage in pro-life speech outside Planned Parenthood facilities in Westchester County. They are both religiously motivated by their Catholic faith, and they both engage in

the sort of one-on-one conversational speech and leafletting restricted and chilled by Chapter 425, as well as holding pro-life signs, and (in Sally Roe's case) passing "Blessing Bags" containing food, other items, and pro-life literature to persons approaching or leaving Planned Parenthood facilities. However, because of Chapter 425's seven-pronged clamp-down on speech outside such facilities Plaintiffs have entirely ceased their pro-life sidewalk counseling and advocacy in Westchester County.

Chapter 425 expressly relies on the supposed authority of *New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021) (*Griepp I*), which held that the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, applies to pro-life speech that could be deemed even minimally "obstructive," including: leafletting that causes a "one second" delay; holding a large sign that partially takes up an empty sidewalk; touching a car while talking with the driver; preaching about the finitude of life; and making "de minimis" contact with another person on a sidewalk outside of an abortion facility. The Legislative Committee Memorandum directly quotes *Griepp I*'s conclusion that the fact "sidewalk counseling constitutes a legitimate First Amendment activity is *irrelevant* when" after "a patient makes an explicit *or implicit* request to be left alone." (Cmte. Mem. at 7, quoting *Griepp I*, 991 F.3d at 121.)[1]

*Griepp I* included a dissent from Chief Judge Livingston criticizing the majority opinion as a brazen violation of the First Amendment. Upon a petition for rehearing or rehearing en banc, only weeks later, the *same panel entirely vacated its own decision* in *Griepp I*, *Griepp II*, 997 F.3d 1258 (2d Cir. 2021), ultimately upholding the district court's determination that FACE did not apply to the kind of pro-life speech and expressive conduct mentioned above. *Griepp III*, 11 F.4th 174, 176 (2d Cir. 2021).

Yet in June 2022, Pace Law School Professor Emily Waldman publicly advised the Legislative Committee that *Griepp I* is still *good law*, claiming that only a "piece of this decision" was later vacated

---

[1] All emphasis in this letter is added.

309 W. Washington Street | Suite 1250 | Chicago, IL 60606 | P: 312.782.1680 | thomasmoresociety.org
*"Injustice anywhere is a threat to justice everywhere."* - Dr. Martin Luther King

by a "different panel" while its analysis of "First Amendment" issues remains valid. In reality, Chapter 425 is based on a legal nullity.

Chapter 425's seven challenged provisions are the following:

**1. "Bubble Zone" restriction**, prohibiting anyone from knowingly "approaching" another person within eight feet "for the purpose of passing any material item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with" the person, within a 100-foot radius from the door of a reproductive health care facility. § 425.31(i).

**2. Prohibition of "Following and harassing"** another person within 25 feet of a reproductive health care facility or its parking lots, § 425.31(c), with "**harass**" defined to include (based on the vacated *Griepp I* decision) speech that "**seriously annoy[s]**" another and "**continue[s] after an express or *implied* request to cease has been made**." § 425.21(c). During an open meeting on June 6, 2022, County legal counsel advised the Board that the meaning of "implied request to cease" "will be up to a court to determine," based on "whatever evidence you present to a court"; and other counsel further advised that "[w]hen you're walking down the street and people are *handing out leaflets . . .* and you ignore that person, that's implied, 'Leave me alone.'" (Verified Complaint §§ 131-132)

**3. Prohibition of "interference" simpliciter**, prohibiting knowing "interference with the *operation* of a reproductive health care facility, or attempt to do the same," § 425.31(h). "**Interfere with**" is defined to mean even merely causing another "to stop" "through *deceptive means or otherwise*." § 425.21(d).

**4.-6. Prohibition of "physical obstruction" or "force,"** prohibiting knowingly "physically obstruct[ing] or block[ing] another person" from obtaining reproductive health care services, § 425.31(a), with "**physical obstruction**" defined far more broadly than a similar provision in the federal FACE Act, *compare* § 425.21(h) *with* § 18 U.S.C. § 248(e)(4); and prohibiting the overly broadly defined "physical obstructing or blocking" even as to a mere *"attempt"* to "**interfere with**" another "*in order to discourage*"

3

them from aborting their unborn children. § 425.31(e)&(f). *Griepp I* held that the term "force" in FACE means even "de minimis" contact. *Griepp I*, 991 F.3d at 124.

