

**George Latimer**
**County Executive**

**John M. Nonna**
**County Attorney**

September 13, 2022

Hon. Philip M. Halpern, U.S.D.J. (*Via ECF*)
The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas Street, Room 530
White Plains, NY 10601

Re:   ***Doe, et al. v. County of Westchester, et al.*, 22-cv-06950 (PMH)**

Dear Judge Halpern:

I am the County Attorney for the County of Westchester (the "County"), counsel for the County, George Latimer, the County Department of Public Safety, and Terrance Raynor (collectively, "County Defendants") in the above-referenced action. I write to oppose Plaintiffs' request to move for a preliminary injunction, because Plaintiffs cannot demonstrate a likelihood of success on the merits regarding any of their claims.

I.      **Background**

On June 27, 2022, the County enacted Local Law No. 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities" (hereafter, "Chapter 425"). Chapter 425 was a response to conduct occurring near reproductive healthcare clinics in the County that exceeded the bounds of protected First Amendment expression—for instance, blocking facility entrances; pushing past staff; and throwing objects at patients. By its express terms, Chapter 425 targets threatening, harassing, violent, fraudulent, and physically obstructive conduct, and is modeled after several federal, state, and municipal laws that have been upheld by various courts. The only section that implicates protected First Amendment activities at all—Section 425.31(i)—is a content-neutral time, place, and manner regulation, grounded in Supreme Court precedent.

Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601          Telephone: (914)995-2660  Website: westchestergov.com

Plaintiffs, two self-described anti-abortion "sidewalk advocates and counselors," challenge Chapter 425 as invalid on its face and as-applied under the First and Fourteenth Amendments, alleging that their freedoms of expression and religion have been "chilled." Compl. ¶¶ 1, 27, 32, 34, 43. These sweeping challenges are based on a misunderstanding of Chapter 425 and a misapprehension of the controlling case law. Plaintiffs, and anyone else, can speak, leaflet, practice religion, and express themselves outside of reproductive health care facilities in Westchester County, subject to a single, modest "place" regulation, as set forth below.

## II.     The County's Clinic Access Law Is Constitutional

### A.     Chapter 425 Is Content-Neutral and Subject to Intermediate Scrutiny

As an initial matter, Plaintiffs' assertion that the law is subject to strict scrutiny because it applies to "reproductive health care facilities" is wrong. Controlling here, the Second Circuit has already analyzed and rejected this very "content-based" challenge to the Freedom of Access to Clinic Entrances Act ("FACE")—the federal law that similarly applies to reproductive health care facilities, and from which certain County law provisions were drawn. *See United States v. Weslin*, 156 F.3d 292, 296-97 (2d Cir. 1998) ("FACE prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators" and "applies . . . at a clinic in which patients are encouraged not to have abortions"); *see also McCullen v. Coakley*, 573 U.S. 464, 479-86 (2014) (deeming law creating buffer zones around reproductive health care clinics content-neutral).

Chapter 425 is likewise content-neutral, and therefore must be narrowly tailored to a significant government interest. *See McCullen*, 573 U.S. at 486 (setting forth intermediate scrutiny test); *Weslin*, 156 F.3d at 297 (same). Binding precedent holds that the County's stated interests in ensuring public safety and protecting access to reproductive health care, among others, are valid, significant interests, unrelated to the suppression of free expression. *See McCullen*, 573 U.S. at 486; *Weslin*, 156 F.3d at 297-98. Chapter 425 is also narrowly tailored to these interests: it proscribes conduct that is

not protected by the First Amendment, like true threats. And subject to a single "place" regulation—the 8-foot bubble zone, discussed immediately below—individuals may engage in protected expressive conduct by displaying signs, leafleting, shouting, or speaking conversationally.

**B.  The Eight-Foot Bubble Zone Is a Supreme Court–Approved "Place" Regulation**

Section 425.31(i)'s eight-foot no-approach zone is modeled after, and nearly identical to, the Colorado statute upheld by the U.S. Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). That statute created a 100-foot buffer zone around entrances to all healthcare facilities, in which a person could not knowingly approach within eight feet of a person, without that person's consent, for the purpose of "passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Id.* at 707 & n.1. Like Plaintiffs here, the *Hill* Plaintiffs were anti-abortion "sidewalk counselors" who argued that the law was (i) content-based because—and as Plaintiffs here also argue—the statute specifically regulated "oral protest, education, or counseling"; (ii) overbroad; and (iii) vague. *Id.* at 708-709. The Supreme Court rejected each challenge, holding that the law was a narrowly tailored content-neutral time, place, and manner restriction.  *Id.* at 724-735.

