IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JANE DOE** and **SALLY ROE** (pseudonyms)<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br>**COUNTY OF WESTCHESTER**;<br><br>**GEORGE LATIMER**, Chief Executive of the County of Westchester, in his official capacity;<br><br>**COUNTY OF WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY**;<br><br>**TERRANCE RAYNOR**, acting Commissioner of the Westchester Department of Public Safety, in his official capacity;<br><br>**NEW ROCHELLE POLICE DEPARTMENT**;<br><br>**CITY OF WHITE PLAINS DEPARTMENT OF PUBLIC SAFETY,**<br><br>　　　　　　Defendants | Case No. 7:22-cv-6950 PMH |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................... 1

**ARGUMENT**……………………………………………………………………………………..3

    **I.   The unique facts of this case militate in favor of leave to proceed anonymously under the second, fifth, sixth, seventh, eighth, ninth and tenth *Sealed Plaintiff* factors**................ 2

        A.   Second, Fifth and Ninth factors: Plaintiffs have shown a risk of retaliatory physical or mental harm if their identities, which have no bearing on the volatile legal issues presented, are made public. ..................................................................................................................... 2

        B.   Sixth Factor: There will be no prejudice to the County Defendants from Plaintiffs proceeding anonymously as to the general public only, while the County Defendants are apprised of their identities............................................................................................................ 4

        C.   Seventh Factor: Plaintiffs' identities have thus far been kept confidential—as the County Defendants themselves complain. ................................................................................ 8

        D.   Eighth Factor: The public has only a gratuitous interest in knowing Plaintiffs' real names. ...................................................................................................................................... 8

        E.   Tenth Factor: Plaintiffs have proposed an alternative mechanism for protecting confidentiality. ..................................................................................................................... 10

**CONCLUSION** ..................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) ..................................................... 2, 3, 7, 10

*Does 1-2 v. Hochul*, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022)....................................... 5, 6, 10

*Doe v. McLellan*, 2020 WL 7321377  (E.D.N.Y. Dec. 10, 2020) .................................................. 4

*Doe v. Oshrin*, 299 F.R.D. 100, 101 (D.N.J.2014) .......................................................................... 6

*Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)..................................................................... 3, 4

*Free Speech v. Reno,* 1999 WL 47310 (S.D.N.Y. Feb. 1, 1999) .................................................. 3, 9

*Kolender v. Lawson,* 461 U.S. 352 (1982) ........................................................................................ 9

*N. Jersey Media Grp. Inc. v. Doe Nos. 1-5,* 2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012) .......... 4

*Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 277 (E.D.N.Y. 2015) ...................... 6, 10

*Roe v. Aware Woman Ctr. for Choice,* 253 F.3d 678 (11th Cir. 2001)...…………………….6, 10

*Sealed Plaintiff v. Sealed Defendan*t, 537 F.3d 185, 190 (2d Cir. 2008) .................................... 4, 5

**INTRODUCTION**

The County Defendants do not deny that only 45 days before this action was commenced, the home of Thomas J. Brejcha, head of the same public interest law firm providing representation to the Plaintiffs herein, was attacked by an angry mob of pro-abortion activists. As the doxing poster circulated by the "Reproductive Justice Union" before the attack declared, attorney Brejcha was targeted simply because he is "Founder, President and Chief Counsel of infamous conservative Catholic law firm Thomas More Society (TMS)", a "vast network of powerful lawyers" with "120 active cases in 28 states with offices in Chicago, Omaha and New York"— meaning the New York and Omaha offices, respectively, of the undersigned TMS attorneys handling this case under Brejcha's supervision.  *See* ECF No. 33 at 4 and Exhibit C thereto.

Defendants conceal the intimate connection of the attack on Attorney Brejcha's home to this case by misinforming this Court that the incident merely involved "the head of a legal organization that has taken on a national role in anti-abortion *politics*." Opp. Br., ECF 36 at 5 (emphasis added). This is the second time the County Defendants have resorted to this mischaracterization: "Plaintiffs cite harms to … the head of a legal organization that has taken on a national role in anti-abortion *politics*."  *See* ECF 16 at 2 (emphasis added).

