# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **40 DAYS FOR LIFE,** a nonprofit corporation of the State of Texas,<br><br>**WHITE PLAINS 40 DAYS FOR LIFE,** an unincorporated association of the State of New York,<br><br>**JANE DOE** and **SALLY ROE** (pseudonyms),<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF WESTCHESTER,**<br><br>**GEORGE LATIMER,** Chief Executive of the County of Westchester, in his official capacity, and<br><br>**TERRANCE RAYNOR,** acting Commissioner of the Westchester Department of Public Safety, in his official capacity,<br><br>Defendants. | Case No. 7:22-cv-6950-PMH |

## UNSWORN DECLARATION OF BRIAN BURKE

Pursuant to 28 U.S.C. § 1746, Brian Burke hereby declares under penalty of perjury as follows:

1. For approximately six years prior to the adoption of Chapter 425 by the Westchester County Board of Legislators, my wife Joanne and I were regular participants in the 40-day vigils conducted by White Plaintiffs 40 Days for Life (WP-40DFL) at the Planned Parenthood facility located in Greenburgh, NY as shown in Exhibit F to the First Amended Verified Complaint ("Complaint").

1

WP-40DFL's vigils are conducted in the Fall until the first weekend of November and in the Spring until Good Friday.

2. In addition to these vigils, I would also conduct pro-life advocacy at the same location on average one to two Fridays per month. .

3. An integral part of the pro-life activity in which my wife and I engaged was the offering of literature to people in cars who were either entering or leaving the parking lot of the facility via the driveway shown in Exhibits F and K to the Complaint. We would stand on the public right of way abutting the public portion of the driveway cutout as shown in Exhibit K, holding the "Hope" sign shown in Exhibit H, which displays a toll-free number that women in the midst of a crisis pregnancy can call for positive alternatives to abortion. At no time did we ever obstruct the driveway or prevent the passage of cars.

4. If, upon seeing the sign, a car entering or leaving the parking lot of the facility would stop to engage us, we would approach the car to offer the literature shown in Exhibit C to the Complaint. If the driver rolled down the window, we would speak to the persons inside, informing them that there is free help for them, that there are options, while offering the literature, which would sometimes be accepted, as well as business cards with telephone numbers for resources that would support a women who chooses to bring her child to term.

5. In fact, the only point of effective access to communicate our message to people entering or leaving the facility at Greenburgh is the public right of way adjacent to the driveway, as the front door of the building is no longer used and very few people approach the facility on foot.

6. Occasionally, we would also approach and speak to someone approaching the Planned Parenthood facility on foot, speaking to them and offering the same literature and business cards.

7. Since the adoption of Chapter 425, however, my wife and I have ceased our advocacy alongside the driveway as well as approaching people on foot, for fear of criminal and civil liability for violation of the 8-foot "floating" bubble zone within 100 feet of the door to the clinic, the "no follow and harass zone" within 25 feet of the premises, which includes the public portion of the driveway and is violated by any "conduct or acts that continue after an express **or implied** request to cease has been made," and the other vague and confusing provisions of this law prohibiting vaguely defined "physically obstructing or blocking," "interfer[ing] with," "deceptive means [i.e., speech] or otherwise," "intimidation" and even an "attempt to … interfere with" or "intimidate" another person.

8. The area encompassed by the restrictive zones is shown in Exhibit K to the Complaint. Given the extent of these zones, at the last 40 Days vigil, which ended on November 6th, my wife and I stood completely away from the driveway, to the left the white sign beneath the Planned Parenthood lettering on the front of the building as shown in Exhibit K, which is more than 25 feet from the driveway.

9. My wife and I are quite concerned about the risk of being accused of approaching cars or people on foot to offer literature without the required "consent" to approach or of "following and harassing" merely for walking toward someone on foot or in a car and speaking and offering literature despite a supposed "implied request"—whatever that means—to cease our now-illegal conduct in simply speaking to people and offering literature while approaching them.

10. We are also concerned about the risk of being entrapped by someone sent specifically to lure us into offering literature at the driveway in violation of the 8-foot bubble zone, the 25-foot "no follow and harass" zone, and the "implied" request to cease our conduct. It has been our experience as members of the pro-life movement that provocateurs are constantly trying to provoke peaceful pro-life activists into violating FACE or some state law equivalent, and we fear that

3

Chapter 425 is even more restrictive than these preexisting laws and is nothing but a series of traps for the unwary.

11. In fact, as shown in the Complaint, after Chapter 425 was adopted, the WP-40DFL warned us in writing that "This law is designed to intimidate pro-lifers and scare them off the sidewalks in front of abortion facilities." We certainly agree.

12. In short, Chapter 425 has hindered our advocacy to the point that we have ceased doing anything but standing far away from the driveway and praying. Our advocacy in terms of displaying the "Hope" sign and offering literature is no longer effective, as the "Hope" sign is no longer clearly visible to cars entering or leaving via the driveway, the only place where effective communication of our message is possible, even though we still bring the sign and literature with us when we advocate for life.

13. Furthermore, not only my wife and I but others who offered literature alongside the driveway on the right-of-way during past vigils have ceased doing so since the passage of Chapter 425. It used to be the case that there were "shifts" of one or two people engaging in this activism by the driveway, including my wife and me.

14. Since Chapter 425 was adopted, however, no one is standing near the driveway any longer to hold a sign, offer literature to the occupants of cars entering or leaving the facility, or approach cars that might wish to engage a pro-life advocate. We have been deterred from accessing the one location where communication of our message can be effective.

15. As to those few who approach on foot, we are no longer walking toward anyone who might be approaching the clinic on foot in order to offer literature or converse, as we don't want to be accused of "following and harassing" by conduct that was perfectly legal before Chapter 425 was passed.

16. Additionally, I have observed that after the passage of Chapter 425 in June 2022, the number of those who participated in the 40 Days vigil that concluded on Election Day in November 2022 diminished by about 50% compared to past vigils. One pro-life advocate, who wishes to remain anonymous, has informed me specifically that Chapter 425 has ended his pro-life advocacy at the Planned Parenthood location in Greenburgh.

17. If the Court grants an injunction preventing the enforcement of Chapter 425, my wife and I will return to displaying our sign and offering literature alongside the driveway, approaching cars that stop, and approaching and engaging people on foot to speak and offer literature, as we did for six years before the Chapter 425 was adopted, without anyone even accusing us of violating any preexisting law or otherwise causing any harm. I would also, to the extent my schedule permits, resume my pro-life advocacy alongside the driveway on additional Fridays of the month.

18. I certify under penalty of perjury that the foregoing is true and correct.

Dated: 11/21/22

_____
Brian Burke