

December 30, 2022

Hon. Philip M. Halpern
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

    Re:    ***40 Days for Life v. County of Westchester***, **7:22-cv-06950 (PMH)**
             *Rel. **Vitagliano v. County of Westchester***, **7:22-cv-09370 (PMH)**

Dear Judge Halpern:

    Given this Court's Order granting the parties' Joint Rule 21 Motion to drop and add parties (and corresponding denial as moot Plaintiffs' Motion for Leave to Proceed anonymously) (ECF No. 51); Plaintiffs' subsequent filing of their Second Amended Complaint on behalf of only named plaintiffs (ECF No. 52); and for the reasons more amply explained in the Memorandum of Law to be filed, Plaintiffs renew their intent to file a motion for preliminary injunction against the challenged provisions of Chapter 425 of the Laws of Westchester County, which continues to directly infringe numerous First Amendment protections for Plaintiffs' pro-life sidewalk counseling and advocacy.

    Plaintiffs, which now include White Plains 40 Days for Life ("WP-40DFL") and national 40 Days for Life ("40DFL"), are in need of preliminary injunctive relief by no later than **February 22, 2023**, when the Spring 2023 campaign of 40 Days for Life begins.[1] Without injunctive relief, all Plaintiffs would continue to suffer irreparable harm to their (or their members') ability to engage in peaceful, one-on-one outreach and counseling in classic public forums to expectant mothers contemplating abortion.

    As noted in Plaintiffs' original pre-motion conference letter (ECF No. 7), the Supreme Court has recognized that regulations restricting pro-life "sidewalk counseling," including "normal conversation and

---

[1] https://www.40daysforlife.com/en/.

leafletting on a public sidewalk," "impose[] an especially significant First Amendment burden," *McCullen v. Coakley*, 573 U.S. 464, 488-89 (2014), and thus must give "adequate breathing space to the freedoms protected by the First Amendment," *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 768 (1994).

Yet Chapter 425 contains *seven different restrictions* on pro-life speech on public sidewalks in the County. These restrictions contain nearly every Free Speech defect imaginable, and at least one also violates the Free Exercise Clause. Chapter 425 brazenly chokes off the constitutionally required "breathing space" for such speech. Consequently, the pro-life speech of all four Plaintiffs has been actually chilled. Plaintiffs Oksana Hulinsky and Regina Joy Creary Molinelli are pro-life sidewalk counselors and advocates who regularly pray and engage in pro-life speech outside Planned Parenthood facilities in Westchester County. They are both religiously motivated by their Catholic faith, and they both engage in the sort of one-on-one conversational speech and advocacy restricted and chilled by Chapter 425, including leafletting, speaking about abortion, holding pro-life signs, and (in Ms. Molinelli's case) passing "Blessing Bags" containing food, other items, and pro-life literature to persons approaching or leaving Planned Parenthood facilities. Because of Chapter 425's seven-pronged clamp-down on speech outside such "reproductive health care facilities," these Plaintiffs have entirely suspended their usual forms of advocacy.

Similarly, Chapter 425 has stymied a significant portion of the shared missions, goals, and outreach efforts of WP-40DFL and 40DFL, which include knowingly approaching and engaging in face-to-face counseling with, and leafletting to, abortion-minded women on public streets and sidewalks outside abortion facilities in Westchester County—activities that have helped numerous women choose life for their unborn children.

These activities are *by design* unconstitutionally impaired by Chapter 425. This is shown by the law's express reliance on the supposed authority of *New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021) (*Griepp I*), which held that the federal Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, applies to a broad array of clearly protected pro-life speech that could be deemed even minimally

2

"obstructive." Upon a petition for rehearing or rehearing en banc, only weeks later, the *same* panel *entirely vacated* its own patently erroneous decision, *Griepp II*, 997 F.3d 1258 (2d Cir. 2021), ultimately deferring to the District Court's finding that FACE does not apply to the kind of pro-life speech mentioned above. *See Griepp III*, 11 F.4th 174, 176 (2d Cir. 2021).[2] **In reality, Chapter 425 is based on a legal nullity.**

Chapter 425's seven challenged provisions are the following:

1. **"Bubble Zone" restriction**, prohibiting anyone from knowingly "approaching" another within eight feet "for the purpose of passing any material item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling with" the person, within a 100-foot radius from the door of a reproductive health care facility. § 425.31(i).

2. **No intentional "following and harassing"** another within 25 feet of a reproductive health care facility or its parking lots, § 425.31(c), with "**harass**" defined to include continued speech that "**seriously annoy[s]**" another and "**continue[s] after an express or *implied* request to cease has been made**." § 425.31(c). During a Board of Legislators meeting in June, County legal counsel advised on the record that the meaning of "implied request to cease" "will be up to a court to determine," based on "whatever evidence you present to a court"; and a separate legal counsel further advised that "[w]hen you're walking down the street and people are *handing out leaflets* . . . and you ignore that person, that's implied, 'Leave me alone.'"

3. **No "interference" simpliciter**, prohibiting knowing "interference with the *operation* of a reproductive health care facility, or attempt to do the same," § 425.31(h); "**interfere with**" is defined to mean even merely causing another "to stop" (however momentarily, a la the vacated *Griepp I* decision) "through *deceptive means or otherwise*." § 425.21(d).

