UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

40 DAYS FOR LIFE, A NONPROFIT
CORPORATION OF THE STATE OF TEXAS,
WHITE PLAINS 40 DAYS FOR LIFE, AN
UNINCORPORATED ASSOCIATION OF THE
STATE OF NEW YORK, OLGA HULINSKY, AND
REGINA JOY CREARY MOLINELLI,

                           Plaintiffs,

            – against –

COUNTY OF WESTCHESTER,

                           Defendant.

22-cv-6950 (PMH)

Related case:
22 Civ. 09370 (Dismissed)

**DEFENDANT COUNTY OF WESTCHESTER'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**JOHN M. NONNA**
Westchester County Attorney
*Attorney for County Defendant*
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601

*Attorneys of Record*:
John M. Nonna, Esq.
Justin R. Adin, Esq.
Shawna C. MacLeod, Esq.
Alida L. Marcos, Esq.

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................1

**BACKGROUND** .........................................................................................................................1

  A. Chapter 425 – the County Clinic Access Law ......................................................................1

  B. The Plaintiffs .........................................................................................................................2

  C. Ongoing Protest Activity ........................................................................................................2

**ARGUMENT** ...............................................................................................................................2

  I. Standard of Review and Burden of Proof for a Preliminary Injunction...................................2

  II. Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits ..................................3

    A. Plaintiffs Lack Standing.........................................................................................................3

      1. The Individual Plaintiffs Lack Standing.............................................................................3

      2. 40DFL & WP-40DFL Lack Organizational and Associational Standing............................5

    B. The County's Clinic Access Law Is Constitutional ...............................................................7

      1. Chapter 425 Is Content-Neutral and Narrowly Tailored to a Significant Government
Interest ...................................................................................................................................7

        a) Standard of Review: Content Neutrality and Intermediate Scrutiny.................................7

        b) Chapter 425 Is Facially Content Neutral ........................................................................8

        c) Plaintiffs' Arguments Regarding any Disagreement with the Pro-Life Message Are
Unsupported and Irrelevant .................................................................................................12

        d) Chapter 425 Is Narrowly Tailored to the County's Significant Interests .........................13

      2. Chapter 425 Is Not Vague .................................................................................................13

        a) Standard of Review: Vagueness ......................................................................................13

        b) Sec. 425.31(c)—the Follow-and-Harass Provision—Is Not Vague ...............................14

        c) Secs. 425.31(d), (e) & (f)—Force and Threats of Force—Are Not Vague.......................19

        d) Sec. 425.31(a)—Physical Obstruction—Is Not Vague ..................................................21

        e) Sec. 425.31(h)—Interference with Operation of a Clinic—Is Not Vague........................21

      3. Chapter 425 Is Not Overbroad...........................................................................................22

  III. Plaintiffs Have Not Demonstrated Irreparable Harm ........................................................24

  IV. The Balance of the Equities and Public Interest Weigh Against Plaintiffs ...........................24

  **CONCLUSION**.........................................................................................................................25

# **TABLE OF AUTHORITIES**

## Cases

*Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019) ............................................................ 4, 5

*Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973) ...............................................7

*Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873
    (S.D.N.Y. Sept. 20, 2022) ......................................................................................7

*Boos v. Barry*, 485 U.S. 312 (1988)...........................................................................11

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464 (2022).............9

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ........................................................16

*Coates v. Cincinnati*, 402 U.S. 611 (1971) ......................................................... 17, 18

*Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021) ........................ 5, 6

*Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167 (2d Cir. 2006) ...............................14

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................20

*Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) .....................................3

*Hill v. Colorado*, 530 U.S. 703 (2000) ...............................................................*passim*

*Hoffman Estates v. Flipside,* 455 U.S. 489 (1982) .....................................................22

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006)............................................................17

*Martin v. Flynn*, 133 A.D.3d 1369 (4th Dep't 2015)..................................................23

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)...............................................................2

*McCullen v. Coakley*, 573 U.S. 464 (2014) ...............................................8, 13, 14, 24

*Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ....................24

*New York v. Cain*, 418 F. Supp. 2d 457 (S.D.N.Y. 2006) ..........................................19

*Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559 (2d Cir. 2006) ....................16

*Niemotko v. Maryland*, 340 U.S. 268 (1951) .............................................................12

*Nken v. Holder*, 556 U.S. 418 (2009)...........................................................................3

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...............................................................7

*People v. Dietze*, 75 N.Y.2d 47 (1989)................................................................ 18, 19

*People v. Golb*, 23 N.Y.3d 455 (2014).............................................................17, 18, 23

*People v. Harvey*, 307 N.Y. 588 (1954).....................................................................17

*People v. Lagano*, 39 N.Y.3d 108 (2022)...................................................................17

*People v. Richards*, 22 Misc. 3d 798 (N.Y. Crim. Ct. 2008) ............................... 15, 23

*People v. Shack*, 86 N.Y.2d 529 (1995)........................................................11, 15, 23

*People v. Wong*, 776 N.Y.S.2d 194 (N.Y. City Crim. Ct. 2004) ....................................................23

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022)...........................................................................4

*Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972)..................................................12

*Reed v. Tn. of Gilbert*, 576 U.S. 155 (2015)............................................................................ 8, 9

*Skilling v. United States*, 561 U.S. 358 (2010)..........................................................................14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...........................................................3

*Texas v. Johnson*, 491 U.S. 397 (1989) ...................................................................................11

*United States v. Alvarez*, 567 U.S. 709 (2012) ...........................................................................9

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) ..................................................... 10, 19

*United States v. O'Brien*, 391 U.S. 367 (1968) ..............................................................8, 12, 13

*United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013) ..............................................................14

*United States v. Schneiderman*, 968 F.2d 1564 (2d Cir. 1992) ................................................21

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................................. 22, 23

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998) ..................................................... 8, 11, 13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ..............................12

*VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179 (2d Cir. 2010)......................................... 13, 20

*Vitagliano v. County of Westchester*, 22-CV-09370 (PMH), ECF No. 31 (Jan. 3, 2023)........... 1, 8

*Watts v. United States*, 394 U.S. 705 (1969) ...........................................................................11

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021)..............................................25

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................................................3

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993).............................................................................10

**Statutes**

18 U.S.C. § 248..................................................................................................... 10, 19, 21

42 U.S.C. § 1983...........................................................................................................7

Chapter 425 of the Laws of Westchester County .........................................................*passim*

N.Y. Civ. Rights L. § 79-m ........................................................................................ 10, 19

N.Y. Penal L. § 240.26 ............................................................................................. 15, 17

N.Y. Penal L. § 240.30.................................................................................................23

N.Y. Penal L. § 240.70 ............................................................................................. 10, 19

N.Y.C. Admin. Code § 10-1003....................................................................................14

Westchester County Local Law No. 9-2022 ....................................................................1

**Other Authorities**

Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/cease (last accessed 15 Feb. 2023)...............................................................................................................16

Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/imply (last accessed 15 Feb. 2023)...............................................................................................................16

Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/operation (last accessed 16 Feb. 2023)...............................................................................................................22

Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/request (last accessed 15 Feb. 2023)...............................................................................................................16

<u>**PRELIMINARY STATEMENT**</u>

The County of Westchester respectfully submits this memorandum in opposition to Plaintiffs' request for an extraordinary remedy: an injunction barring enforcement of Chapter 425 of the Laws of Westchester County, which provides safe access to reproductive healthcare. Because Plaintiffs fail to carry their heavy burden to show a likelihood of success on the merits of their claims, or that they face irreparable harm in the absence of an injunction, their motion should be denied in its entirety.

