## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **40 DAYS FOR LIFE,** a nonprofit corporation of the State of Texas, | )<br>)<br>) |
| **WHITE PLAINS 40 DAYS FOR LIFE**, an unincorporated association of the State of New York, | )<br>)<br>)<br>) |
| **OKSANA HULINSKY,** and | )<br>) |
| **REGINA JOY CREARY MOLINELLI,** | )<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| **COUNTY OF WESTCHESTER**, | )<br>) |
| Defendant. | ) |

Case No. 7:22-cv-6950-PMH
[related case: 7:22-cv-9370]

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR A PRELIMINARY INJUNCTION**

---

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

   I.    LIKELIHOOD OF SUCCESS ON THE MERITS. ........................................................ 2

       A. Standing ........................................................................................................................ 2

       B. Content-Based Restrictions ........................................................................................... 5

       C. Narrow Tailoring ........................................................................................................... 7

       D. Vagueness ..................................................................................................................... 7

       E. Overbreadth ................................................................................................................. 10

   II.   REMAINING FACTORS. ............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Adam v. Barr*,
 792 F. App'x 20 (2d Cir. 2019) (unpublished) ................................................................ 2

*Animal Legal Def. Fund v. Wasden*,
 878 F.3d 1184 (9th Cir. 2018) ........................................................................................ 6

*Animal Legal Defense Fund v. Kelly*,
 9 F.4th 1219 (10th Cir. 2021) ......................................................................................... 5

*Brown v. City of Pittsburgh*,
 586 F.3d 263 (3d Cir. 2009) ........................................................................................... 7

*City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*,
 142 S. Ct. 1464 (2022) .................................................................................................... 5

*City of Chicago v. Morales*,
 527 U.S. 41 (1999) ..................................................................................................... 8, 9

*Coates v. Cincinnati*,
 402 U.S. 611 (1971) ........................................................................................................ 9

*Connecticut Parents Union v. Russell-Tucker*,
 8 F.4th 167 (2d Cir. 2021) .............................................................................................. 4

*De Dandrade v. United States Dep't of Homeland Sec.*,
 367 F. Supp. 3d 174 (S.D.N.Y. 2019) ............................................................................. 4

*Grayned v. City of Rockford*,
 404 U.S. 104 (1972) ........................................................................................................ 9

*Hill v. Colorado*,
 530 U.S. 703 (2000) ........................................................................................................ 6

*Jaegley v. Couch*,
 439 F.3d 149 (2d Cir. 2006) ........................................................................................... 8

*Martin v. Flynn*,
    133 A.D.3d 1369 (4th Dep't 2015) .................................................................................. 10

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................................... *passim*

*Mental Disability L. Clinic, Touro L. Ctr. v. Hogan*,
    519 F. App'x 714 (2d Cir. 2013) ...................................................................................... 5

*Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
    501 U.S. 252 (1991) ......................................................................................................... 3

*Nat'l Org. for Marriage v. Walsh*,
    74 F.3d 682 (2d Cir. 2013) ........................................................................................... 2, 3

*New York by James v. Griepp*,
    11 F.4th 174 (2d Cir. 2021) ..................................................................................... 3, 7, 10

*New York C.L. Union v. New York City Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ............................................................................................ 4

*New York ex rel. Spitzer v. Operation Rescue Nat'l*,
    273 F.3d 184 (2d Cir. 2001) ............................................................................................ 1

*New York Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) .......................................................................................... 10

*New York v. Griepp*,
    991 F.3d 81 (2d Cir. 2021) .................................................................................. 2, 3, 7, 10

*Nexans Wires S.A. v. Sark USA, Inc.*,
    166 F. App'x 559 (2d Cir. 2006) ..................................................................................... 8

*Niemotko v. State of Md.*,
    340 U.S. 268 (1951) ......................................................................................................... 6

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) ............................................................................................ 4

*People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*,
  No. 20-1776, 2023 WL 2172219, (4th Cir. Feb. 23, 2023) ........................................................ 5

*People v. Dietz*,
  75 N.Y.2d 47 (1989) ................................................................................................................. 9

*People v. Golb*,
  23 N.Y.3d 455 (2014) ......................................................................................................... 9, 10

*People v. Richards*,
  22 Misc. 3d 798 (N.Y. Crim. Ct. 2008) ................................................................................... 7

*People v. Shack*,
  86 N.Y.2d 529 (1995) ............................................................................................................... 8

*People v. Wong*,
  776 N.Y.S.2d 194 (N.Y. City Crim. Ct. 2004) ...................................................................... 10

