UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OKSANA HULINSKY, *ET AL.*,

                    Plaintiffs,

-against-

COUNTY OF WESTCHESTER,

                    Defendant.

Case No. 7:22-CV-6950 (PMH) *Rel. Vitagliano v. County of Westchester,* 7:22-cv-09370 (PMH)

# MEMORANDUM OF LAW IN SUPPORT OF ALL WOMEN'S MEDICAL OFFICE BASED SURGERY, PLLC'S MOTION FOR INTERVENTION

FOLEY HOAG LLP
Natasha N. Reed
(*nreed@foleyhoag.com*)
Mital B. Patel
(*mpatel@foleyhoag.com*)
Lynn A. Neils
(*lneils@foleyhoag.com*)
Shrutih V. Ramlochan-Tewarie
(*stewarie@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  212-812-0400
Fax:  212-812-0399

*Attorneys for Proposed Intervenor All Women's Medical Office Based Surgery, PLLC*

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      Proposed Intervenor ..................................................................................................2

II.     Chapter 425 to the Laws of Westchester County.....................................................4

III.    This Lawsuit..............................................................................................................5

ARGUMENT.........................................................................................................................5

I.      Intervention is Appropriate Under Federal Rule of Civil Procedure 24(a) ............5

      A.    AWM's Motion is Timely ...........................................................................6

      B.    AWM Has an Interest in the Subject Matter of this Action......................8

      C.    AWM is So Situated That Disposition of the Action Without Intervention
           Would Impede It's Ability to Protect It's Interests....................................9

      D.    AWM's Interests Are Not Adequately Represented by the County of
           Westchester ...............................................................................................10

II.     Intervention is Also Appropriate Under Federal Rule of Civil Procedure 24(b)...............13

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*AMA v. Stenehjem*,
  2019 U.S. Dist. LEXIS 234220 (D.N.D. Nov. 26, 2019) .......................................................... 9

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
  241 F.R.D. 100 (D. Conn. 2007) ........................................................................................... 14

*Catanzano by Catanzano v. Wing*,
  103 F.3d 223 (2d Cir. 1996) ................................................................................................... 7

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ........................................................................................................... 5

*Dorsett v. County of Nassau*,
  283 F.R.D. 85 (E.D.N.Y. 2012) ............................................................................................ 12

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*,
  847 F.2d 1038 (2d Cir. 1988) ............................................................................................... 13

*Great Atl. & Pac. Tea Co. v. Town of E. Hampton*,
  178 F.R.D. 39 (E.D.N.Y. 1998) .............................................................................................. 9

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986) ................................................................................................... 13

*Herdman v. Town of Angelica*,
  163 F.R.D. 180 (W.D.N.Y. 1995) ........................................................................................... 9

*Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*,
  658 F. Supp. 1205 (S.D.N.Y. 1987) ....................................................................................... 6

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
  1990 U.S. Dist. LEXIS 15762, 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990) ........................ 9

*In re Holocaust Victim Assets Litig. v. Swiss Bankers Ass'n*,
  225 F.3d 191 (2d Cir. 2000) ............................................................................................ 7, 13

*In re Penn Cent. Commercial Paper Litig.*,
  62 F.R.D. 341 (S.D.N.Y. 1974) .............................................................................................. 6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*,
  477 U.S. 274 (1986) ............................................................................................................... 6

*Mastercard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) .................................................................................................. 6

*McNeill v. N.Y.C. Hous. Auth.*,
  719 F. Supp. 233 (S.D.N.Y. 1989) ...................................................................................... 14

*Miller v. Silbermann*,
  832 F. Supp. 663 (S.D.N.Y. 1993) ........................................................................... 7, 10, 14

*N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv.*,
  540 F. App'x 877 (10th Cir. 2013) ............................................................................ 11

*N.Y. Pub. Interest Research Grp. v. Regents of Univ. of N.Y.*,
  516 F.2d 350 (2d Cir. 1975) ........................................................................ 8, 9, 10, 12

*New York v. Abraham*,
  204 F.R.D. 62 (S.D.N.Y. 2001) ............................................................................ 8, 14