**7. Prohibition of "attempt[ing] to" place another in "reasonable fear of physical harm**," § 425.31(d), which, interpreted in light of *Griepp I*, plausibly applies to mere preaching about "the fragility of life." *Griepp I*, 991 F.3d at 115.

This Court should preliminarily enjoin these provisions because Plaintiffs are likely to succeed on the merits, are suffering irreparable harm without an injunction, and the public interest weighs in favor of an injunction.

**A. Plaintiffs are likely to succeed on the merits because**:

1. *They have pre-enforcement standing* as their conduct is arguably affected with a constitutional interest, arguably proscribed by the statute, there is a credible threat of enforcement in light of Chapter 425's plain terms and County legislators' statements on the record and reliance on *Griepp I*; and, alternatively, Plaintiffs' speech is already being objectively chilled.

2. *The challenged provisions are unconstitutionally vague* on their face and as-applied because they fail to provide adequate notice of what is prohibited (including whether Plaintiffs' speech is prohibited) and authorize arbitrary enforcement by prohibiting speech that "seriously annoys" and continues after an "implied request to cease"; causes someone to stop "through *deceptive* means *or otherwise*"; "physically obstructs" by even "hinder[ing]" or "imped[ing]"; and conduct that "attempts to" "intimidate" or place another in reasonable fear of physical harm—all construed in light of *Griepp I*'s broad and erroneous interpretation of similar terms.

3. *The provisions are overbroad* because by their plain terms and as further interpreted under *Griepp I*, they sweep in a substantial amount of protected speech, such as leafletting that causes minimal delay or can be deemed "deceptive," continuing to speak after an "implied request to cease," etc.

4

4. *They are content-based regulations of speech* because they regulate speech based on: (a) its subject matter of "reproductive health care facilities"; (b) its "function or purpose" (i.e., "counseling," "discouraging" abortion, etc.); (c) its communicative impact, including if it "seriously annoys"—with Chapter 425's legislative history demonstrating that the legislators view pro-life sidewalk advocacy as "seriously annoying" by its very nature, and that they exhibit an express enmity toward such speech.

These restrictions also fail strict scrutiny because such government interests are not a legitimate basis for restricting speech, and existing laws already ensure clinic access.

5. *They would fail intermediate scrutiny* even if they were content-neutral, for the reasons discussed above—and because they are not narrowly tailored to the supposedly "precipitating event" for the Act: a non-violent "Red Rose" sit-in in November 2021 for which several pro-lifers were arrested and later convicted, under existing law, for trespassing inside an abortion facility in Westchester County.

6. *The "Bubble Zone" also violates the Free Exercise Clause* because it allows entering the bubble for all kinds of secular-variety speech that could delay access to an abortion clinic, but not for Plaintiffs' religiously motivated, pro-life "protest, education, or counseling."

**B. Irreparable Harm and Public Interest**: Chapter 425's chilling of First Amendment rights is a per se irreparable harm, and protecting First Amendment rights is always in the public interest.

          Respectfully submitted,
          s/Christopher A. Ferrara
          Christopher A. Ferrara
          Special Counsel – Thomas More Society
          148-29 Cross Island Parkway
          Whitestone, Queens, New York 11357
          Telephone: 718-357-1040
          cferrara@thomasmoresociety.org
          *Counsel for Plaintiffs*

c:  Fredrick Sullivan  (counsel for County defendants)
    Brian Powers (counsel for City of New Rochelle)
    John Callahan (counsel for the City of White Plains)

309 W. Washington Street | Suite 1250 | Chicago, IL 60606 | P: 312.782.1680 | thomasmoresociety.org
*"Injustice anywhere is a threat to justice everywhere."* - Dr. Martin Luther King