*Hill* is directly on point and binding here, and this Court must follow *Hill* unless and until the Supreme Court overturns it. *See, e.g.*, *United States v. Quinones*, 313 F.3d 49, 69 (2002) (explaining that U.S. Circuit Courts must adhere to U.S. Supreme Court precedent); *see also Price v. City of Chi.*, 915 F.3d 1107 (7th Cir. 2019) (relying on *Hill* in upholding a Chicago bubble-zone ordinance). In any event, Plaintiffs vastly overstate the effect of section 425.31(i). Individuals can easily hear conversational voices and view signs from eight feet away. *Hill*, 530 U.S. at 729. Plaintiffs could stand close to the entrances of reproductive health care facilities and, without physically approaching individuals entering the facility, offer leaflets—even from a few inches away. *See id.* at 729-30. Under Chapter 425, an individual entering a clinic cannot create a violation by approaching a protester, meaning that a stationary protestor need not move away.

Finally, the eight-foot bubble does not violate the Free Exercise Clause. The Supreme Court

has held that laws incidentally burdening religion are not ordinarily subject to strict scrutiny, as long

as they are neutral and generally applicable. *Employment Div. Dep't of Human Res. of Ore. v. Smith*, 494

U.S. 872, 879-80 (1990). Here, Chapter 425 is content-neutral and generally applicable; therefore, its

application must be upheld even if the law "proscribes" acts that Plaintiffs' religion "prescribes." *Id.*

### C.  The "Follow and Harass" Provision Does Not Reach Pure Speech

Plaintiffs also challenge section 425.31(c), which makes it unlawful to "knowingly follow and

harass another person within twenty-five (25) feet of (i) the premises of a reproductive health care

facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility,"

based on the definition of "harass" in section 425.21(c). This "follow and harass" prohibition is nearly

identical to that in New York City's clinic access law, N.Y.C. Admin. Code § 10-1003(a)(3), which the

Supreme Court expressly cited as a potentially viable alternative to the constitutionally infirm

Massachusetts law at issue. *See McCullen*, 573 U.S. at 491 (explaining that states might "consider an

ordinance such as the one adopted in New York City that . . . makes it a crime 'to follow and harass

another person within 15 feet of the premises of a reproductive health care facility'"). The County

crafted the follow-and-harass provision with that guidance, careful to include a definition of "harass"

derived from New York Penal Law § 240.26(3) and related case law interpretations.[1]

Plaintiffs' assertion that the anti-harassment provision is content-based because it "regulates

speech" that "seriously annoys" its listener is also misguided. The provision does not target pure

speech, and it includes the "follow" and "no legitimate purpose" constraints to ensure this result.

### D.  Provisions Relating to Physical Obstruction and Interference

---

[1] Plaintiffs argue that Chapter 425 is invalid because of the County's supposed reliance on a vacated Second Circuit decision—*Griepp*—which was mentioned in the committee report for Chapter 425. However, Plaintiffs' argument that this Court should render a decision based on a case name in a committee report is clear evidence that Plaintiffs cannot rely on the plain language of Chapter 425 or the controlling case law to support their claims.

Plaintiffs attack sections 425.31(a), (d), (e), (f), and (h), along with the corresponding section 425.31 definitions of "physically obstruct or block" and "interfere with," on overbreadth and vagueness grounds. Contrary to Plaintiffs' assertions, however, there is no material difference between Chapter 425's prohibitions and definitions and the FACE's (or New York State law's) prohibitions and definitions. Numerous courts have upheld the FACE—which also encompasses "attempts"—against similar challenges. *See, e.g., United States v. Dinwiddie*, 76 F.3d 913, 924 (8th Cir. 1996) (collecting cases). Although Chapter 425's definition of "interfere with" adds "to stop . . . through deceptive means or otherwise," the County included this language to specifically address individuals who gained entry to a reproductive health care facility under false pretenses—then facilitated the infiltration of numerous others, ultimately suspending the facility's operation for a period of time. Moreover, "interference" is not a violation on its own, as Plaintiffs insist. Rather, "interference" must be tied to other elements—like physical obstruction or stopping the operation of the facility—for a violation to occur. Ultimately, any vagueness or overbreadth concerns are resolved by the County law's definitions—which are rooted in other court-sanctioned statutes and case law—as well as the applicable "knowing" *mens rea*.

Chapter 425 is a content-neutral and tailored statute that comports with existing law. For the foregoing reasons, Plaintiffs' request to move for a preliminary injunction should be denied.

Thank you for Your Honor's attention to this matter.

Sincerely,

John M. Nonna
County Attorney

Cc:    Christopher A. Ferrara (via ECF)
       Brian Powers (via e-mail)
       John Callahan (via e-mail)

5