The attack on Attorney Brejcha's home alone justifies these Plaintiffs' misgivings about their names being publicized in connection with the "infamous conservative Catholic law firm" that represents them. But there is more to the unique facts of this case that supports *limited* anonymity as to the public docket: a nationwide, clearly orchestrated wave of violence against pro-life organizations and individuals, including many incidents in New York State under the ominous slogans *"Open Season on Pro-Life"* and *"If abortion isn't safe, neither are you." See* ECF No. 33 and Exhibits J and T thereto.

The County Defendants quibble that Plaintiffs must show that sidewalk counselors in particular are being "doxed, or facing any violence or vandalism at their homes." Opp. Br. at 5, 6. As the County Defendants would have it, a violent mob's attack on the *home* of the very attorney heading the law firm that represents *sidewalk counselors*, including these Plaintiffs, is just "politics." The facts of this case are fully supportive of Plaintiffs' request for anonymity, as even the cases the County Defendants cite make clear.

## ARGUMENT

**I. The unique facts of this case militate in favor of leave to proceed anonymously under the second, fifth, sixth, seventh, eighth, ninth and tenth *Sealed Plaintiff* factors.**

**A. Second, Fifth and Ninth factors: Plaintiffs have shown a risk of retaliatory physical or mental harm if their identities, which have no bearing on the volatile legal issues presented, are made public.**

The core of Plaintiffs' case for anonymity is stated in one of the very decisions on which the County Defendants rely: "Where litigants risk public scorn or even retaliation if their identities are made public, *unpopular but valid complaints may not be pursued*…. Moreover, where a lawsuit is brought solely against the government and seeks to raise *an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process*." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006)(but Plaintiff made no claim of fear of retaliation)(cleaned up)(emphasis added).

What the *Del Rio* court describes is this case. In the same vein is a decision by Judge Mukasey in one of the cases *Del Rio* cites:

> [P]laintiffs satisfy the first factor … because they sue government entities…. [G]overnment entities… do not share the concerns about "reputation" that private persons have… when they are publicly charged with wrongdoing…. [B]ecause the particular plaintiffs in this constitutional challenge are essentially interchangeable

with similarly situated persons, there appears little public interest in which particular persons have actually sued….

*Free Speech v. Reno,* 1999 WL 47310, at *2-3 (S.D.N.Y. Feb. 1, 1999)(internal citation omitted)[1]

On this score, the County Defendants contrive elaborate factual scenarios of speculative difficulties in discovery, addressed below, but they concede that "it is likely that this action can be resolved purely as a matter of law…"—meaning little, if any, discovery. Opp. Br. At 10.

Also instructive on this point *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981), cited in *Del Rio*. There the Fifth Circuit reversed the trial court's denial of leave to proceed anonymously because the Plaintiffs were mounting an unpopular challenge to Bible reading in schools:

> [B]y filing suit, [plaintiffs] made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior. *Evidence on the record indicates that the Does may expect extensive harassment and perhaps even violent reprisals* if their identities are disclosed to a Rankin County community hostile to the viewpoint reflected in plaintiffs' complaint."  (emphasis added)

That, too, is this case: an unpopular lawsuit has been brought against a hostile county whose overwhelmingly "pro-choice" legislature (see Verif. Comp. at ¶ 138), has denounced the *Dobbs* decision and publicly characterized pro-life sidewalk advocates for their "horrific language" and a "gauntlet" of "in your face" advocacy the community must restrict because it represents "the full force and fury… of the First Amendment." *See*, *e.g.,* Verif. Comp., ECF 1 at ¶¶ 106 (a)-(h).

---

[1] For this reason, civil rights attorneys, including TMS counsel, have frequently been able to commence actions with pseudonymous summonses. *See e.g., Dr. A, et al., v. Hochul, et al.,* 1:21-cv-1009-DNH (N.D.N.Y.)(TMS case), Summons issued: ECF No. 2; *Jane Doe, et al. v. University of Colorado, et al.*, 1:21-cv-2637-RM-KLM (D. Colo.)(TMS case), Summons issued: ECF No. 5; *Air Force Officer v. Austin, et al.*, 5:22-cv-9-TES (M.D. Ga.)(TMS case), Summons issued: ECF No. 4; *Navy Seals 1-26, et al. v. Biden, et al*., 4:21-cv-1236-O (N.D. Tex.), Summons issued: ECF Nos. 6 and 7; *Colonel Financial Management Officer, et al. v. Austin*, et al., 8:22-cv-1275-SDM-TGW (M.D. Fla.), Summons issued: ECF No. 4.