---

[2] All emphasis in this letter is added.

309 W. Washington Street | Suite 1250 | Chicago, IL 60606 | P: 312.782.1680 | thomasmoresociety.org
*"Injustice anywhere is a threat to justice everywhere."* - Dr. Martin Luther King

**4.-6. No "physical obstruction" or "force,"** prohibiting knowingly "physically obstruct[ing] or block[ing] another person" from obtaining reproductive health care services, § 425.31(a), with "**physical obstruction**" defined far more broadly than a similar provision in FACE Act, *compare* § 425.21(h) *with* § 18 U.S.C. § 248(e)(4); and prohibiting the use of "force," "threat of force," or "physically obstructing or blocking" to even "attempt to" knowingly "**interfere with**" another "*in order to discourage*" them from obtaining or providing reproductive health care services. § 425.31(e)&(f). The vacated *Griepp I* decision held that "force" under FACE means even "de minimis" contact. *Griepp I*, 991 F.3d at 124.

**7. No "attempt to" place another in "reasonable fear of physical harm**," § 425.31(d), which, interpreted in the light of *Griepp I*, plausibly applies to mere preaching about "the fragility of life," which the vacated *Griepp I* decision, on which Chapter 425 relies, found to be a violation of FACE. *Id.* at 115.

This Court should preliminarily enjoin at least provisions 2-7 because Plaintiffs are likely to succeed on the merits, are suffering irreparable harm without an injunction, and the public interest weighs in favor of an injunction. As to provision 1, if this Court considers itself bound to deny relief under *Hill v. Colorado*, it would effectively obviate any need for 12(b)(6) motion practice by defense counsel, allowing an appeal seeking good faith modification of the law via the Supreme Court's overruling of *Hill*, of which the Court has been extremely critical in its recent decisions.

**A. Plaintiffs are likely to succeed on the merits because**:

1. <u>They have pre-enforcement standing</u> as their conduct is at least arguably affected with a constitutional interest, arguably proscribed by the statute, and there is a credible threat of enforcement in light of Chapter 425's plain terms and County legislators' statements on the record and reliance on the vacated rationale of *Griepp I*. Additionally, Plaintiffs' speech is already objectively chilled.

2. <u>The challenged provisions are unconstitutionally vague</u> on their face and as applied because they fail to provide adequate notice of what is prohibited and authorize arbitrary enforcement, including punishment of protected speech and expressive conduct that (a) "seriously annoys" and continues after an

"implied request to cease"; (b) causes someone to stop (momentarily) "through *deceptive* means *or otherwise*"; (c) "physically obstructs" by even "hinder[ing]" or "imped[ing]"; (d) "attempts to" "intimidate" or place another in fear of physical harm, in light of *Griepp I*'s broad interpretation of similar terms.

3. <u>*The provisions are overbroad*</u> because by their plain terms and as further interpreted under *Griepp I*, they sweep in a substantial amount of protected speech, such as leafletting that causes minimal delay or can be deemed "deceptive," continuing to speak after an "implied request to cease," etc.

4. <u>*They are content-based regulations of speech*</u> because they regulate speech based on: (a) subject matter of "reproductive health care facilities"; (b) "function or purpose" (i.e., "education" "counseling" and "protest" against, or merely "discouraging", abortion.); (c) communicative impact, including speech that "seriously annoys," particularly given the legislative history deeming pro-life sidewalk advocacy "seriously annoying" by its very nature, and the legislators' admitted antipathy toward such "unwanted" speech.

These restrictions also fail strict scrutiny because such government interests are not a legitimate basis for restricting speech, and existing laws already ensure clinic access.

5. <u>*They fail intermediate scrutiny*</u> even if they are content-neutral, for the reasons discussed above—and because they are not narrowly tailored to the alleged "precipitating event" for the Act: a "Red Rose" incident in November 2021 in which several pro-lifers were arrested and prosecuted for trespassing.

**B. Irreparable Harm and Public Interest**: Chapter 425's chilling of First Amendment rights is a per se irreparable harm, and protecting First Amendment rights is always in the public interest.

Finally, Plaintiffs do *not* intend to re-file a pre-motion conference letter requesting an overlength brief, initially filed at ECF No. 8, and hereby withdraw that request. Thus, no procedural obstacle remains to a decision on Plaintiffs' motion for a preliminary injunction in advance of the 40 Days for Life vigil to commence on February 22, 2022. Accordingly, Plaintiffs further request that this Court dispense with the pre-motion conference and establish a filing and briefing schedule for the preliminary injunction motion.

Respectfully submitted,

/s/Christopher A. Ferrara
Christopher A. Ferrara
Special Counsel – Thomas More Society
148-29 Cross Island Parkway
Whitestone, Queens, New York 11357
Telephone: 718-357-1040
cferrara@thomasmoresociety.org
*Counsel for Plaintiffs*

/s/ Michael G. McHale
Michael G. McHale
Senior Counsel
THOMAS MORE SOCIETY
10506 Burt Circle, Ste. 110
Omaha, NE 68114
Telephone: 402-501-8586
mmchale@thomasmoresociety.org
*Counsel for Plaintiffs* (pro hac vice)

c: Counsel for defendant County of Westchester (by ECF)