<u>**BACKGROUND**</u>

**A.   Chapter 425 – the County Clinic Access Law**

On June 27, 2022, the County enacted Local Law No. 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities" ("Chapter 425"). *See* Decl. of Shawna C. MacLeod ("MacLeod Decl."), Ex. 1. Chapter 425 was a response to conduct occurring near reproductive healthcare clinics in the County that exceeded the bounds of protected First Amendment expression—for instance, blocking facility entrances; pushing past staff; and throwing objects at patients. *See, e.g.*, Second Am. Compl., ECF No. 52 ("SAC") Ex. I at ECF page Nos. 12-20; SAC Ex. N at 25-29.

This Court has already determined that Section 425.31(i) of the law is a constitutional time, place, and manner regulation, grounded in Supreme Court precedent. *See Vitagliano v. County of Westchester*, 22-CV-09370 (PMH), ECF No. 31 (Jan. 3, 2023) (Op. & Order in Related Case). Indeed, Plaintiffs have essentially conceded Section 425.31(i)'s validity under existing Supreme Court precedent, *see* ECF No. 53, and have appealed what they deem this Court's "denial" of their motion to enjoin that section to the Second Circuit. *See* Second Circuit Dckt. No. 23-155. They do not challenge that section here. The remaining Chapter 425 provisions—which are modeled after several federal, state, and municipal laws that have been upheld by various courts—target threatening, harassing, violent, fraudulent, and obstructive conduct that is not protected by the First Amendment.

**B. The Plaintiffs**

Plaintiffs Hulinsky and Molinelli, two anti-abortion "sidewalk advocates and counselors," along with plaintiff White Plains 40 Days for Life ("WP-40DFL") and national organizational plaintiff 40 Days for Life ("40DFL"), challenge Chapter 425 as invalid on its face and as-applied under the First and Fourteenth Amendments, alleging that their (or their members') freedoms of expression and religion have been "chilled." SAC ¶¶ 3, 10, 11-13, 24, 32, 43, 79-101 & Counts I-III; *see generally* Pls.' Mem. in Supp. of Mot. for Preliminary Injunction ("Pl. Mem."). These sweeping challenges are based on a misunderstanding of Chapter 425 and a misapprehension of the controlling case law. As set forth below, Plaintiffs, and anyone else, can speak, leaflet, pray, and express themselves outside of reproductive health care clinics in the County.

**C. Ongoing Protest Activity**

Since the enactment of Chapter 425, anti-abortion advocates have continued to pray, counsel, and protest in the public way right outside of the County's reproductive healthcare facilities. For instance, and consistent with the law, individuals hold signs, including 40DFL signs; sit in the public way while displaying signs and literature; pray to the Rosary; and approach others in cars—with consent—to pass them literature. *See* Lederer Aff. & Exs. 1-3; Considine Decl. & Exs. 1-2; Baron Aff. & Ex. 1; MacLeod Decl. ¶ 4 & Ex. 2 (YouTube video). This continued protected First Amendment activity outside of reproductive healthcare clinics—without incident of arrest or prosecution under Chapter 425—shows that the law does not have the chilling effect Plaintiffs claim it does.

## ARGUMENT

**I. Standard of Review and Burden of Proof for a Preliminary Injunction**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (italics in original; internal quotation marks omitted); *see Hanson*

2

*Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) ("[A] preliminary injunction, which is one of the most drastic tools in the arsenal of judicial remedies . . . must be used with great care."). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As demonstrated below, Plaintiffs fail to meet their burden, and cannot satisfy this rigorous standard, and so their request to enjoin Chapter 425, or any of its sections, should be denied.

## II.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits
### A.    Plaintiffs Lack Standing

Plaintiffs cannot succeed on the merits of their claims because they lack standing to sue.

#### 1.    The Individual Plaintiffs Lack Standing

To establish Article III standing's injury-in-fact requirement in the pre-enforcement context, a plaintiff may show that threatened enforcement is "sufficiently imminent," by demonstrating that (1) she has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotation marks omitted). The individual plaintiffs fail to meet (at least[1]) this standard. Plaintiffs Hulinsky and Molinelli allege that they intend to pray, counsel, and distribute literature peacefully in public areas outside of reproductive

---

[1] For instance, in addition, Plaintiffs' purported injuries would not be redressed if this Court were to enjoin Sections 425.31(e) and (f), because these sections are nearly identical to the federal and state clinic access law provisions.  Thus, plaintiffs (and anyone else) could still conceivably face prosecution under those laws if their conduct exceeded the bounds of protected First Amendment expression and otherwise satisfied the elements of those statutes.

healthcare facilities, and assert they have been chilled, in whole or in part, from doing so. (*E.g.*, SAC ¶¶ 30, 31, 32, 40, 41, 43; Pl. Mem. 2, 24.) But as explained in detail below, none of these activities is proscribed by Chapter 425. Even assuming that Hulinsky's and Molinelli's proposed conduct would arguably violate any section of Chapter 425, their allegations are insufficient to establish a "credible threat" of prosecution. Courts must evaluate the extent of past or threatened future enforcement against the plaintiffs to determine whether a credible threat exists. *See, e.g.*, *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019) (determining plaintiff did not have standing after assessment of the above factors); *see also Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) (standing established where plaintiff had been arrested previously under the very law he challenged in suit ).[2]

Plaintiffs here do not allege any past enforcement against them under Chapter 425 (or any comparable State or federal laws). Nor do they identify any warnings by police, or public statements by the District Attorney or County Attorney that would suggest they face future prosecution, or even civil action. Indeed, Plaintiffs do not allege that either the New Rochelle Police Department nor the Greenburgh Police Department has arrested or cited anyone for violating Chapter 425 since its enactment. *See generally* SAC; *see* Valentine Aff. (explaining that police were called to the Greenburgh Planned Parenthood facility where an individual was blocking a driveway, but that after the officer asked the individual to move to the sidewalk to allow vehicles to pass, she did so without incident, and the call was closed). Moreover, anti-abortion sidewalk counselors and protestors continue to counsel and protest right outside of Westchester County reproductive health care facilities, demonstrating that the very same conduct Plaintiffs claim they wish to engage in, but are "chilled"