*Picard v. Magliano*,
  42 F.4th 89 (2d Cir. 2022) ........................................................................................................ 2

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) .................................................................................................................. 6

*Texas v. Johnson*,
  491 U.S. 397 (1989) .................................................................................................................. 6

*U.S. v. Hill*,
  893 F.Supp. 1034 (N.D.Fla. 1994) ........................................................................................... 5

*U.S. v. Stevens*,
  559 U.S. 460 (2010) ................................................................................................................ 10

*United States v. Alvarez*,
  567 U.S. 709 (2012) .................................................................................................................. 5

*Vermont Right to Life Comm., Inc. v. Sorrell*,
  221 F.3d 376 (2d Cir. 2000) ..................................................................................................... 3

*Village of Hoffman Estates v. The Flipside*,
    455 U.S. 489 (1974) .................................................................................................... 9

*VIP of Berlin, LLC v. Town of Berlin*,
    593 F.3d 179 (2d Cir. 2010) ........................................................................................ 7

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) .................................................................................................... 3

**Statutes**

Chapter 425 § 425.11 ........................................................................................................ 9
§ 425.21(d) .................................................................................................................... 5, 9
§ 425.31(c) ............................................................................................................... *passim*
§ 425.31(e) and (f) ............................................................................................................ 5
§ 425.31(h) .................................................................................................................... 5, 9
18 U.S.C. § 248(e)(2) ........................................................................................................ 6

**INTRODUCTION**

The County's Response insists that Chapter 425 "targets" or even "applies" only to unprotected *conduct*, and yet it *admits* that Plaintiffs' quintessential speech on a matter of utmost public concern on public ways *is restricted to the same extent as selling a balloon*. (Resp. 15, 16, 23 n.8.) That the County equates Plaintiffs' First Amendment-protected pro-life speech to the activity of a pushy balloon salesman undermines its entire defense of this preposterous law.

Moreover, the County's revelation of images of pro-life advocacy outside abortion facilities since passage of Chapter 425 *supports* Plaintiffs' position. These images mostly show *passive sign-holding* and *praying*—not *one-on-one sidewalk counseling and leafletting* Plaintiffs seek to conduct without fear of criminal and civil penalties. Lederer Aff. & Ex. 1-3; Considine Decl. & Exs. 1-2; Baron Aff. & Ex. 1. And the man depicted in the "YouTube video" handing a leaflet to a vehicle occupant actually *admits* that he is "**technically in violation of**" Chapter 425.[1]

Plaintiffs, on the other hand, *avoid* engaging in *direct law violations* as a condition of participation in 40 Days "Local Vigils." *See* Second Amended Complaint (SAC) at ¶17. The images the County touts show *significantly reduced participation* in these vigils post-Chapter 425, confirming *direct injury-in-fact to* Plaintiffs 40DFL and WP-40DFL. *Compare* ECF 52-2 (at least 30 people praying outside Greenburgh facility pre-Chapter 425) *with* Baron Decl. Ex. 1 (two people outside same facility during Fall vigil); Lederer Aff. Exs. 1-3 (same).

Indeed, the challenged provisions of Chapter 425 at issue (§§ 425.31(a), (c), (d), (e), (f), and (h)) are essentially codifications of "an erroneous application of [the] F.A.C.E. [Act]" that the Second Circuit has recognized "impinges legitimate First Amendment activity." *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 195 (2d Cir. 2001). Thus it is not "banging on

---

[1] https://www.youtube.com/watch?v=72apkCZLpVA (02:05); All emphasis throughout this brief is added unless otherwise noted. *See also* Burke Suppl. Decl., attached hereto.

the *Griepp* table" (Resp. 20) (whatever that means) to highlight that the law was expressly modeled on (and copied from) the Second Circuit's patently errant application of the *more limited terms* of FACE to materially identical speech in *New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021) (applying FACE to leafletting causing one-second delay, etc.). *See also* ECF 52-9 at 18. All the more so when County Legislators *expressly intended* Chapter 425 to work the same way. *E.g.*, SAC ¶151.

The County's Response entirely ignores that where "government *makes it more difficult*" to "hand[] out leaflets in the advocacy of a politically controversial viewpoint," it "imposes an especially significant First Amendment burden." *McCullen v. Coakley*, 573 U.S. 464, 488-89 (2014). The challenged provisions of Chapter 425 are tailored to impede sidewalk counseling and leafletting as if it were the annoying commercial activity of a balloon-seller, on pain of jailtime.