*Planned Parenthood Minn., N.D., S.D. v. Alpha Ctr.*,
  213 F. App'x 508 (8th Cir. 2007) ............................................................................... 9

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) .................................................................................... 12

*State ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) .................................................................................... 10

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ............................................................................................... 6

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .................................................................................................. 10

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ........................................................................................... 9

*Wash. Electric Coop., Inc. v. Mass. Mun. Wholesale Electric Co.*,
  922 F.2d 92 (2d Cir. 1990) ......................................................................................... 8

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
  782 F. Supp. 870 (S.D.N.Y. 1991) ............................................................................ 7

*XL Specialty Ins. Co. v Lakian*,
  632 Fed. App'x 667 (2d Cir. 2015) ............................................................................ 6

**Statutes**

Fed. R. Civ. P. 24 ............................................................................................................ 10

Fed. R. Civ. P. 24(b)(2) .................................................................................................. 13

Laws of Westchester County, ch. 425 (2022) ................................................................. 4

**Other Authorities**

7C Charles Alan Wright, et al., Federal Practice and Procedure § 1909 (3d ed. 2019) ............... 10

Pursuant to Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure, All Women's Medical Office Based Surgery, PLLC (hereinafter, "AWM" or "Proposed Intervenor") submits this memorandum of law in support of its motion to intervene in the above-captioned action. AWM requests intervention in this action to defend the constitutionality of Local Law No. 9-2022 adopted by the County of Westchester (the "County"), adding Chapter 425 (hereafter, "Chapter 425"), to ensure safe access to reproductive health care facilities for staff, and for patients seeking reproductive health counseling, treatments and procedures. AWM seeks to protect the vital economic and reputational interests of itself and other reproductive health care service providers ("RHCPs") like AWM, as well as the safety of those working at or entering AWM and other RHCPs, all of which are at stake in this action.

## INTRODUCTION

The County enacted Chapter 425 to ensure safe access for anyone seeking to enter a reproductive health care facility in the County, including staff and patients. Safe and secure access to reproductive health care facilities is vitally important for the operation of any reproductive health care facility located in the County. The plaintiffs in this action are anti-abortion advocates and organizations who seek to overturn Chapter 425 on the grounds that the law allegedly violates the First and Fourteenth Amendments. Overturning Chapter 425 would significantly impede AWM's ability and the ability of other RHCPs in the County to operate and carry out their business. Without Chapter 425, RHCPs in the County would have fewer legal options to protect their economic and reputational interests, which in large part depend on their ability to ensure safe and secure access for staff and patients, privacy for their patients, and protection from anti-abortion advocates who seek to harass them. AWM's concerns are not conjecture; before the County enacted Chapter 425, AWM, its staff and patients

1

were all targeted by the anti-abortion advocacy group Red Rose Rescue. Members of Red Rose Rescue infiltrated AWM's practice located in the County, blocking access for staff and patients, pushing and shoving past staff members, and harassing and frightening patients inside the practice. This conduct completely halted all reproductive health care services at AWM's Westchester practice for several hours. The County enacted Chapter 425, in large part, in direct response to this incident, which clearly exceeded the bounds of protected First Amendment expression. Plaintiffs' specious attempt to overturn Chapter 425 through this lawsuit jeopardizes the County's much-needed measure to protect reproductive health care facilities, their staff, and those who seek care in these facilities. AWM seeks to intervene in this action to protect its unique interests at risk in this lawsuit.

## BACKGROUND

### I. Proposed Intervenor

AWM traces its roots to All Women's Health & Medical, which was formed in 1978 when a group of private physicians came together to "create an association of private gynecological practices dedicated to serving the needs of women who request an abortion." (Declaration of Constance Considine, executed March 14, 2023 and filed herewith ("Considine Decl." or "Considine Declaration") ¶ 2.) After some acquisitions, All Women's Health & Medical became AWM, which has since grown to operate reproductive health care facilities in the State of New York, including a practice in White Plains, New York, Westchester County (the "White Plains Practice"). (*Id*. ¶¶ 2, 3.) AWM is a member of the National Abortion Federation ("NAF") and the National Coalition of Abortion Providers. (*Id*. ¶ 4.) AWM's physicians are all state licensed, board-eligible or board certified obstetrician-gynecologists dedicated to providing the highest quality of medical services to women in a safe, private, caring and sensitive

2

environment. (*Id.* ¶ 5.) AWM provides a full range of gynecological services at its offices, including family planning services, routine yearly physicals, sonography, out-patient surgeries, and abortion services. (*Id.* ¶ 6.)