3

Here there is evidence in the record of orchestrated attacks on pro-life organizations and individuals, including *the head of the very law firm representing Plaintiffs*, which the County Defendants airily dismiss as "distant events and generic fears." Opp. Br. at 5. But Plaintiffs have a well-founded fear of public "opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 180. Indeed, that opprobrium is precisely what animated the Westchester County Board of Legislators in adopting Chapter 425, which literally criminalizes Plaintiff's activity. Plaintiffs reasonably "may expect extensive harassment and perhaps even violent reprisals" because of their decidedly unpopular suit. *Id.*

None of the District Court cases the County Defendants cite, wherein leave to proceed anonymously was denied, has a fact pattern even remotely comparable to the unique one presented here. They all involve suits against private parties by plaintiffs whose identities had become known as well as concrete factual issues, and in three of them no real evidence of possible retaliation was even presented. *Doe v. McLellan*, 2020 WL 7321377, at *2 (E.D.N.Y. Dec. 10, 2020) (mere conclusory statements); *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5,* 2012 WL 5899331, at *6 (S.D.N.Y. Nov. 26, 2012)(blogger's own harsh rhetoric did not warrant anonymity); *Del Rio*, 241 F.R.D. at 161 (no claim of possible retaliation, but only emotional distress if name revealed).

In sum, under the unique facts of this case, Plaintiffs should be granted leave to proceed via pseudonym pursuant to *Sealed Plaintiff* factors (2), (5) and (9) due to a risk of retaliatory physical or mental harm, a challenge to government actions, and the purely legal issues involved. *Sealed Plaintiff*, 537 F.3d 185, 190 (2d Cir. 2008).

> **B. Sixth Factor: There will be no prejudice to the County Defendants from Plaintiffs proceeding anonymously as to the general public only, while the County Defendants are apprised of their identities.**

The only case Defendants cite which does have a comparable fact pattern, *Does 1-2 v. Hochul*, 2022 WL 836990 (E.D.N.Y. Mar. 18, 2022), accords with Plaintiffs' position that the County Defendants will not be prejudiced if they proceed anonymously. *Does 1-2* involved the anonymous Plaintiffs' challenge to Governor Hochul's "vaccine mandate" for health care professionals in the context of relentless official and media demonization of the "unvaccinated." Upon considering the sixth *Sealed Plaintiff* factor, prejudice to the Defendant, the Court granted Plaintiffs leave to proceed anonymously because of "potential exposure to 'public vitriol, shaming and ostracization,' as well as the risks to their livelihood, if they were to personally reveal their religiously-guided vaccination choices." *Id.* at *3. The Court so held even though "the Court agrees with Defendants that the potential physical and mental harms identified by Plaintiffs *could be more particularized*…" *Id.* at *4 (E.D.N.Y. Mar. 18, 2022)(emphasis added). Here, the evidence is quite particularized, even down to an attack on the very home of the head of the "infamous conservative Catholic law firm" providing Plaintiffs with pro bono legal counsel.

The Court further agreed with Plaintiffs' contention that "this case involves a purely legal question that does not depend at all on the identity of the Plaintiffs" and that pseudonyms would not prejudice Defendants "particularly *in light of Plaintiffs' proposed protective order*." *Id.* at *4 (cleaned up). As the Court concluded:

> At the current stage of the litigation, with Defendants' motions to dismiss pending… Plaintiffs John Does 1–2 and Jane Does 1–3's proceeding anonymously causes little prejudice to Defendants. This is especially so given Plaintiffs' willingness to stipulate to *a protective order that will allow Defendants to learn Plaintiffs' identities*. *Id.* at *9 (emphasis added).

The Court specifically found the proposed protective order "to be a reasonable way to accommodate the Plaintiffs' strong interest in anonymity while minimizing the prejudice to the Defendants..." *Id.* at *8 (internal quotation and citation omitted). The only caveat was that "it may

5

be necessary to revisit whether Plaintiffs' anonymity is obfuscating discovery, causing reputational damage to Defendants, or undermining the fundamental fairness of the proceeding." *Id.* at *9.

That, once again, is this case. Tellingly, the government defendants in *Does 1-2*, and even one of the private party defendants, did not oppose Plaintiffs' request to proceed anonymously. *Id.* at *4. So it is here, with both municipal defendants declining to oppose this motion.