---

[2] Contrary to Plaintiffs' assertion (Pl. Mem. 9), the Second Circuit did not invalidate the subject law in *Picard*. Instead, the court held that while plaintiff did have standing to challenge the constitutionality of the statute as applied to him, "the district court erred in granting a broad injunction against the enforcement of the statute in all circumstances." 42 F.4th at 94, 106-107. The court thus vacated the injunction and remanded to the district court to enjoin enforcement of the statute only in the circumstances presented by plaintiff's own conduct in the case. *Id.*

from participating in, is in fact taking place. *See* Lederer Aff. & Exs. 1-3; Considine Decl. & Exs. 1-2; Baron Aff. & Ex. 1; MacLeod Decl. ¶ 4 & Ex. 2; SAC Ex. Q ¶ 16. Plaintiffs have thus failed to allege facts sufficient to show a credible threat of prosecution under Chapter 425, which remains purely conjectural. As such, the threat of enforcement against them is insufficiently imminent to confer standing to sue. *See Adam*, 792 F. App'x at 22-23.

### 2. 40DFL & WP-40DFL Lack Organizational and Associational Standing

Nor have 40DFL or WP-40DFL sufficiently pleaded direct organizational standing. It is the organizations' burden to satisfy the "irreducible constitutional minimum of standing" by showing: "(i) an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [the challenged act]; and (iii) that a favorable decision would redress its injuries." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172-173 (2d Cir. 2021). "An organization can satisfy the injury prong if it shows that the challenged action did not merely harm its 'abstract social interests' but 'perceptibly impaired' its activities." *Id.* at 173. However, "where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' absent an *involuntary material burden* on its established core activities." *Id.* (emphasis added). In such a circumstance, "the challenged law . . . must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the organization regularly conducted (prior to the challenged act) in pursuit of its organizational mission." *Id.* at 173-74.

According to the operative complaint, **40DFL** is an "international pro-life advocacy organization whose activities include the promotion of 40-day Local Vigils on public sidewalks or in public-rights-of way adjacent to abortion facilities throughout the nation, including the Planned Parenthood facility in Greenburgh, NY." SAC ¶ 15. 40DFL has no members, and "[a]ll Local Vigils and associated activities are independent from 40DFL, which neither directs nor leads any Local Vigils." 40DFL argues that "Chapter 425 has directly impeded 40DFL's promotion of Local Vigils at

abortion facilities throughout the United States, including at the facility in Greenburgh." (Pl. Mem. 10-11.)

It is clear—even from Plaintiffs' own pleadings—that the 40DFL vigils continue to be promoted and attended, including in Westchester County, since the enactment of Chapter 425. *See* SAC Ex. Q ¶ 16; 40 Days for Life, https://www.40daysforlife.com/en (promoting vigil from February 22 to April 2); "Promotional Flyer Spring 2023," *available at* https://s3-us-west-2.amazonaws.com/cdn.40daysforlife.com/resources/9930/40DFL_WP_English_Flyer_Spring_2023.pdf. The "costs" 40DFL claims also do not arise from the sort of "involuntary material burden on its established core activities" necessary to give it standing. *Russell-Tucker*, 8 F.4th at 173-74. 40DFL's claims that it has essentially engaged legal counsel for the purposes of this *voluntary* litigation (Pl. Mem. 11, SAC ¶ 100) are insufficient to confer standing. Nor does 40DFL allege that it frequently participates in litigation as part of its mission. *See* 40DFL Webpage, https://s3.us-west-2.amazonaws.com/cdn.40daysforlife.com/media (last accessed Feb. 16, 2023) (under the "Media" tab, the only "First Amendment Lawsuit" that appears is the instant action); *Russell-Tucker*, 8 F.4th at 174 ("[A]n organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes."). Under 40DFL's theory, "an organization could establish standing by claiming to have been injured by any law or regulation touching any issue within the scope of its mission (which the organization itself can define) so long as it expends resources to oppose that law or regulation." *Id.* at 173. But this is decidedly not the law, and 40DFL does not have standing to sue.

Nor does **WP-40DFL** have organizational standing. WP-40DFL "is an unincorporated association of pro-life advocates and a Local Vigil . . . that engages in 40-day vigils and peaceful activism, including the offering of pro-life literature and sidewalk outreach, on the sidewalks and rights-of-way adjacent to the aforementioned Planned Parenthood facility in Greenburgh, NY." It

argues it has standing because Chapter 425 allegedly "chill[s] its protected activities via exposure of its members to the risk of criminal liability," and because Chapter 425 "interferes with its mission to advocate for life on public sidewalks by approaching, conversing, and offering literature." (Pl. Mem. 12.) But again, these vigils continue to take place, and WP-40DFL continues to promote them. *See* SAC Ex. Q ¶ 16; "White Plains Campaign," 40 Days for Life, https://www.40daysforlife.com/en/white-plains (last accessed Feb. 16, 2023). Under Chapter 425, WP-40DFL can continue to engage in its core activities without restriction. *See Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873, at *12 (S.D.N.Y. Sept. 20, 2022) (lack of standing where plaintiffs "engaged in more of the same work as a result of [the challenged policies]"). Since WP-40DFL has not demonstrated that its core mission is frustrated, it lacks organizational standing to seek a preliminary injunction.

Finally, **WP-40DFL** does not have associational or representational standing, as it argues. (Pl. Mem. 11). It has long been the law in the Second Circuit that an entity may not assert the rights of its members in a 42 U.S.C. § 1983 case in order to establish standing. *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011); *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973). All the claims in this lawsuit are brought under Section 1983. *See* SAC Counts I-III. And in any event, none of the members, as alleged, faces a credible threat of prosecution. *See* Point II.A.1. Therefore, no Plaintiff has standing.

## B. The County's Clinic Access Law Is Constitutional

### 1. Chapter 425 Is Content-Neutral and Narrowly Tailored to a Significant Government Interest

#### a) Standard of Review: Content Neutrality and Intermediate Scrutiny

Plaintiffs' assertion that the law is content-based, and therefore subject to strict scrutiny, is wrong. A regulation fails content neutrality only if it (1) "applies to particular speech because of the topic discussed or the idea or message expressed"; (2) "cannot be justified without reference to the content of the regulated speech," or (3) was "adopted by the government because of disagreement

with the message [the speech] conveys." *Reed v. Tn. of Gilbert*, 576 U.S. 155, 163-64 (2015) (internal quotation marks omitted).