## I.   LIKELIHOOD OF SUCCESS ON THE MERITS.

**A. Standing.** <u>Individual Standing</u>: Ignoring the relaxed standing rules in First Amendment cases, *Nat'l Org. for Marriage v. Walsh*, 74 F.3d 682, 689 (2d Cir. 2013), the County blithely asserts that sidewalk counseling and leafletting are not "proscribed." (Resp. 4). But that's merely *its current litigation-motivated interpretation*. "There is nothing that prevents the [County] from changing its mind," and it is "not forever bound, by estoppel or otherwise to the view of the law that it asserts in this litigation." *Picard v. Magliano*, 42 F.4th 89, 99 (2d Cir. 2022).[2]

The County points to an unpublished decision in arguing a credible threat of enforcement requires "past or threatened future enforcement," e.g., "warnings by police," etc. (Resp. 4); *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019) (unpublished). But even *Adam* holds past enforcement "*in general*" can establish a credible threat. *Id.* And the New York AG—who helped author

---

[2] The County says in a footnote that Plaintiffs also fail the "redressability" prong because Chapter 425 is allegedly "nearly identical" to the federal and state FACE Acts, which would continue to apply regardless of Chapter 425. Aside from this *de facto* admission that the provisions at issue are *wholly gratuitous* and thus not narrowly tailored, Chapt. 425 is far more restrictive than FACE.

2

Chapter 425 (SAC ¶154)—applied the more limited FACE terms to "de minimis," "incidental contact" such as "reach[ing] out to hand a patient a pamphlet." *Griepp I*, 991 F.3d at 119, 124.

The County conveniently ignores multiple binding precedents finding pre-enforcement standing in First-Amendment contexts despite lack of past enforcement or express warnings of enforcement. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (credible threat where "law is aimed directly at plaintiffs, who, if their interpretation [] is correct, will … risk criminal prosecution"); *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) (statute "could easily be construed as" applying to plaintiff); *Nat'l Org for Marriage*, 714 F.3d at 689 ("plaintiff had not been charged …. [but] believed [] its advocacy activities did not comply with the law"); *see also Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 (1991) ("threat of [enforcement]" is like "the sword over Damocles, creating a 'here-and-now subservience'").[3]

Moreover, the County's Response *confirms* its intent to enforce the "implied consent to cease" condition of § 425.31(c) to speech, precisely as in *Griepp I* (*see* 991 F.3d at 122).[4] The County states that "if an individual ignored a leafletter, [who] then continuously *moved in front of the individual*" (whatever that means) "trying to get them to take the leaflet, a violation could occur if the other statutory elements were met." (Resp. 24.) This despite the fact "no form of speech is entitled to greater constitutional protection" than leafleting on public issues. *McCullen*, 573 U.S. at 488-89. Accordingly, Plaintiffs "reasonably [] fear" enforcement against their sidewalk counseling and leafleting, *Vermont Right to Life Comm.*, 221 F.3d at 384, and thus have standing.

---

[3] That the plaintiff in *Picard* had previously been arrested was a *sufficient but not necessary* reason for finding a credible threat of enforcement. *Picard*, 42 F.4th at 100.

[4] Notably *Griepp I* was never reversed on the merits; the majority later simply deferred to the District Court's "considerable discretion" in denying an injunction. *New York by James v. Griepp*, 11 F.4th 174, 176 (2d Cir. 2021).

Organizational Standing: Generally, "if one plaintiff has standing, [the court] need not decide the standing of others." *De Dandrade v. United States Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 182 (S.D.N.Y. 2019). Regardless, the County's arguments do not undermine organizational standing. By restricting WP-40DFL's ability to engage in sidewalk counseling and leafletting—activities core to its mission (SAC ¶23)—the law has "impeded, and will continue to impede, the organization's ability to carry out this aforementioned responsibility." *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012). The same is true for 40DFL, which relies on WP-40DFL to carry out its core pro-life mission in the County (Id. ¶¶16-20). Chapter 425 has also chilled participation in the biannual 40-day "Local Vigils" by reducing attendance approximately 50% during the Fall Vigil (ECF No. 52-17 at ¶16), as confirmed by the County's own photos and videos. *See supra*. Thus, both organizational Plaintiffs' "ability to carry out [their] mission" is being "irreparably harmed," *id.* at 305—a direct injury-in-fact.