AWM understands that deciding to terminate a pregnancy may be one of the most difficult decisions that a woman can make, which is why AWM's physicians and trained professional staff provide private, confidential, one-on-one patient education. (*Id.* ¶ 7.) Patient safety, confidentiality and privacy are some of AWM's primary goals when providing reproductive health care services. (*Id.* ¶ 8.)

Unfortunately, however, AWM has fallen victim to activities aimed at disrupting its services and intimidating and harassing its staff and patients. Specifically, during the morning of November 27, 2021, several individuals associated with the anti-abortion advocacy group Red Rose Rescue, infiltrated AWM's White Plains Practice. The anti-abortion advocates disrupted operations at the White Plains Practice by blocking access to one of the office doorways and occupying the waiting room for several hours. Police officers from the White Plains Police Department arrived at the scene approximately 20 minutes after the trespassers entered the White Plains Practice, but over three hours passed before the police officers removed the anti-abortion advocates from the White Plains Practice. (*Id.* ¶ 10.) During this time, the anti-abortion advocates approached women in the waiting room, attempting to convince them not to seek abortions and invading their privacy and personal space. The White Plains Practice was unable to provide any reproductive healthcare services during this time and its staff and patients felt unsafe during and after the incident. (*Id.* ¶ 11.) Following the incident, the FBI contacted AWM seeking contact information for all patients present during the infiltration. (*Id.* ¶ 15.) AWM forewarned all patients prior to releasing their information and patients expressed concern and

3

fear regarding the incident to AWM. (*Id.* ¶ 15.) After the incident, AWM hired a full time security guard and spent over $30,000 in increased security measures, which included privacy films on windows and additional locks and cameras. The Red Rose Rescue incident caused reputational and financial harm to AWM. (*Id.* ¶¶ 13, 14, 16.)

## II. Chapter 425 to the Laws of Westchester County

On June 27, 2022, the County enacted Local Law No. 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities in direct response to conduct occurring at and near reproductive healthcare facilities that exceeded the bounds of protected First Amendment expression," like the actions that took place at AWM's White Plains Practice described above. (Westchester County, NY, Laws of Westchester County, ch. 425 (2022) (hereafter, "Chapter 425"); Dkt. 24 at 1.) Indeed, the County Board of Legislators (hereinafter, the "Board") found that the laws prior to the enactment of Chapter 425 "[did] not adequately protect reproductive health care facilities, and those who work in, seek access to, or obtain services from such facilities." (Dkt. No. 1, Ex. 6 at 23.) Accordingly, the Board determined that it was "appropriate to enact legislation to prohibit interference with accessing reproductive health care facilities and obtaining reproductive health care services, in order to: protect and promote the public health, safety, and welfare; ensure order; protect the freedom of access to reproductive health care facilities; protect the freedom to obtain reproductive health care services; promote the free flow of traffic in the public way; advance medical privacy and the well-being of patients…; and safeguard private property." (Dkt. No. 1, Ex. 6 at 24.)

The County was also aware of the U.S. Department of Homeland Security's warning that unrest and extreme actions are likely to persist and may even increase in the aftermath of the

Supreme Court decision *Dobbs v. Jackson Women's Health Org.* 142 S. Ct. 2228 (2022). (Dkt. No. 1, Ex. 6 at 24.) The County, however, recognized that even before *Dobbs*, there were increased levels of violence in and around reproductive health care facilities. (*See id.* at 25.) The NAF's 2021 Violence & Disruption Statistics show a drastic increase in intimidation tactics, vandalism, and other activities aimed at disrupting services, harassing providers, and blocking patients' access to abortion. Specifically, there was a 600% increase in stalking, 450% increase in blockades, 163% increase in hoax devices/suspicious packages, 129% increase in invasions and 128% increase in assault and battery incidences as compared to 2020. (Considine Decl. ¶ 9, Ex. A.) With this backdrop, the County enacted Chapter 425.