In the same vein is *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 277 (E.D.N.Y. 2015): "As the Plaintiffs correctly point out, when trying to balance the different interests involved in cases such as these, courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." The Court in *Plaintiffs #1-21* cited in turn *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678 (11th Cir.2001):

> The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true identity. *However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public. That is a reasonable way to reconcile the competing interests*, and the district court can enter an appropriate protective order.

*Id.* at 687 (emphasis added).

*See also*, *Doe v. Oshrin,* 299 F.R.D. 100, 101 (D.N.J.2014) (granting plaintiffs' motion to proceed anonymously under a "discovery confidentiality order").

The County Defendants contrive imaginary scenarios of impaired discovery under which, so they claim, a confidentiality order will not do. They argue, first of all, that it will be "nearly impossible for County Defendants to obtain needed information from known local reproductive facilities and/or third-party witnesses without Plaintiffs' identities, as well as subpoena relevant information and documents from third parties." Opp. Br. at 7. But that argument presumes that "local reproductive facilities and/or third-party witnesses" know the Plaintiffs' real names. If that

6

were so, Defendants need only inquire of those sources about the already-known identities of sidewalk advocates who regularly appear there, including Plaintiffs, and the information supplied would jibe with the identities already disclosed to Defendants under the proposed confidentiality order. For example, a subpoena could simply request any and all information concerning allegedly unlawful activities of pro-life advocates at a given facility—names included, if known. On the other hand, if facility staff or third-party witnesses do *not* claim to know the names of any of the pro-life advocates at the subject locations, Plaintiffs included, then Plaintiffs' real names would be of no use to Defendants for investigative purposes as to those witnesses.

The County Defendants also speculate that if Plaintiffs' names are revealed to the world on the public docket, "it is possible a third party could come forward" to claim that Plaintiffs had identified themselves to him or her, and that there is a "chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses." Opp. Br. at 8-9 (quoting *Del Rio*). But these imaginary potential witnesses would almost certainly be abortion clinic staffers or clients who would have observed Plaintiffs' activities and, if those activities were illegal, would have complained about or recorded them in some manner. The subject facilities would also probably be in possession or control of the usual abortion clinic security camera footage of any allegedly illegal activity. Plaintiffs could be confronted with that video evidence and asked to admit or deny that they are the ones depicted.

Equally unavailing is the County Defendants' speculation that publishing Plaintiffs' identities on the public docket "can be critical" to "rebutting Plaintiffs' characterizations of their actions outside of clinics…" Opp. Brief at 8. That argument rests on the implausible contention that some random member of the general public, who just happens to know Plaintiffs' real names

7

and their activities, will log onto Pacer, scrutinize the Complaint, detect some supposed falsehood therein, and promptly contact defense counsel to volunteer as a "rebuttal" witness.

These speculations aside, at this stage of the case there is no compelling reason to deprive Plaintiffs of the protection of anonymity. This Court would not even have to consider "revisit[ing] whether Plaintiffs' anonymity is obfuscating discovery..." *Does 1-2*, 2022 WL 836990 at *9.

**C. Seventh Factor: Plaintiffs' identities have thus far been kept confidential—as the County Defendants themselves complain.**

The County Defendants argue that Plaintiffs have "completely failed to address whether their identities have thus far been kept confidential." Opp. Br. at 13. But Plaintiffs have no burden to prove a negative: i.e., that they have not disclosed their identities to the public. Defendants' argument on this point is incoherent: They complain that Plaintiffs' hidden identities will cause discovery problems, but that Plaintiffs have not shown that their identities are hidden!

It is of no moment that Plaintiffs advocate for life publicly, for they do not do so while wearing name tags revealing their names and home addresses. That the County Defendants have not already ferreted out Plaintiffs' identities from abortion clinic staffers shows that they have no idea who Plaintiffs are. Moreover, the right to resist abuses of power without telling anyone who you are, even wearing a mask to conceal identity, is conjugate to First Amendment liberty.