This Court has already determined that Section 425.31(i), the 8-foot bubble zone that applies outside of reproductive health care facilities, is content-neutral. *Vitagliano*, 22-CV-09370 (PMH), ECF No. 31, at 6-7. The remainder of Chapter 425 is likewise content-neutral, as discussed below, and therefore must be narrowly tailored to a significant government interest. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (setting forth intermediate scrutiny test for time, place, and manner restrictions); *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998) (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)) (setting forth intermediate scrutiny test for restrictions on proscribable conduct that may have expressive components).

### b)  Chapter 425 Is Facially Content Neutral

First, the law is facially content-neutral. Although somewhat unclear, Plaintiffs appear to have abandoned their primary argument as stated in their pre-motion letter that Chapter 425 is content-based on its face because it regards "reproductive health facilities." *Compare* ECF No. 55 at 5, *with* Pl. Mem. 18-23. In any event, the argument is foreclosed by Supreme Court and Second Circuit precedent. *See McCullen*, 573 U.S. at 479-86 (deeming Massachusetts law creating buffer zones around reproductive health care clinics content-neutral); *Weslin*, 156 F.3d at 296-97 (holding that the federal Freedom of Access to Clinic Entrances Act ("FACE") is facially neutral and constitutional); *accord Vitagliano*, 22-CV-09370 (PMH), ECF No. 31, at 6-7 (holding that Section 425.31(i) is content-neutral).

Nor does Chapter 425 "draw[] facial distinctions based on the 'function or purpose' of speech," as Plaintiffs argue. (Pl. Mem. 18-19.) The Supreme Court recently clarified that a law regulating speech "cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result."

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464, 1474 (2022). However, Chapter 425 does no such thing.

Plaintiffs assert that the term "deceptive means," as used in the definition of the term "interfere with," Sec. 425.21(d), is a proxy for anti-abortion speech, rendering Sections 425.31(e), (f), and (h) content-based. (Pl. Mem. 18-19.) But nothing in Chapter 425's text indicates that "deceptive means" is an obvious subject matter proxy for a particular type of message, as was the case in *Reed v. Town of Gilbert*. In *Reed*, the Supreme Court identified a "subtle[r]" form of content-based discrimination related to speech's "function or purpose," where restrictions were applied differently to signs depending upon their communicative message—i.e., whether the signs' message was "ideological," "political," or "temporary directional . . . relating to a qualifying event," which included religious gatherings. 576 U.S. 155, 159-60, 163 (2015). On its face, the law invalidated in *Reed* drew distinctions based on "functions" that served as proxies for different subject matter. Here, there is no such function-based evaluation of the message, and thus Plaintiffs' arguments based on *Reed* are erroneous and misplaced. Further, to the extent any speech would need to be examined for its content under Chapter 425, that alone does not render a law content-based. *City of Austin*, 142 S. Ct. at 1473.

More importantly—and also unlike *Reed*—the Chapter 425 sections that Plaintiffs challenge here regulate *conduct*, not speech. "Interfering with" only constitutes a violation if it suspends the operation of a reproductive health care facility, or is linked with a predicate use of force, threat of force, or physical obstruction. *See* Secs. 425.21(e), (f), (h). Plaintiffs' citation to *United States v. Alvarez*, 567 U.S. 709 (2012) (Pl. Mem. 19)—a case that invalidated a law criminalizing false statements on their own—is therefore not on point. Indeed, even the plurality opinion in *Alvarez*, while explaining that falsity alone may not suffice to bring speech outside the First Amendment, discussed Supreme Court precedents that recognized legally cognizable harms associated with false statements, such as defamation, fraud, or the invasion of privacy. 567 U.S. at 719-21. Were there any ambiguity as to

whether "deceptive means" serves as a proxy for anti-abortion rhetoric, the legislative history for Chapter 425 is clear that the phrase was included in the definition of "interfere with" as a response to specific individuals who gained entry to a reproductive health care facility in White Plains by deceptive means, then facilitated the infiltration of numerous others, ultimately suspending the facility's operation for hours. *See* 6/1/22 Leg. Mtg. at 3:40-5:20[3]; SAC Ex. N at 25-29.

Plaintiffs next argue that the motive requirements of Sections 425.31(e) and (f) make those sections content-based. Under Section 425.31(e), it is unlawful for any person to engage in the specifically proscribed conduct[4] "in order to discourage such other person . . . from obtaining or providing, or assisting in obtaining or providing, reproductive health care services." Section 425.31(f)'s motive requirement prohibits the same predicate conduct "because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services." These sections are virtually identical to sections of FACE and the New York State Clinic Access Act ("NYSCAA"). *See* 18 U.S.C. § 248(a); N.Y. Penal L. § 240.70(1)(a)-(b); N.Y. Civ. Rights L. § 79-m. Numerous courts have upheld FACE as content-neutral against similar challenges. *See, e.g.*, *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996) ("FACE's motive requirement does not discriminate against speech or conduct that expresses an abortion-related message. . . . What FACE's motive requirement accomplishes is the perfectly constitutional task of filtering out conduct that Congress believes need not be covered by a federal statute."). As the Supreme Court has explained, the First Amendment does not prohibit "the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). The same logic applies to

---

[3] The video of this committee meeting is available at:
https://westchestercountyny.granicus.com/player/clip/1454?view_id=1&redirect=true&h=36548071fec63c46b64b3f8ebeee1f57.

[4] That is, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person . . . ." Section 425.31(e).

Plaintiffs' tortured reading of Section 425.31(a), which they also claim is content-based. That provision clearly prohibits conduct—physically obstructing or blocking, not pure speech—and any motive requirement is content-neutral, merely serving to draw the provision more narrowly.

Importantly, and while all Plaintiffs' arguments regarding function or purpose assume that anti-abortion speech is prohibited, it clearly is not. The law is a two-way street, and protects individuals seeking access to anti-abortion pregnancy crisis centers from the obstruction of pro-choice advocates—an issue that appears to be of great concern to Plaintiffs themselves. (Pl. Mem. 4 (noting "more than 100 verified attacks on pro-life pregnancy centers and churches since the leak of the draft opinion in Dobbs")); *see Weslin*, 156 F.3d at 296-97 (explaining that "FACE prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators" and "applies . . . at a clinic in which patients are encouraged not to have abortions").