The County's citation to *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021) is inapposite. A rule establishing a racial quota in schools did not directly impede the organizational plaintiff's mission. *Id.* at 170-71. To the extent the rule *indirectly* impacted the organization, it failed to show any "involuntary" "cost" that "adversely affect[ed] one of the activities the organization *regularly conducted* [] in pursuit of its organizational mission." *Id.* at 173-74. Expenditures—e.g., for "bus tours"—were not "reasonably necessary to continue an *established core activity*" and were "new activities" undertaken *voluntarily*. *Id.* at 174.

Even assuming *arguendo* Chapter 425 only affects WP-40DFL and 40DFL indirectly, they have suffered only *involuntary burdens* on core activities. *Russell-Tucker*, 8 F.4th at 173. Indeed, the Second Circuit recognizes "litigation expenses alone" as "sufficient to support standing." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). And 40DFL has been "forced [] to divert

resources… in order to contest the challenged provisions of Chapter 425." (SAC ¶100.) *See Mental Disability L. Clinic, Touro L. Ctr. v. Hogan*, 519 F. App'x 714, 717 (2d Cir. 2013).[5]

**B. Content-Based Restrictions.** <u>Facial content discrimination</u>: Contrary to the County's arguments, § 425.31(h) is content-based because "interfere with" is defined to include "to stop…through deceptive *means* or otherwise," § 425.21(d). Law enforcement must necessarily consider whether subject speech is "*deceptive*," evaluating the "*substantive message itself*." *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1472 (2022) (evaluating *non*-substantive location of a sign is content-neutral); *McCullen*, 573 U.S. at 479 (law is "content based if it require[s] [examination of] the content of the message [] to determine… a violation").

The County notes that protection for false speech does not extend to "legally cognizable harms associated with false statements," and that here, sub (h) allegedly requires that deceptive speech "suspend[] the operation of a reproductive health facility." (Resp. 9-10) (citing *United States v. Alvarez*, 567 U.S. 709, 719-21 (2012)). But the 10th Circuit rejected a similar argument in enjoining a Kansas statute prohibiting "deceptive" entry into an animal facility "with intent to damage the enterprise," because restricting only deception *with a particular viewpoint* (intent to damage the facility) is not "legally cognizable harm." *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1223, 1237 (10th Cir. 2021); *accord People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*, No. 20-1776, 2023 WL 2172219, at *8 (4th Cir. Feb. 23, 2023).[6] Here § 425.31(e) and (f) likewise fail because they restrict "deceptive" speech only where the predicate use of force or hindrance (i.e., *de minimis* contact according to *Griepp I*) furthers a

---

[5] In light of Second Circuit precedent refusing to recognize associational/representational standing in §1983 claims (Resp. 7), Plaintiffs preserve this aspect of WP-40DFL's standing for appeal.
[6] Moreover, courts have widely deemed abortion-clinic "escorts" on the sidewalk to be "integral" to clinic operations under the FACE Act, *e.g.*, *U.S. v. Hill*, 893 F.Supp. 1034, 1039 (N.D.Fla. 1994). The plain terms of sub (h) are easily construed to prohibit "interfering with" escorts.

5

*particular viewpoint*—i.e., "discouraging" from or "because" of obtaining/providing reproductive health services. In contrast, FACE does *not* define "interfere with" to include "deceptive" speech (*see* 18 U.S.C. § 248(e)(2)), and thus cases deeming FACE content-neutral are inapposite.

Emotive impact: If "speech outside [] abortion clinics caused offense or made listeners uncomfortable, such offense or discomfort would not give the [government] a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481. But that is unquestionably the basis for § 425.31(c)'s follow-and-harass provision, copied nearly verbatim from *Griepp I*, which applied to "pure speech" (i.e., leafletting), and is based on *listener reaction* ("annoy[ance]" and "implied request to cease"). *See Texas v. Johnson*, 491 U.S. 397, 412 (1989) (even "expressive conduct" cannot be restricted based on communicative impact). *See also* SAC ¶125. And Chapter 425's legislative history confirms that the remaining challenged provisions are similarly based on preventing emotional harm. (Memo in Support of PI at 20-21.) The County's citations to cases *not* involving *counseling and leafletting*, i.e., quintessential speech, are unavailing. (Resp. 11.)