### III. This Lawsuit

On August 15, 2022, Plaintiffs filed this lawsuit seeking to overturn Chapter 425. (Dkt. No. 1.) Plaintiffs allege that complying with Chapter 425 will violate the rights afforded to them under the First and Fourteenth Amendments, specifically freedom of speech and assembly, freedom to exercise religion, and due process. (Dkt. No. 1.) Plaintiffs ask the Court to invalidate Chapter 425 on the basis that it is unconstitutional, unlawful, and unenforceable. (Dkt. No. 1.) On March 1, 2023, Plaintiffs' motion for a preliminary injunction was fully briefed and filed with the Court. (Dkt. Nos. 80-88.)

### ARGUMENT

### I. Intervention is Appropriate Under Federal Rule of Civil Procedure 24(a)

AWM represents the providers, staff, and patients of its reproductive health care practice located in White Plains – the very people whose interests the County was attempting to protect when enacting Chapter 425. Federal Rule of Civil Procedure 24(a)(2) ensures that where, as here, plaintiff and defendant are litigating the scope of a right belonging to a third party rather

5

than to an existing party in the suit, the affected third party is entitled to a seat at the table. *Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.*, 658 F. Supp. 1205, 1208 (S.D.N.Y. 1987) (citing *In re Penn Cent. Commercial Paper Litig.*, 62 F.R.D. 341, 346 (S.D.N.Y. 1974)). Fed. R. Civ. P. 24(a)(2) requires a Court to permit intervention as of right if: "(1) the motion is timely; (2) the applicant has asserted an interest relating to. . . the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Mastercard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)). Courts avoid a rigid construction of Rule 24 because the "test . . . is one of inclusion rather than exclusion." *XL Specialty Ins. Co. v Lakian*, 632 Fed. App'x 667, 669 (2d Cir. 2015) (quotation omitted).[1]

Here, intervention as of right is warranted.

### A. **AWM's Motion is Timely**

AWM advised the Court of its interest to intervene in this action less than two months after Plaintiffs filed their second amended complaint and less than one month after the County filed its answer to the second amended complaint. (Dkt. No. 68.) In determining timeliness, courts consider "(1) how long the applicant had notice of its interest in the action before making

---

[1] AWM is not required to demonstrate Article III standing because it seeks no relief "that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Nonetheless, AWM has representational standing because its interests would be directly affected should Plaintiffs succeed. The interests that it seeks to protect, namely vital financial and reputational interests, are germane to its purpose. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986). AWM has standing in its own right because, if Plaintiffs prevail, AWM will have to divert substantial additional resources to protect its facilities, providers, and patients.

its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention." *In re Holocaust Victim Assets Litig. v. Swiss Bankers Ass'n*, 225 F.3d 191, 198 (2d Cir. 2000). All of these factors support intervention.

The Complaint in this action was filed on August 15, 2022. (Dkt. No. 1.) AWM became aware of the lawsuit in the fall of 2022. (Considine Decl. ¶ 17.) After considering its legal options and rights in light of the lawsuit and challenges to Chapter 425, AWM obtained legal counsel on January 4, 2023 and through its counsel, promptly notified the Court concerning its interest in intervening. (*Id.* ¶¶ 18, 19.) Intervention is regularly granted where much more time has lapsed between notice of the suit and the application for intervention. *See, e.g. Holocaust Victim Assets*, 225 F.3d at 198 (granting intervention even though motion was brought nearly three and a half years after the filing of the original complaint); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (motion to intervene timely when filed almost two years after notice of interest in the suit). The notice element— "[a]mong the most important factors in a timeliness decision"—weighs heavily in favor of granting intervention here. *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (quotation omitted); *see also Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993) (intervention is timely so long as applicant has not "slept on [its] rights before making the motion").