**D. Eighth Factor: The public has only a gratuitous interest in knowing the real names of Plaintiffs.**

As the County Defendants rightly observe, the ninth *Sealed Plaintiff* factor "relates to whether the litigation involves factual disputes, or if it is limited to a purely legal matter in which the public would have an atypically *weak public interest*." Opp. Br. at 9, quoting *Sealed Plaintiff*, 537 F.3d at 190(emphasis added). Plaintiffs contend that their activity of offering literature and speaking to women about alternatives to abortion has been unconstitutionally criminalized by

8

Chapter 425, both on its face and as applied their activity.  It is here that the County Defendants concede—as they must—that "it is likely that this action can be resolved purely as a matter of law…" *Id.* First Amendment challenges of this kind are almost invariably resolved in the District Court at the preliminary injunction stage or on a motion to dismiss, followed by an appeal.

Defendants suggest the existence of "factual disputes" if this case is somehow not resolved on the law. But what "disputes" do they have in mind?  Do they really dispute that Plaintiffs' offer literature and speak to women about alternatives to abortion?  Or, if Defendants are suggesting that there could be a "dispute" over whether Plaintiffs have engaged in unprotected conduct as well, that dispute would not alter the constitutional analysis as to the protected activity.  The facial and as-applied challenges for vagueness presented here, Verif. Comp., ¶¶ 177-183, require only a showing that the challenged regulation "reaches a substantial amount of constitutionally protected conduct." *Kolender v. Lawson*, 461 U.S. 352 (1982); (cleaned up); *Farrell v. Burke*, 449 F.3d 470, 496–97 (2d Cir. 2006).

Moreover, given the facial overbreadth challenge also presented, Verif. Comp., ¶¶ 174-174, it would not matter even if, *per impossible,* Plaintiffs engaged in *no* First Amendment-protected activity because "[a] party alleging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them." *Farrell*, 449 F.3d at 498.

In sum, "in this constitutional challenge [Plaintiffs] are essentially interchangeable with similarly situated persons, [and] there appears little public interest in which particular persons have actually sued…." *Free Speech*, 1999 WL 47310, at *2-3. Any public interest in Plaintiffs' real names would be purely gratuitous.  Indeed, *those most interested in knowing Plaintiffs names are*

9

*likely to be those most interested in harassing them* because of their suit and their involvement with "the infamous conservative Catholic law firm Thomas More Society."

Thus, it is fair to say that Defendants' demand for public disclosure of Plaintiffs' real names is aimed at inducing Plaintiffs to drop this suit out of fear. But that is exactly the evil to be avoided: "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued. The value of open proceedings disappears when there are no proceedings to be had." *Del Rio*, 241 F.R.D. at 158. Plaintiffs should be allowed to pursue their "unpopular but valid" complaint under the same protection of anonymity afforded even to those who attacked Attorney Brejcha's home and threaten a nationwide "open season on prolife."

### E. Tenth Factor: Plaintiffs have proposed an alternative mechanism for protecting confidentiality.

Concerning the tenth *Sealed Plaintiff* factor, while Defendants conjure up hypothetical discovery problems if Plaintiffs remain anonymous, as already noted, "that argument is eviscerated by [Plaintiff's] offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public. That *is a reasonable way to reconcile the competing interests*, and the district court can enter an appropriate protective order." *Plaintiffs # 1-21*, 138 F. Supp. at 277, quoting *Roe*, 253 F.3d at 687(emphasis added).

We respectfully submit that this Court should require the County Defendants to accept the proposed confidentiality agreement under an order like that in *Does 1-*2, directing the parties "to meet and confer and to submit a proposed protective order" by a deadline to be established by the Court. *Does 1-2*, 2022 WL 836990, at *10.

### CONCLUSION

The Court should grant Plaintiffs' motion for leave to proceed under pseudonyms in accordance with the authorities cited and under an appropriate confidentiality order.

10

Dated: October 21, 2022

,

           Respectfully submitted,

           s/Christopher A. Ferrara

           _____
           CHRISTOPHER A. FERRARA, ESQ.
           Special Counsel – Thomas More Society
           148-29 Cross Island Parkway
           Whitestone, Queens, New York 11357
           Telephone: (718) 357-1040
           cferrara@thomasmoresociety.org
           *Counsel for Plaintiffs*


           MICHAEL G. MCHALE, ESQ.*
           Counsel – Thomas More Society
           10506 Burt Circle, Ste. 110
           Omaha, NE 68114
           Telephone: 402-501-8586
           mmchale@thomasmoresociety.org
           *Counsel for Plaintiffs* (pro hac vice)