Finally, Plaintiffs' general statement that a statute may be content-based if it punishes speech based on the speech's "emotive impact" on its audience is not applicable here. (Pl. Mem. 20, citing *Texas v. Johnson*, 491 U.S. 397, 412 (1989), and *Boos v. Barry*, 485 U.S. 312, 321 (1988)). This is because the County's law targets *conduct* such as threats of violence and harassment—not the emotive impacts of pure speech. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (*per curiam*) (holding that a statute that criminalizes threats to the U.S. President is constitutional on its face and distinguishing "a threat . . . from what is constitutionally protected speech"). Accordingly, courts have upheld the facial validity of a number of statutes that, using language similar to Chapter 425's, prohibit threats of violence or harassment. *See, e.g., People v. Shack*, 86 N.Y.2d 529, 535 (1995) (upholding anti-harassment statute requiring intent to harass, annoy, threaten, or alarm the victim, as it "does not prohibit speech or expression—on its face, its proscription is limited to conduct (making a telephone call without any legitimate purpose of communication)."). In short, the challenged provisions of Chapter 425 are not content-based on their fact, and regulate conduct that is not protected by the First Amendment.

### c) Plaintiffs' Arguments Regarding any Disagreement with the Pro-Life Message Are Unsupported and Irrelevant

Plaintiffs' argument that the County violated the Equal Protection Clause because members of the legislature disagreed with pro-life messaging is without basis in law. The cases Plaintiffs cite for this proposition (Pl. Mem. 21) are inapposite, and were not even those where any formal content-neutrality analysis was conducted. For instance, *Niemotko v. Maryland*, 340 U.S. 268 (1951), invalidated, under the Equal Protection Clause of the Fourteenth Amendment, disorderly-conduct convictions of Jehovah's witnesses who had gathered in a park without first obtaining a permit pursuant to an undefined practice, under which government officials had essentially unfettered discretion to approve or deny the permit applications. *Id.* at 271-273. There, the statements and questions made as part of the permit hearing—a record of the decision-making process—were relevant to the plaintiffs' claim, and the Court found no basis but animus for the city council's denial of the plaintiffs' applications. *Id.*; *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (consideration of motive relevant in review of the determination made for a specific housing development). The only case Plaintiffs cite that actually deals with the enactment of a law is *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). In that case, however, the law was content-based and violated the Equal Protection Clause on its face, by permitting picketing on a single subject (labor relations) but banning all other picketing within 150 feet of a school. *Id.* at 92, 94-97, 102. Here, Chapter 425 contains no such exception for a category of "favored" speech.

As for the selected, out-of-context statements of the legislators that Plaintiffs cite as purported evidence of discrimination, these are inconsequential given the content-neutral law that prohibits mainly proscribable conduct, and the legislative history viewed holistically. This is particularly true because legislatures are presumed to act in good faith, and "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *O'Brien*, 391 U.S.

12

at 384. This Court should not void the law based on cherry-picked statements by individual legislators. *See id.* Indeed, the Supreme Court rejected this type of consideration in *Hill v. Colorado*, finding that even if a statute's "enactment was motivated by the conduct of the partisans on one side of a debate," it remained content-neutral where the statute was equally applicable to messages on both sides of the debate. 530 U.S. 703, 724 (2000).

### d)  Chapter 425 Is Narrowly Tailored to the County's Significant Interests

This Court has determined already that Section 425.31(i) is narrowly tailored to Westchester's significant interests. *Vitagliano*, 22-CV-09370 (PMH), ECF No. 31, at 7. With respect to the remainder of the challenged Chapter 425 provisions, binding precedent holds that the County's stated interests in ensuring public safety and protecting access to reproductive health care, among others, are valid, significant interests, unrelated to the suppression of free expression. *See McCullen*, 573 U.S. at 486; *Weslin*, 156 F.3d at 297-98. The Chapter 425 provisions challenged here are narrowly tailored to the County's interests. They proscribe conduct and expression that is not protected by the First Amendment, like physical force, physical damage, obstruction, and true threats, and leave open ample alternative channels for communication. Plaintiffs (and anyone else) can speak, leaflet, pray, and express themselves outside of reproductive health care clinics.

### 2.  Chapter 425 Is Not Vague

### a)  Standard of Review: Vagueness

A statute is impermissibly vague as a matter of due process if it either fails to provide a person of ordinary intelligence fair notice as to the prohibited conduct, or is so devoid of standards that it authorizes or encourages discriminatory enforcement. *VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179, 186-87 (2d Cir. 2010). Due process requires only that a statute provide "minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity . . . at the cost of flexibility and reasonable

breadth." *United States v. Rosen*, 716 F.3d 691, 699 (2d Cir. 2013) (internal quotation marks omitted). In reviewing a vagueness claim, courts must adopt any reasonable statutory construction that will preserve a law's constitutionality. *Skilling v. United States*, 561 U.S. 358, 405-406 (2010); *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 177 (2d Cir. 2006). Under these standards, none of Chapter 425's prohibitions is unconstitutionally vague, either facially or as-applied to Plaintiffs.

### b)   Sec. 425.31(c)—the Follow-and-Harass Provision—Is Not Vague

Plaintiffs challenge section 425.31(c), which makes it unlawful to "knowingly follow and harass another person within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility," based on the definition of "harass" in section 425.21(c). Under that section, "harass" means "to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person and which serve no legitimate purpose"; "[f]or the purposes of th[e] definition, conduct or acts that serve no legitimate purpose include, but are not limited to, conduct or acts that continue after an express or implied request to cease has been made." Section 425.21(c).

This "follow and harass" prohibition is nearly identical to that in New York City's clinic access law, N.Y.C. Admin. Code § 10-1003(a)(3), which the U.S. Supreme Court expressly cited as a potentially viable alternative to the constitutionally infirm Massachusetts law at issue in *McCullen*. 573 U.S. at 491 (explaining that states might "consider an ordinance such as the one adopted in New York City that . . . makes it a crime 'to follow and harass another person within 15 feet of the premises of a reproductive health care facility'").[5] With this guidance, the County crafted the follow-and-harass provision, careful to include a definition of "harass." The provision's text and the legislative history

---

[5] Plaintiffs' suggestion that the majority opinion in *McCullen* acknowledged that the New York City law "might be unconstitutional" (Pl. Mem. 14) is an exaggeration. Instead, the Supreme Court merely observed in dicta, in response to Justice Scalia's concurrence, that it remained to be seen "whether the term 'harassment' had been authoritatively construed to avoid vagueness and overbreadth problems." 573 U.S. at 491 n.8.

make clear that "harass" takes its meaning from a specific section of New York State's criminal harassment statute—Penal Law § 240.26—and related case law interpretations. *See* Sec. 425.21(c); SAC Ex. I at ECF page Nos. 12-20.