Content-based purpose: The County says *Niemotko* is irrelevant because it involved discriminatory animus in context of *licensing*, but the Court evaluated underlying *animus* behind *government action*, including *enacting statutes*. *Niemotko*, 340 U.S. 268, 328 (1951); *accord Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) ("*[L]aws . . . adopted* [] because of disagreement with the message" are content-based). Further, *Hill v. Colorado* merely held that a statute can permissibly be "motivated by the *conduct* of partisans on one side of the debate," 530 U.S. 703, 724 (2000), *not* their *viewpoint*, *id.*, at 720. Contrary to the County's accusation of "cherry-picking" legislative history, courts recognize that such history illuminates underlying discrimination. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1198 (9th Cir. 2018) ("[W]e do not ignore that a vocal number of supporters were less concerned with the protection of

6

property than they were about protecting a target group from critical speech."). Thus, the challenged provisions must undergo strict scrutiny—which the County makes *no effort to satisfy*.

**C. Narrow Tailoring**. The County makes no actual argument that Chapter 425's challenged provisions are narrowly tailored (even assuming content-neutrality). It merely wrongly asserts they apply to conduct, not speech. (Resp. 13.) Moreover, the County misleadingly asserts that "Chapter 425 was a response to" alleged illicit "conduct occurring *near*" abortion facilities in the County, omitting its express reliance on a specific *trespass incident* "at All Women's Health & Medical Services," which was already prohibited. (ECF 52-9 at 12-13; SAC ¶¶152, 178.) The County ignores Attorney MacLeod's admission that even if sidewalk counselors are staying "outside the bubble zone," "*a number of other provisions might kick in*." (SAC ¶148.) Such "layering of [multiple] types of prophylactic measures is substantially broader than necessary to achieve" the asserted interest. *Brown v. City of Pittsburgh*, 586 F.3d 263, 279 (3d Cir. 2009). Accordingly, Chapter 425 "fail[s] to meet the requirement of narrow tailoring precisely because [it] 'unnecessarily sweeps in innocent individuals and their speech.'" *Griepp I*, 991 F.3d at 143 (Livingston, C.J., dissenting) (cleaned up) (quoting *McCullen*, 573 U.S. at 493).

**D. Vagueness**. The County never acknowledges the "greater [] specificity" requirements on statutes reaching First Amendment speech. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010). The County claims the follow-and-harass provision of § 425.31(c) "takes its meaning from" NY Penal Law § 240.26 and "case law interpretations" (Resp. 15)—none of which *define* "legitimate purpose" to exclude speech after an "implied request to cease." The County says this definition was meant to "provide[] more specificity," (id.), but the legislative history confirms it was to prevent *pro-life* advocates from saying their activity "was for a legitimate purpose." (SAC ¶125.) Further, *People v. Richards*, 22 Misc. 3d 798, 800 (N.Y. Crim. Ct. 2008) (balloon-selling)

7

and *People v. Shack*, 86 N.Y.2d 529, 535 (1995) (telephone harassment) are entirely irrelevant to restrictions on *sidewalk counseling and leafletting*, as "[n]o form of speech is entitled to greater constitutional protection." *McCullen*, 573 U.S. at 489.

The County absurdly argues that a reasonable person "understand[s] the plain meaning of the" term "implied," which says nothing about knowing for sure when other *human beings* "implicitly" reject another's speech, especially in this "sensitive First Amendment context." *Griepp I*, 991 F.3d at 154-55 (Livingston, C.J., dissenting). The County falsely claims that County counsel's admission that "implied request to cease" "will be up to a court to determine" (SAC ¶147) "*merely harkened back to a prior committee discussion*" (Resp. 16). But County counsel's statement **directly responded** Legislator Maher's question "**Um, so what is 'implied request [to cease']?**" (SAC ¶145). The County reveals desperation in saying courts "have interpreted" laws that "involve implied consent," citing only an unpublished decision on *misappropriation of trade secrets*. *Nexans Wires S.A. v. Sark USA, Inc.*, 166 F. App'x 559, 564-65 (2d Cir. 2006). That has *nothing* to do with First Amendment vagueness. Further, § 425.31(c)'s scienter requirement is flatly inconsistent with ignoring an "*implied* request[s] to cease." *See McCullen*, 573 U.S. at 495 (to find intent "officer need only [*expressly*] order [one] to move"); *City of Chicago v. Morales*, 527 U.S. at 60 (anti-loitering law using term "no apparent purpose" is "*inherently* subjective").[7]

Further, because § 425.31(c) applies to pure speech, it is no answer to say that the required "acts" (expressly distinguished from "conduct"), *see* § 425.21(c), must "seriously alarm or annoy." Indeed, *Jaegley v. Couch*, 439 F.3d 149 (2d Cir. 2006) involved a law applied to *violating a protection order after a specific threat of force*. Here, the County *admits* that § 425.31(c) applies