Furthermore, granting intervention will not prejudice the existing parties. There is no existing briefing schedule that would be delayed by permitting AWM to intervene. Thus "the proposed intervention will not cause any delay or inconvenience" to the parties or require the court to adjust any existing deadlines. *Miller*, 832 F. Supp. at 670; *see also New York v.*

7

*Abraham*, 204 F.R.D. 62, 65 (S.D.N.Y. 2001) (finding motion to intervene timely because the "litigation is in its early stages" and intervention would not disrupt the briefing schedule).

### B. AWM Has an Interest in the Subject Matter of this Action

For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Wash. Electric Coop., Inc. v. Mass. Mun. Wholesale Electric Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *N.Y. Pub. Interest Research Grp. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (finding interest and granting intervention of pharmacists in action challenging advertising of prescription drug prices). On the other hand, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Electric Coop., Inc.*, 922 F.2d at 97 (noting that this requirement is designed to prevent applicants from "inject[ing] collateral issues into an existing action"). AWM satisfies this standard.

AWM has vital financial and reputational interests to protect in this action, and an interest in protecting the safety and privacy of its staff and patients. The County enacted Chapter 425 to protect reproductive health care facilities, their staff, and patients, from, among other things, harassing and physically obstructive conduct occurring near or at those facilities. Indeed, as part of the rationale to adopt Chapter 425, Westchester County's Legislation Committee and Health Committee referenced the conduct that occurred in November 2021 at AWM's White Plains Practice, when anti-abortion advocates from Red Rose Rescue completely disrupted business at the facility for several hours, thereby threatening AWM's financial interests. (Dkt. No. 1, Ex. 6 at 23.) The conduct also threatened the safety of AWM's staff and the safety and privacy of AWM's patients, which are also vital, protectable interests at stake in this action. The anti-abortion trespassers' actions interfered with and impacted AWM's ability to protect its

8

patients' privacy rights, which is one of AWM's primary goals. (Considine Decl. ¶¶ 8, 13.) If the Court overturns Chapter 425, anti-abortion advocates may be emboldened to follow and further harass AWM's patients outside and inside its facilities, in violation of the patients' right to seek private reproductive health care. AWM patients may feel less secure when seeking education and medical services at AWM's facilities, resulting in reputational damage to AWM. *See Herdman v. Town of Angelica*, 163 F.R.D. 180, 188 (W.D.N.Y. 1995) ("[D]isposition of this action may, as a practical matter, impair or impede' [proposed intervenor's] interests.") (citing *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994)); *AMA v. Stenehjem*, No. 1:19-cv-125, 2019 U.S. Dist. LEXIS 234220, at *15, 18 (D.N.D. Nov. 26, 2019) (finding that pregnancy health centers' reputational and financial interests in defending constitutionality of statute was sufficient to allow intervention under Rule 24(a)) (citing *Planned Parenthood Minn., N.D., S.D. v. Alpha Ctr.*, 213 F. App'x 508, 510 (8th Cir. 2007)).

Accordingly, AWM has a significant interest in the instant litigation.

### C. **AWM is So Situated That Disposition of the Action Without Intervention Would Impede It's Ability to Protect Its Interests**

An applicant for intervention must show that "the disposition may as a practical matter impair or impede their ability to protect their interests." *N.Y. Pub. Interest Research Grp.*, 516 F.2d at 352 (emphasis added). An applicant "need not demonstrate that a substantial impairment of its interest will result." *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 Civ. 0675 (SWK), 1990 U.S. Dist. LEXIS 15762, at * 13, 1990 WL 188925, at *5 (S.D.N.Y. Nov. 20, 1990); *see also Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) (finding the interest of environmental organization dedicated to preserving the rural character of a town "would likely be impaired" if controversy decided absent the organization). As the

advisory committee has explained, "[i]f an [intervenor] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24, advisory committee's note to 1966 amendments. AWM satisfies this standard as well.

Plaintiffs' requested relief – an order setting aside Chapter 425 – would directly harm AWM's medical staff and patients, by depriving them of the protections Chapter 425 affords them. Without Chapter 425, AWM would have fewer legal protections to adequately run its business, protect its economic and reputational interests, and ensure safe access for its staff and patients. And "[i]f, as a result of this litigation," Chapter 425 is declared invalid, AWM "will have no alternative forum in which they might contest" that ruling. *State ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006); *see also N.Y. Pub. Interest Grp., Inc.*, 516 F.2d at 352 (granting intervention in part because of the "possible stare decisis effect of an adverse decision"). To protect their interest in upholding Chapter 425, AWM must be allowed to participate in *this* action – where the rule's validity is directly at issue.