Plaintiffs facially attack the follow-and-harass provision on two grounds, both rooted in the definition of "harass." ***First,*** Plaintiffs argue that the "serves no legitimate purpose" clause in the definition is vague because it includes, as an illustration, a potential violator's continuing "conduct or acts" following another person's "implied request to cease" the conduct. (Pl. Mem. 13.) But far from introducing uncertainty into the law, the example of a person's ignoring an express or implied request to be left alone provides more specificity to assist in the determination of what constitutes a "legitimate purpose." This language also finds support in the case law. For instance, in *People v. Richards*, the defendant balloon-seller was convicted of harassment under Penal Law § 425.26, where each time a prospective buyer declined defendant's offer and tried to walk around him, defendant stepped in front of her and insisted that she buy balloons for her young children. 22 Misc. 3d 798, 800 (N.Y. Crim. Ct. 2008); *see also Shack*, 86 N.Y.2d at 533-37 (defendant's calls to psychologist-cousin no longer served legitimate purpose of treating his mental health after he stopped taking medication and cousin explained his calls were not welcome). In these cases and others, the conduct continued after an express or implied request to cease had been made—satisfying one element of the penal law, in that the conduct no longer served a legitimate purpose.

Moreover, a person of ordinary intelligence would understand the plain meaning of the definitional terms. "Implied" means "to express indirectly: suggest rather than say plainly." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/imply (last accessed 15 Feb. 2023). A "request to cease" conduct is ordinarily understood as asking that the conduct come to an end. *Id.*, https://www.merriam-webster.com/dictionary/request & https://www.merriam-webster.com/dictionary/cease (last accessed 15 Feb. 2023).

Different examples of implied requests to cease were also discussed during committee meetings. The example of refusing to buy wares and walking around a seller to imply a request that the seller stop (i.e., the balloon-salesman example) was discussed, as was the example of walking by and ignoring an individual handing out objects or literature. (*See* 6/6/2022 Leg. Mtg. at 1:29:25-1:31:16.[6]) In light of the ordinary meaning of the language, the relevant case law, and the examples discussed during committee meetings, Plaintiffs' assertion that the County left the parameters of the definition of "harass" for the courts to decide is unfounded. The quotation that Plaintiffs cite from the County's counsel in support of this claim—that evidence would need to be presented to the court to make a determination—merely harkened back to a prior committee discussion about the fact-intensive nature of proving up harassment claims, which is an unremarkable proposition. (6/6/22 Leg. Mtg. 1:26:51-1:31:16.) Further, courts have interpreted and do interpret and apply statutes that involve implied consent, for example. *See, e.g., Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 564-65 (2d Cir. 2006) (applying a North Carolina law that involved "express or implied consent"). That a court might be required to make a factual determination in a case is not a novel consideration, nor does it render a statute unconstitutionally vague.

Plaintiffs' reliance on *City of Chicago v. Morales* (Pl. Mem. 13) is thus misplaced. There, a Supreme Court plurality struck down a Chicago ordinance that criminalized loitering—which was defined simply as "remaining in any one place with no apparent purpose"—as vague, where the definition was innately subjective, and the statute failed to include a *mens rea* requirement, or any other elements or standards to guide compliance with the law or its enforcement. 527 U.S. 41, 55-64 (1999). In contrast, Chapter 425's follow-and-harass provision and corresponding definition include a *knowingly* scienter

---

[6] The video of this committee meeting is available at:
https://westchestercountyny.granicus.com/player/clip/1463?view_id=1&redirect=true&h=9c1c3977d426a1edf751722cc4ca7a6f.

requirement, as well as numerous other limitations: "following"; the 25-foot vicinity; and the repeated course of conduct or acts that alarm or seriously annoy others. *See Hill* 530 U.S. at 732-33 (explaining that Colorado's 8-foot no-approach zone was "ameliorated by [its] scienter requirement"; included common phrases that would be easily understood; and included adequate guidance for law enforcement, given the "specificity of the definitions of the zones").

**_Second_**, Plaintiffs argue that the definition of "harass" comprises an "unascertainable standard" because it targets acts that "alarm or seriously annoy" others. (Pl. Mem. 13.) However, not only is this an ascertainable standard, it is already prohibited conduct under Section 240.26(3) of the New York Penal Law. Under that section, a person who intentionally "engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose" can be found guilty of harassment in the second degree. *See Jaegly v. Couch*, 439 F.3d 149, 152-53 (2d Cir. 2006) (quoting N.Y. Penal L. § 240.26(3) and upholding probable cause on an arrest for violation of this subsection). Also with respect to ascertainability, New York's highest court has long held that the State Penal Law's harassment statutes assume a reasonable person standard for potential victims. *See People v. Lagano*, 39 N.Y.3d 108, 112 (2022) (construing Penal Law § 240.26(1) and explaining that a "'true threat' is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm"); *see also People v. Harvey*, 307 N.Y. 588, 592 (1954) ("[L]anguage or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man."). Thus, given this decisional law, a reasonable person standard would apply herein as well.

The cases Plaintiffs attempt to rely on—*Coates v. Cincinnati* and *People v. Golb* (Pl. Mem. 13)—are readily distinguishable, most fundamentally because the statutes at issue in each of those cases targeted protected First Amendment rights, without sufficient limiting language, whereas here the

provision targets unprotected conduct, with specific limiting parameters. In *Coates*, the Supreme Court determined that an ordinance was unconstitutional on its face where it prohibited "three or more persons to assemble . . . on . . . sidewalks . . . and there conduct themselves in a manner annoying to persons passing by." 402 U.S. 611, 611-612 (1971). The Court explained that the Constitution does not permit "a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people." *Id.* at 615. Section 425.31(c), conversely, prohibits *following* another person within specific 15-foot zones, *and* committing repeated *acts* or engaging in a courses of *conduct* that alarm or seriously annoy another person, and which serve no legitimate purpose. Further, and in contrast to the statute in *Coates*, the definition of "harass" does not require the level of annoyance to be measured by the unique sensibilities of each individual potential victim, which the Supreme Court deemed especially problematic in that case. 402 U.S. at 615. Rather, as discussed above, a reasonable person standard is assumed.

*Golb* is similarly inapposite. There, the New York Court of Appeals declared unconstitutional an "aggravated harassment" statute that criminalized pure speech without sufficient limitation. 23 N.Y.3d 455, 467 (2014) (statute violated where person engaged in any "communication" made "in a manner likely to cause annoyance or alarm"). The Court determined that the law was vague (and overbroad) because "any proscription on pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to invoke immediate violence." *Id.* (internal quotation marks omitted). More instructive here is *People v. Dietze*, 75 N.Y.2d 47 (1989), which *Golb* relied on. In *Dietze*, the Court of Appeals invalidated a prohibition on the public use of "abusive or obscene language" because it regulated "pure speech" and was not appropriately limited; it was thus unconstitutional. 75 N.Y. 2d at 50-52 & n.1. But a separate provision of the same harassment law, which was also before the Court, was left intact: that provision prohibited certain physical conduct

committed (or attempts or threats to do the same) with the "intent to harass, annoy, or alarm." *Id.* at 50-54 & n. 1.