---

[7] Nor does the "follow" element vitiate the problem as the term itself is undefined and the County admits it includes "mov[ing] in front of" another, which is also vague.

to *continued leafletting* after someone "ignore[s] a leafletter" (Resp. n.8), rendering *Coates* and *Golb*—invalidating restrictions on "annoy[ing]" pure speech—directly applicable. *Coates v. Cincinnati*, 402 U.S. 611 (1971); *People v. Golb*, 23 N.Y.3d 455, 467 (2014); *see also People v. Dietz*, 75 N.Y.2d 47, 51 (1989) (speech must be "much more than" "abusive" to be prohibited). The County's invocation of the "reasonable person" standard also fails here in light of *Golb*, *Dietz*, and the concerns with both fair notice *and* arbitrary enforcement. Finally, § 425.31(c) does not merely call for "exercise of some level of judgment" by law enforcement (Resp. 19), but pure speculation for both speaker and police officer as to when core elements are violated by "leafletting" on a sidewalk, which the County *admits* is subject to the provision.

As to the remaining vagueness problems, *Grayned v. City of Rockford*, 404 U.S. 104, 112 (1972) directly applies, because the "prohibited quantum of" ['force'/'hind[rance]'/'threat of force'/'interference'] is not specified in the ordinance," while the "announced purpose" is to restrict activity that "harass[es] or intimidat[es]" those entering reproductive clinics, § 425.11, giving rise to Plaintiffs' reasonable fear that Chapter 425's physical predicate requirements will be enforced as liberally as FACE was in *Griepp I*. All the more so, given that "physical obstruction and blocking" is defined to cover a *much broader array of activities* than FACE. (Memo in Supp. at 5.) Moreover, the County does not respond to the fact "deceptive means *or otherwise*," § 425.21(d), "has no core." *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 495 n.7 (1974). And § 425.31(h) prohibits undefined "*activities*" that "*includ[e], but [are] not limited to*," "interfering with" several broadly described "operations," which is likewise vague.

Finally, while the Supreme Court "has suggested that a scienter requirement may mitigate" vagueness "with respect to the adequacy of notice," *Morales*, 527 U.S. at 110 (Thomas, J.,

9

dissenting), that does not solve the arbitrary enforcement concern; nor is it a get-out-of-vagueness-free card. *See, e.g.*, *Golb*, 23 N.Y.3d at 467 (finding vagueness despite scienter requirement).

**E. Overbreadth**. The County's overbreadth arguments falter on its assertion that Chapter 425 does not apply to protected speech. *Shack*, *Martin v. Flynn*, 133 A.D.3d 1369, 1370 (4th Dep't 2015), and *People v. Wong*, 776 N.Y.S.2d 194 (N.Y. City Crim. Ct. 2004) are all inapposite.[8] While the challenged provisions forbid some unprotected conduct, their sweeping scope "nowhere requires" actual prevention of clinic access. *U.S. v. Stevens*, 559 U.S. 460, 474 (2010). But a "substantial number" of applications apply to speech, *id.*, and are not purely speculative, as the County asserts. *See Griepp I*, 991 F.3d 81; Resp. n. 8 (admitting follow-and-harass can include leafletting). As noted, courts are used to invalidating vague "harassment" statutes on overbreadth grounds as well. (Memo in Supp. at 17.) Plaintiffs' overbreadth challenge remains valid.

## II. REMAINING FACTORS.

Accordingly, Plaintiffs also satisfy the remaining factors for a preliminary injunction for the reasons stated in their Memo in Support (at 24-25). *See New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Plaintiffs thus respectfully request that this Court grant their Motion for Preliminary Injunction.

Respectfully submitted,

/s/ Michael G. McHale  
Michael G. McHale  
Senior Counsel  
Thomas More Society  
Omaha, NE 68114  
402-501-8586  
mmchale@thomasmoresociety.org  
*Counsel for Plaintiffs* (*pro hac vice)

/s/ Christopher A. Ferrara  
Christopher A. Ferrara  
Special Counsel  
Thomas More Society  
Whitestone, Queens, New York 11357  
Telephone: (718) 357-1040  
cferrara@thomasmoresociety.org  
*Counsel for Plaintiffs*

---

[8] The County omits that the "balloon seller in *Richards*" was charged under the terms of *NY Penal L. § 240.26(3)*—from which they say § 425.31(c) "takes its meaning"—and who thus "met" the "other statutory elements" by continued attempts to sell after being "ignored." (Resp. n.8.) *Richards*, 22 Misc.3d at 807.