### D. AWM's Interests Are Not Adequately Represented by the County of Westchester

An applicant seeking intervention need only show that the "representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (finding there was "sufficient doubt about the adequacy of representation [by the current parties] to warrant intervention [by the proposed Intervenor]"); 7C Charles Alan Wright, et al., Federal Practice and Procedure § 1909 (3d ed. 2019) (an applicant ordinarily should be permitted to intervene as of right "unless it is clear that the party will provide adequate representation for the absentee."). "[T]he burden of making that showing should be treated as

minimal," *Trbovich*, 404 U.S. at 538 n.10 and "the weight of the responsibility for demonstrating adequate representation fall[s] on the opposing party." *Miller*, 832 F. Supp. at 672.

Here, although AWM expects the County to defend the legality of Chapter 425, no party will represent adequately the particular interests of AWM and other RHCPs. The County has a general interest in upholding the constitutionality of its laws and ensuring safe access to reproductive health care facilities in its jurisdiction, but AWM's interests goes far beyond those interests. While Plaintiffs are individuals and entities subject to the rule, and Westchester County is responsible for enforcing the rule, AWM, its staff, and patients are the ones protected by the rule. As articulated above, AWM has an interest in protecting its financial and reputational interests, as well as those of other reproductive health care facilities in the County, whereas, the County does not seek to specifically protect those interests.

Moreover, the County should not be presumed to be an adequate representative of AWM and other RHCPs for the duration of the litigation. It is plausible that the County's position on the importance of protecting access to reproductive health care services and protecting the employees, staff, and patients within those buildings may change either during the pendency of the litigation or following the resolution of the litigation. For example, during the Court's January 18, 2022 pre-motion conference, the County expressed a willingness to stay enforcement of subsection (c) of Chapter 425.31 during the pendency of the litigation. (Dkt. No. 70 at 4:12-5:19) This subsection, which prohibits knowingly following and harassing another person within a specific distance of a reproductive health care facility, is critical to protect the safety and privacy interests of AWM's staff and patients, and thus its economic and reputational interests. AWM cannot risk the wellbeing of its entire business, reputation, staff, and patients knowing that the County may be willing to make certain concessions in litigating the constitutionality of

Chapter 425.  *See, e.g., N.M. Off-Highway Vehicle Alliance v. U.S. Forest Serv.*, 540 F. App'x 877, 881 (10th Cir. 2013) (finding that government agency could not adequately represent the intervenors' interests in part because "there is no guarantee that the Forest Service's policy will not shift during litigation").

The County may also be disincentivized from raising factual and legal arguments that would portray the County in an unfavorable light or that may not be directly relevant to the County.  This includes potential evidence of inadequate protections for medical practices like the White Plains Practice that necessitated the need for the enactment of Chapter 425 or evidence needed to portray the financial and reputation harm to AWM if Chapter 425 is set aside.  *See, e.g., N.Y. Pub. Interest Research Grp.*, 516 F.2d at 352 (noting that potential intervenors "should have an opportunity to make their own arguments to protect their own interests" and finding it likely that movants would "make a more vigorous presentation" of certain arguments than government defendants).

Lastly, AWM is uniquely situated to provide the Court with the perspective of physicians and medical professionals who advocated for Chapter 425 and rely on it to protect them.  AWM could thus "offer[] a necessary element to the proceedings that would be neglected" absent intervention.  *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *see also N.Y. Pub. Interest Research Grp.*, 516 F.2d at 352 (granting intervention because intervenors would "make a more vigorous presentation of the economic side of the argument than would the [Defendants]"); *Dorsett v. County of Nassau*, 283 F.R.D. 85, 93 (E.D.N.Y. 2012) (finding a police union's interests inadequately represented, even though interests aligned with the police department's, because the department represented the institution as a whole while the union protected the individual officers and specifically safeguarded the officers' interests).  As the

Second Circuit has recognized, where an applicant seeks intervention to defend a law, the government's interests "are not coterminous" with the would-be intervenor's interests, because the government "protect[s] the interest of the state" and "represents the whole people and a public interest, and not mere individuals and private rights." *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988) (quotations omitted); *see also Trbovich*, 404 U.S. at 538-39 (holding that government did not adequately represent intervenors' interest because the government's commitment to defending the public interest "transcend[ed] the narrower interest" of the intervenors).