Given the above, Section 425.31(c) is clearly worded and sufficiently limited, and gives fair notice to Plaintiffs, and anyone else, about the parameters of the law. Further, the law can be enforced in a rational and even-handed manner. While law enforcement may be required to exercise some level of judgment in enforcing the law, so too does law enforcement exercise judgment with respect to any of the harassment laws. As the Supreme Court has noted, the necessity for exercise of judgment by police in enforcing a criminal law does not invalidate it—the question is whether the law establishes sufficient standards to guide the exercise of judgment. *Hill*, 530 U.S. at 732-33. Here, the degree and nature of judgment required does not invite arbitrary or discriminatory enforcement in light of the numerous and specific elements of the provision. Thus, Plaintiffs' facial and as-applied vagueness arguments regarding the follow-and-harass provision fail.

### c) Secs. 425.31(d), (e) & (f)—Force and Threats of Force—Are Not Vague

Sections 425.31(e) and (f) are virtually identical to provisions of FACE and the NYSCAA. *See* 18 U.S.C. § 248(a); N.Y. Penal Law § 240.70(1)(a)-(b); N.Y. Civ. Rights Law § 79-m. Like those statutes, Sections 425.31(e) and (f) unambiguously prohibit force, threats of force, and physical obstruction and blocking under specific circumstances, and these elements are necessary predicates to a violation. Given the clear conduct it proscribes, FACE—which also prohibits attempts—has been upheld, time and again, when challenged on vagueness grounds. *See, e.g.*, *Dinwiddie*, 76 F.3d at 924; *see also New York v. Cain*, 418 F. Supp. 2d 457, 482 (S.D.N.Y. 2006) (noting no material difference between challenged provision of the NYSCAA and FACE).

Plaintiffs' bizarre argument that these sections do not actually require any predicate force, threat of force, or obstruction because the plain language of the law should be supplanted with words Plaintiffs have cherry-picked and spliced from the legislative intent (Pl. Mem. 15) is wrong. Rather,

the plain text of a statute is reviewed first; the legislative intent should only be reached if questions remain about the law's meaning. The cases Plaintiffs cite in support of their argument (Pl. Mem. 15) do not hold otherwise. *See Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972) ("Although the prohibited quantum of disturbance is *not specified in the ordinance*, it is apparent from the statute's *announced purpose* that the measure is whether normal school activity has been or is about to be disrupted." (emphases added)); *VIP of Berlin*, 593 F.3d at 188 ("In addition to the plain meaning of the ordinance's wording . . . the ordinance's stated purpose—preventing the adverse secondary effects . . . provides additional clarity and guidance.").

In any event, the stated legislative purpose of Chapter 425 does not evince an intent to dispense with the predicate force, threats of force, or physical obstruction of Sections 425.31(e) and (f). For instance, the legislative intent section references conduct "that unlawfully . . . intimidate[s]," and may "interfere" with a person's access to clinics. Sec. 425.11. But the only "unlawful" intimidation in Chapter 425 is that which is coupled with force, threats of force, or physical obstruction. *See* Secs. 425.31(e), (f).

Plaintiffs also argue that the prohibitions on true threats found in Sections 425.31(d), (e), and (f) are vague when viewed through the lens of the vacated Second Circuit *Griepp* opinion. The Court can reject this argument—and all Plaintiffs' arguments relating to the vacated *Griepp* decision. Regardless of whether the case was mentioned in the legislative history, the question presented in this action is whether the challenged provisions of Chapter 425 are constitutional, not whether the County relied on a vacated decision in creating these provisions. Plaintiffs' continued banging on the *Griepp* table simply demonstrates that they have no legitimate challenge to the plain language of Chapter 425. And needless to say, there is no indication in the plain text of the law, nor in the legislative history, that merely "preaching about the fragility of life" constitutes a true threat. (*See* Pl. Mem. 16.) The Sections are not unconstitutionally vague, either on their face or as-applied to Plaintiffs.

### d) Sec. 425.31(a)—Physical Obstruction—Is Not Vague

Plaintiffs argue, in brief, that Section 425.31(a)'s prohibition on "physically obstructing or blocking"—given the definition of that term—is impermissibly vague. (Pl. Mem. 16.) Under section 425.21(h), to "physically obstruct or block" means "to physically hinder, restrain, or impede, or to attempt to physically hinder, restrain or impede, or to otherwise render ingress to or egress from, or render passage to or from the premises of a reproductive health care facility impassable, unreasonably difficult, or hazardous." Despite Plaintiffs' claim to the contrary, this language is not materially different from that of FACE. *See* 18 U.S.C. § 248(e)(4) ("'Physical obstruction' means rendering impassable ingress to or egress from a facility or rendering passage to or from such a facility unreasonably difficult or hazardous."). Each term used in the County's prohibition precludes actual or attempted *physical* obstruction of some kind—not First Amendment expression—which is cabined further by a motive requirement ("to prevent that person from obtaining or rendering . . . medical treatment or reproductive health care services"). Moreover, as with all the other provisions Plaintiffs challenge in their motion, Section 425.31(a) includes a "knowing" *mens rea*. Indeed, the Supreme Court has repeatedly held that a scienter requirement ameliorates any concern over the adequacy of notice in a vagueness analysis. *See, e.g.*, *Hill*, 530 U.S. at 732. Thus, facially or as-applied, the contours of Section 425.31(a) are not impermissibly vague, and do not set any "trap[s] for the innocent." *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir. 1992).

### e) Sec. 425.31(h)—Interference with Operation of a Clinic—Is Not Vague

Plaintiffs also challenge Section 425.31(h) as vague, due to the definition of "interfere with." As discussed above, the definition is identical to that in FACE, although it adds "to stop . . . through deceptive means or otherwise." Sec. 425.21(d). The County included this language to specifically address individuals who gained entry to a reproductive health care facility under deceptive means, then facilitated the infiltration by numerous other people, ultimately suspending the facility's operation for

a period of time. (5/23/22 Leg. Mtg. at 11:26-29:51;[7] 6/1/22 Leg. Mtg. 3:40-5:20, 2:00:30-2:01:38.)