Accordingly, AWM's presence in this action is necessary to adequately represent its unique interests. Because AWM's interests may not be adequately represented by the County in this action, the Court should grant the motion to intervene as of right.

## II. Intervention is Also Appropriate Under Federal Rule of Civil Procedure 24(b)

Even if this Court finds that AWM cannot intervene as of right, permissive intervention is appropriate. "A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" *Holocaust Victim Assets*, 225 F.3d at 202 (quoting Fed. R. Civ. P. 24(b)(2)). The court must consider "whether granting permissive intervention 'will unduly delay or prejudice the adjudication of the rights' of the existing parties," *id.*, and "whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented," *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986); *New York v. United States HHS*, 19 Civ. 4676, 2019 U.S. Dist. LEXIS 129498, at *26, 2019 WL 3531960

13

(S.D.N.Y. Aug. 2, 2019). A "district court's discretion under Rule 24(b) is broad." *United States HHS*, 2019 U.S. Dist. LEXIS 129498, at *26. Permissive intervention "is to be liberally granted." *Miller*, 832 F. Supp. at 673. Each of these considerations supports permissive intervention.

As noted above, this motion is timely and intervention will not affect the Court's existing deadlines or prejudice any party. Additional discovery is also not likely to "become burdensome or otherwise unduly delay adjudication because this case, at a base level, is a facial constitutional challenge to a newly-enacted statute." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007). "It may even be the case that efficiency is promoted by intervention, as the proposed [intervenor] may elucidate the peculiar difficulties" that would impact reproductive health care centers should Plaintiffs' claims succeed. *McNeill v. N.Y.C. Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

Rule 24(b)(1)(B) "is satisfied where a single common question of law or fact is involved, despite factual differences between the parties." *McNeill*, 719 F. Supp. at 250. AWM's defense of Chapter 425 shares the fundamental question of law in common with the main action – namely, whether Chapter 425 violates the First and Fourteenth Amendments. AWM does not seek to introduce new issues but only to present further arguments from its unique perspective as to why Plaintiffs' claims should fail.

Courts routinely grant motions for permissive intervention where intervenors cannot satisfy every requirement for intervention as of right. *See Abraham*, 204 F.R.D. at 66-67; *Miller*, 832 F. Supp. at 674. This is particularly true where, as here, the would-be intervenors "will greatly contribute to the Court's understanding of this case" given "their knowledge" of the issues. *Abraham*, 204 F.R.D. at 66-67; *see also McNeill*, 719 F. Supp. at 250. (granting

14

permissive intervention to low-income tenants in a suit challenging the city housing authority's policies, where proposed intervenors could elucidate the difficulties facing tenants as a result of the housing authority's policies).

AWM is particularly knowledgeable about the issues at the heart of this case. AWM brings unique knowledge, experience and expertise that will aid in the just, effective, and efficient adjudication of this case. Thus, even if the Court concludes that AWM cannot intervene as of right, it should nonetheless permit intervention under Rule 24(b).

## CONCLUSION

For the foregoing reasons, AWM respectfully requests that this Court grant its Motion to Intervene, pursuant to Federal Rule of Civil Procedure 24(a) or 24(b).

Dated: March 15, 2023	FOLEY HOAG LLP

*/s/ Natasha Reed*
Natasha N. Reed
*(nreed@foleyhoag.com)*
Mital B. Patel
*(mpatel@foleyhoag.com)*
Lynn A. Neils
*(lneils@foleyhoag.com)*
Shrutih V. Ramlochan-Tewarie
*(stewarie@foleyhoag.com)*

1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel: 212-812-0400
Fax: 212-812-0399

*Attorneys for Proposed Intervenor
All Women's Medical Office
Based Surgery, PLLC*