But "interference" is not a violation on its own, as Plaintiffs insist. Rather, for a violation to occur, "interference" must be tied to suspending the actual operation of a facility. Sec. 425.31(h). A person of ordinary intelligence would understand that the common meaning of "operation" in this context is "the quality or state of being functional or operative." Merriam-Webster.com Dictionary, Def. 2(b), https://www.merriam-webster.com/dictionary/operation (last accessed 16 Feb. 2023). And again, the "knowing" scienter requirement mitigates any concerns regarding the adequacy of notice. An individual would understand if they were knowingly suspending the operation of a clinic through one of the means specified in Section 425.31(h). *See Hill*, 530 U.S. at 732; *Hoffman Estates v. Flipside,* 455 U.S. 489, 499 (1982).

### 3.   Chapter 425 Is Not Overbroad

In the First Amendment context, a "type of facial challenge" exists "whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted). Plaintiffs contend that the law is facially invalid under this theory, but their overbreadth challenge rests on the false premise that Chapter 425 criminalizes speech and free expression by its very terms. This is not true. As discussed in detail above, in construing the subject provisions in Part II.B.2, the challenged Chapter 425 provisions here regulate *conduct*—not pure speech or expression. Given the clear terms of the law, Plaintiffs have not met their burden of establishing that a substantial number of the law's applications would encompass pure speech in an unconstitutional way.

---

[7] The video of this committee meeting is available at:
https://westchestercountyny.granicus.com/player/clip/1437?view_id=1&redirect=true&h=557cd2095116e2
5bfc76977a559bcf18.

New York State courts, in analyzing harassment statutes for overbreadth, have drawn a line between statutes that criminalize conduct, and those that criminalize pure speech. The *Shack* Court, for instance, upheld State Penal Law § 240.30(2), as "it does not prohibit speech or expression—on its face, its proscription is limited to conduct (making a telephone call without any legitimate purpose of communication)." 86 N.Y.2d at 535. The Court explained that "[t]he limiting clause which expressly excludes constitutionally protected speech from its reach plainly distinguishes this statute from those which impose criminal liability for 'pure speech.'" *Id.*; *see Martin v. Flynn*, 133 A.D.3d 1369, 1370 (4th Dep't 2015) (distinguishing, for overbreadth analysis, harassment provision that criminalizes conduct from those that criminalize pure speech). Thus, Plaintiffs' citation to *Golb* (and similar cases, Pl. Mem. 17) is not analogous, because the statute at issue there criminalized pure speech, and lacked any limiting principle. 23 N.Y.3d at 467. Moreover, "[s]peech integral to criminal conduct" has never been protected by the First Amendment. *Stevens*, 559 U.S. at 468.

Regarding the "follow-and-harass" provision specifically, Plaintiffs' overbreadth argument is essentially coterminous with their vagueness argument, contending that Chapter 425 "ostensibly prohibits mere continued speech *after an 'implied request to cease.'*" (Pl. Mem. 17.) By the plain language of the law, this is untrue, because this provision (like the others) applies to conduct, not pure speech. Without a doubt, all the other elements of the follow-and-harass provision would need to be met—including the scienter requirement—in order for a violation to occur. *See People v. Wong*, 776 N.Y.S.2d 194, 196-97 (N.Y. City Crim. Ct. 2004) (upholding stalking statute where liability arises "not from the content of any speech but from the defendant's course of conduct" and "deals with the invasion of a person's privacy, whether that invasion takes the form of verbal communication or physical actions").[8]

---

[8] Further, County legal counsel did not state—as Plaintiffs assert—that a person "handing out leaflets" to another person who has "ignore[d]" a sidewalk counselor's initial attempt to distribute the leaflets would violate Section 431.25(c). County legal counsel was merely giving an example of what might constitute an "implied request to cease," and never suggested that merely "ignoring" someone would amount to a violation of the law. (6/6/22 Leg. Mtg at 1:29:25-1:31:16.) Rather, this would be similar to the balloon seller in *Richards*—if an

The remainder of Plaintiffs' overbreadth arguments consist of hypothetical examples of various forms of speech and protest activity. But "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984); *see Hill*, 530 U.S. at 731-32. This is not to say that Plaintiffs have actually conceived of any impermissible applications of Chapter 425, but only that their hypotheticals cannot carry the day.

## III.   Plaintiffs Have Not Demonstrated Irreparable Harm

With respect to irreparable harm, Plaintiffs argue that Chapter 425 has "effectively stifled Plaintiffs' pro-life sidewalk advocacy at County abortion facilities." (Pl. Mem. 24.) But as explained above, nothing prevents Plaintiffs from participating in the conduct they claim they want to engage in—for instance, anti-abortion sidewalk counseling and literature distribution. Indeed, anti-abortion sidewalk counselors and protesters have continued to carry out these very activities right outside of Westchester County reproductive health care facilities, without incident. *See* Baron Aff. & Exs.; Considine Decl. & Exs.; Lederer Aff. & Exs.; MacLeod Decl. ¶ 4 & Ex. 2. Moreover, and as mentioned above, certain sections of Chapter 425 are nearly identical to those in the existing federal and state clinic access laws. Thus, even were this Court to enjoin those sections of the County law (e.g., Sections 425.31(e) and (f)), the purported "chilling" effect would necessarily remain, to the extent it (subjectively) exists. Further, Plaintiffs have provided no credible evidence of a threat of enforcement—indeed, Plaintiffs provided no evidence of a threat whatsoever, let alone a credible one. As such, Plaintiffs have not carried their burden.

## IV.   The Balance of the Equities and Public Interest Weigh Against Plaintiffs

The County's interests in ensuring public safety and protecting access to reproductive health care clinics (as examples) have been recognized as significant by the courts. *See, e.g., McCullen*, 573 U.S.

---

individual ignored a leafletter, and the leafletter then continuously moved in front of the individual trying to get them to take the leaflet, a violation could occur if the other statutory elements were met.

at 486; *Weslin*, 156 F.3d at 297-98. Further, Chapter 425 is narrowly tailored to the County's interests, leaving open ample alternative channels for communication. *See* Part II.B.1. Where a law furthers the government's interests and Plaintiffs have not shown a likelihood of success on the merits of a constitutional-violation claim, an injunction does not serve the public interest. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 296 (2d Cir. 2021). Thus, Plaintiffs have failed to meet their burden.

## **CONCLUSION**

For the reasons set forth above, the County respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction in its entirety, and for such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
February 22, 2023

Respectfully submitted,

JOHN M. NONNA
WESTCHESTER COUNTY ATTORNEY

By: *John M. Nonna*

John M. Nonna, County Attorney
Justin R. Adin, Deputy County Attorney
Shawna C. MacLeod, Sr. Asst. County Attorney
Alida Marcos, Assistant County Attorney
*Attorneys for the County*
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
Tel: (914) 995-2690