UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OKSANA HULINSKY, et al.,

                    Plaintiffs,

          -against-

COUNTY OF WESTCHESTER,

                    Defendant.

**OPINION AND ORDER**

22-CV-06950 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Oksana Hulinsky ("Hulinsky") and Regina Molinelli ("Molinelli") commenced this action against the County of Westchester ("County" or "Defendant") on August 15, 2022. (Doc. 1). Hulinsky and Molinelli added White Plains 40 Days for Life ("40 Days White Plains") and 40 Days for Life ("40 Days National" and together, "Plaintiffs") as Plaintiffs in this action on December 15, 2022 in a Second Amended Complaint. (Doc. 50; Doc. 51; Doc. 52, "SAC"). Plaintiffs press three claims for relief under 42 U.S.C. § 1983 alleging that Chapter 425 of the Laws of Westchester County violated their First and Fourteenth Amendment rights. Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging (1) Defendant violated their First Amendment rights to free speech and assembly (Count I); (2) Chapter 425 is void for vagueness pursuant to the Due Process Clause of the Fourteenth Amendment (Count II); (3) Defendant violated their First Amendment right to free exercise of religion (Count III). (SAC ¶¶ 157-206).

Pending before the Court is Plaintiffs' motion for a preliminary injunction under Fed. R. Civ. P. 65(a) seeking to restrain and enjoin Defendant from "enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with" Sections 425.31(a), (c), (d), (e), (f), and (h) of Westchester County Local Law 9-2022, and the incorporated definitions of their operative terms. (Doc. 80). Plaintiffs moved on March 1, 2023 in accordance with the briefing

1

schedule set by the Court. (Doc. 80). Plaintiffs filed a memorandum of law in support of their preliminary injunction motion (Doc. 80-1, "Pl. Br."), Defendant filed a memorandum of law in opposition (Doc. 81, "Def. Br."), and the motion was fully submitted upon the filing of Plaintiffs' reply brief (Doc. 88, "Reply").

For the reasons set forth below, Plaintiffs' motion for preliminary injunction is DENIED.

## **BACKGROUND**

On June 27, 2022, Defendant enacted Local Law 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities." (Doc. 82-1, "Chapter 425"). The enactment of Chapter 425 was a response to escalating conduct occurring at reproductive healthcare clinics in Westchester County, for instance, blocking facility entrances; pushing past staff; and throwing objects at patients. (SAC, Ex. I at 12-20, Ex. N at 25-29). The specific precipitating event for the enactment of Chapter 425 was a November 21, 2021 sit-in demonstration organized by Red Rose Rescue, an anti-abortion activist group, at the All Women's Medical Office Based Surgery, PLLC in White Plains, New York. (SAC, Ex. N at 24-27). Over twenty protestors from Red Rose Rescue pushed past staff to get inside the facility, blocked access to the doorways, and occupied the waiting room for several hours. (*Id.*). During the sit-in demonstration, Red Rose Rescue protestors photographed patients, threw roses at patients and staff, and shouted condemnations about "murdering babies." (*Id.*). As a result of the sit-in, patients and staff needed to be moved and the facility's operations were temporarily suspended. (*Id.*).

Plaintiffs challenge six of the nine provisions of Chapter 425: Sections 425.31(a), (c), (d), (e), (f), and (h). (Doc. 80). Sections 425.31(a), (e), and (f) prohibit various forms of "physically obstructing or blocking" amount to interfering with and/or intimidating persons obtaining access at a reproductive health care facility.[1] Section 425.31(c) prohibits "knowingly following and harassing" another person within 25 feet of a reproductive health care facility. Section 425.31(d) prohibits "knowingly engag[ing] in a course of conduct" within 25 feet of a reproductive health care facility that places another person in a "reasonable fear of physical harm." Section 425.31(h) prohibits "knowingly interfer[ing] with the operation of a reproductive health care facility" by either interfering with "(i) medical procedures or treatments at the facility; (ii) the delivery of goods or services to the facility; or (iii) persons inside the facility."

Plaintiffs engage in a practice they refer to as "sidewalk counseling" wherein they will "peacefully approach[] expectant mothers and others entering or leaving the facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion, including offering literature on abortion alternatives, the physical and psychological risks of abortion, and on fetal development." (SAC ¶¶ 26-47). Specifically, Plaintiffs have engaged and intend on engaging in sidewalk counseling at the Planned Parenthood facility in Newburgh, New York. (SAC ¶ 9). Plaintiffs engage in sidewalk counseling on the public portion of the sidewalk

---

[1] Section 425.31 (a) makes it unlawful to "knowingly physically obstruct or block another person from entering into or exiting from the premises of a reproductive health care facility or a public parking lot serving a reproductive health care facility, in order to prevent that person from obtaining or rendering, or assisting in obtaining or rendering, medical treatment or reproductive health care services. Section 425.31(e) makes it unlawful to, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person in order to discourage such other person or any other person or persons from obtaining or providing, or assisting in obtaining or providing, reproductive health care services. Section 425.31(f) makes it unlawful to, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate or interfere with, another person because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services.

3

near the driveway entrance outside of reproductive health care facilities. (SAC ¶ 48.). Plaintiffs allege that their sidewalk counseling "is not only adjacent to the facility's driveway on the public sidewalk, but also less than 100 feet from the facility's front entrance" and "also within the 25-foot 'no follow-and-harass' zone." (*Id.*). Plaintiffs allege that Chapter 425 have made their sidewalk counseling "impossible without the grave risk of criminal and civil liability" and as a result they have suspended sidewalk counseling "pending judicial intervention." (SAC ¶ 49).

## STANDARD OF REVIEW

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). "When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction."[2] *Keil v. City of New York*, No. 21-3043, 2022 WL 619694, at *1 (2d Cir. Mar. 3, 2022).

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act."[3] *Id*. "This distinction is important because [the Second Circuit has] held that a mandatory injunction should issue 'only upon a clear showing that the moving

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[3] "The 'status quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 274 (S.D.N.Y. 2019). "This status can differ from the situation existing at the moment the lawsuit is filed." *Id.* "Here, the status quo ante is the state of affairs immediately prior" to the enactment of Chapter 425 on June 27, 2022. *Yang v. Kellner*, 458 F. Supp. 3d 199, 218 (S.D.N.Y. 2020).

party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id*. "In other words, the movant is held to heightened standard and must show a 'clear' or 'substantial' likelihood of success on the merits, and must make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Isaac v. Schiff*, No. 21-CV-11078, 2022 WL 3290679, at *1 (S.D.N.Y. Aug. 11, 2022) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)); *see also JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) ("A heightened standard is imposed, in part, because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them."). "The 'clear' or 'substantial' showing requirement—the variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Tom Doherty Assocs.*, 60 F.3d at 34.

Here, Plaintiffs seek a preliminary injunction restraining and enjoining Defendant "from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with" Sections 425.31(a), (c), (d), (e), (f), and (h) of Chapter 425. (Doc. 80 at 1-2). An injunction that enjoins a defendant from enforcing a regulation "clearly prohibits, rather than compels, government action by enjoining the future enforcement." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (holding that the district court did not err when it applied the standard for prohibitory injunctions to a plaintiff's preliminary injunction request on his First Amendment claims). Plaintiffs do not seek to compel Defendant "to perform any specific tasks" but rather seek to prohibit Defendant from enforcing certain provisions of Chapter 425. *Id*. Accordingly, the Court applies the standard for prohibitory injunctions, and not the heightened standard for mandatory injunctions, in reviewing Plaintiffs' motion.

## ANALYSIS

I.  Standing

Before considering any of elements Plaintiffs are required to demonstrate for a preliminary injunction, the Court must first examine standing. A party invoking federal court jurisdiction must have standing to sue "for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). "Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "A court may only provide proposed injunctive relief, for instance, if a plaintiff can demonstrate his entitlement to that specific relief." *Doe v. Columbia Univ.*, No. 20-CV-06770, 2022 WL 4537851, at *16 (S.D.N.Y. Sept. 28, 2022). At the preliminary injunction stage, "a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021). "To establish standing for a preliminary injunction, a plaintiff cannot rest on mere allegations but must set forth by affidavit or other evidence specific facts that establish the three familiar elements of standing: injury in fact, causation, and redressability." *Id*.

Defendant presses two arguments related to standing: (1) 40 Days National and 40 Days White Plains lack organizational and associational standing; and (2) Plaintiffs lack pre-enforcement standing because their intended course of conduct is not proscribed by the challenged provisions of Chapter 425 and Plaintiffs do not face a credible threat of prosecution. (Def. Br. at 3-7). The Court addresses each of these arguments in turn.

A.  Organizational and Associational Standing

Defendant argues that Plaintiffs 40 Days National and 40 Days White Plains lack organizational and associational standing. It has long been the law in the Second Circuit, with respect to associational standing, that "an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Each of Plaintiffs three claims for relief are brought under 42 U.S.C. § 1983 and as such, Plaintiffs 40 Days National and 40 Days White Plains "cannot bring this action as the representative of its members." *Id.* Indeed Plaintiffs concede that Second Circuit law precludes "associational/representational standing in §1983 claims." (Reply at 5, n.5). Those Plaintiffs may nevertheless bring claims on their own behalf, so long as they "can independently satisfy the requirements of Article III standing." *Id.* Pursuant to the organizational standing doctrine, "an organization can satisfy the injury prong if it shows that the challenged action did not merely harm its abstract social interests but perceptibly impaired its activities." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021). "Where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish perceptible impairment absent an involuntary material burden on its established core activities." *Id.* In such a circumstance, "the challenged law must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the organization regularly conducted (prior to the challenged act) in pursuit of its organizational mission." *Id.* at 173-74.

Plaintiffs allege that 40 Days National has no members, and that "all Local Vigils and associated activities are independent from [40 Days National], which neither directs nor leads any Local Vigils." (SAC ¶ 10). Plaintiffs nevertheless argue that 40 Days National has organizational standing because it "has been forced to divert resources in order to contest the challenged

provisions of Chapter 425." (Reply at 5). However, Plaintiffs have failed to put forward any specific facts showing that the enactment of Chapter 425 has or will in any way "perceptibly impair its activities." *Russell-Tucker*, 8 F.4th at 173-74. Plaintiffs' allegations instead make clear that 40 Days National has no members and is not involved in organizing the Local Vigils that occur in Westchester County, and therefore 40 Days National is not involved in the sidewalk counseling at issue in this litigation. (SAC ¶ 10). Plaintiffs have failed to meet their burden in demonstrating that Plaintiff 40 Days National has suffered an injury-in-fact. Accordingly, the Court holds that Plaintiff 40 Days National lacks standing.

Plaintiffs argue that Plaintiff 40 Days White Plains has organizational standing because Chapter 425 has "restrict[ed] 40 Days White Plains' ability to engage in sidewalk counseling and leafletting—activities core to its mission." (Reply at 4). Plaintiffs have failed to put forward any specific facts that Chapter 425 has actually "perceptively impaired [40 Days White Plains'] activities." *Russell-Tucker*, 8 F.4th at 173-74. 40 Days White Plains continues to organize and promote vigils, and Plaintiffs allege that the organization planned another 40-day vigil that is set to commence on February 22, 2023. (SAC ¶¶ 96, 101). Plaintiffs have failed to put forward any facts showing that the enactment of Chapter 425 has prevented or impaired Plaintiff 40 Days White Plains from planning or promoting any vigils. Instead, Plaintiffs argue that Chapter 425 has reduced attendance at these vigils by "approximately 50%." (Reply at 4). This argument misses the mark. The essence of a chilled speech injury "is an assertion that one has elected to refrain from speaking, rather than risk prosecution." *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 324 (S.D.N.Y. 2018). Plaintiff 40 Days White Plains has not put forward any facts indicating that it had canceled any events or eliminated any of its activities in any way in response to the enactment of Chapter 425. In other words, there is nothing in the record showing that

Plaintiff 40 Days White Plains' speech has been chilled in any way. The fact that other individuals have chosen not to attend vigils organized by 40 Days White Plains is not relevant to the organizational standing inquiry because the organization "does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Nnebe*, 644 F.3d at 156. Plaintiffs have failed to meet their burden in demonstrating that Plaintiff 40 Days White Plains has suffered an injury-in-fact. Accordingly, the Court holds that Plaintiff 40 Days White Plains lacks standing.

### B. Pre-Enforcement Standing

The Court next turns to evaluating the standing of Plaintiffs Hulinsky and Molinelli ("Individual Plaintiffs") to bring pre-enforcement claims. To establish injury-in-fact in the pre-enforcement context, a plaintiff may show that threatened enforcement is "sufficiently imminent," by demonstrating that: (1) she has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see also Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (same).

### 1. Intention to Engage in Proscribed Conduct

The Second Circuit, in *Picard*, explained that "courts are to consider whether the plaintiff's intended conduct is arguably proscribed by the challenged statute, not whether the intended conduct is in fact proscribed." 42 F.4th at 98. "If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation, the plaintiff may legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute." *Id.* at 101. The relevant inquiry is whether "plaintiff's proffered interpretation of the statute – which leads them to fear its enforcement against their intended conduct – is arguable or reasonable." *Id.*

Plaintiffs seek a preliminary injunction enjoining the County from enforcing six provisions of Chapter 425, "§ 425.31(a), (c), (d), (e), (f), and (h)." (Doc. 80 at 1-2). These provisions prohibit different kinds of conduct described *supra*, and as such, Plaintiffs must demonstrate that they are entitled to injunctive relief as to each of the provisions at issue. *See Doe*, 2022 WL 4537851, at *16. Plaintiffs allege that they have engaged, and wish to continue to engage, in a course of conduct referred to as "sidewalk counseling," wherein they "approach expectant mothers and others going to or leaving the facility by car or on foot in order to engage in a short, quiet conversation, at a normal conversational distance" and offer literature relating to "alternatives to abortion." (SAC ¶¶ 26-49). Plaintiffs argue, relying on *Picard*, that they have suffered an injury-in-fact because "it is at least plausible that Plaintiffs' advocacy violates the . . . restrictions" contained in the challenged provisions of Chapter 425. (Pl. Br. at 10). Defendant argues that sidewalk counseling is not proscribed by Chapter 425. (Def. Br. at 3-4).

The plaintiff in *Picard* brought suit challenging a New York statute which prohibited the displaying of "placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse" within 200 feet of any courthouse. 42 F.4th at 95. The plaintiff in *Picard* argued that his conduct, passing out pamphlets advocating for jury nullification near a courthouse, was arguably proscribed by the statute. *Id.* Plaintiffs' reliance on *Picard* is misplaced because the instant case is distinguishable. Plaintiffs do not assert that they intend on physically obstructing or blocking anyone from entering a reproductive healthcare facility in violation of Sections 425.31(a), (e), and (f) or engaging in a course of conduct that would place another in reasonable fear of physical harm in violation of Section 425.31(d). Plaintiffs also do not assert that they intend on interfering with the operations of any reproductive health care facilities in violation of Section 425.31(h), either by interfering with the medical procedures being conducted within

those facilities, the delivery of goods to those facilities, or by interfering with persons inside those facilities. Plaintiffs allege that the Individual Plaintiffs only intend to "peacefully approach expectant mothers and others entering or leaving the facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion, including offering literature on abortion alternatives." (Pl. Br. at 2). Plaintiffs expressly distinguish the Individual Plaintiffs' intended course of conduct from the sit-in organized by the "Red Rose Rescue" activist group on November 27, 2021. (Pl. Br. at 3). Members of the Red Rose Rescue group forced their way into a reproductive health care facility in order to stage a sit-in demonstration, blocked access to the facility's entrance, and physically occupied the facility's waiting room for a number of hours, refusing to leave in an attempt to prevent individuals from obtaining reproductive health care services. (SAC, Ex. M at 14).

Peaceful conversations occurring "at a normal conversational distance" outside of reproductive health care facilities do not involve physical obstruction, threats of physical harm, or interference with the operations of the health care facility itself. Plaintiffs themselves do not put forward any evidence showing that the Individual Plaintiffs' intended course of conduct–sidewalk counseling regarding alternatives to abortion–would implicate the type of conduct proscribed by Sections 425.31(a), (e), (d), (f), or (h). It is neither arguable nor reasonable to conclude that the Individual Plaintiffs' course of conduct is proscribed by Sections 425.31(a), (e), (d), (f), or (h). With respect to Section 425.31(c)'s prohibition (knowingly following or harassing another person within 25 feet of a facility), however, Plaintiffs argue that it could proscribe walking "behind or alongside the intended recipient of their message, advocating for life despite an express or implied request to stop speaking." (Pl. Br. at 7). The Individual Plaintiffs' sidewalk counseling could arguably be characterized as harassing conduct violative of Section 425.31(c).

The Court finds that the Individual Plaintiffs' intended conduct is not arguably proscribed by Sections 425.31(a), (e), (d), (f), or (h) but that their intended conduct is arguably proscribed by Section 425.31(c). Accordingly, Plaintiffs have failed to establish standing for the Individual Plaintiffs to pursue injunctive relief as to Sections 425.31(a), (e), (d), (f), and (h). *Picard*, 42 F.4th at 100 (requiring plaintiff to show that their intended course of conduct is "arguably proscribed" by the challenged statute). As such, the Individual Plaintiffs are unable to demonstrate a likelihood of success on the merits with respect to those provisions. *See Miller v. Smith*, No. 21-CV-02949, 2021 WL 4222981, at *7 (E.D.N.Y. Sept. 16, 2021) (a plaintiff failing to establish "requisite standing to bring her claims of constitutional violations" was in turn "unable to demonstrate a likelihood of success on any of those claims").

## 2. Credible Threat of Future Prosecution

The standing inquiry, with respect to Section 425.31(c), does not end there. The Court must also determine whether Plaintiffs face a "credible threat of future prosecution" by engaging in sidewalk counseling. *Picard*, 42 F.4th at 100. "The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue, and will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Picard*, 42 F.4th at 98.

Chapter 425 was recently enacted by Westchester County on June 27, 2022, and as such, Plaintiffs have had little opportunity to test whether, and the extent to which, it will be enforced. (SAC ¶ 50). Westchester County "has not foresworn enforcement of [Chapter 425], and courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022); *see also Frey v.*

*Nigrelli*, No. 21-CV-05334, 2023 WL 2473375, at *8 (S.D.N.Y. Mar. 13, 2023) ("given the recency of the law and lack of any indication that it will be repealed, the Court is and should be willing to presume that the government will enforce it"); *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*, No. 21-CV-07667, 2023 WL 2185901, at *8 (S.D.N.Y. Feb. 23, 2023) (finding a credible threat of prosecution where the plaintiff "has had little opportunity to test the waters"). Furthermore, the New York Attorney General brought suit against thirteen individuals who protested outside Choices Women's Medical Center, a reproductive health clinic in Queens, New York under analogous federal and state statutes. *See Griepp II*, 11 F.4th at 175. Section 425.81(a) permits the New York Attorney General to "seek other available criminal penalties or civil remedies" under the statute, like with the protestors in *Griepp*, the Individual Plaintiffs thus face a real possibility of a civil enforcement action against them should they continue on their intended course of conduct. The Individual Plaintiffs, in light of these circumstances, face a credible threat of prosecution by engaging in sidewalk counseling.

The Individual Plaintiffs have, with respect to Sections 425.31(c), established an injury-in-fact because they have demonstrated an intention to engage in a course of conduct implicated by the First Amendment but arguably proscribed by a statute, and because there exists a credible threat of prosecution. Accordingly, the Court holds that the Individual Plaintiffs have standing to challenge Section 425.31(c).

II.  Likelihood of Success on the Merits

"Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). "On a motion for preliminary injunction, the movants must show that they are likely to prevail on their claims that

the challenged government action is unlawful." *We The Patriots USA*, 17 F.4th at 280. As previously stated, the Individual Plaintiffs press three claims for relief: (1) Chapter 425 violates the First Amendment's Free Speech Clause both because it is an impermissible content-based restriction and because it is impermissibly overbroad (Count I); (2) Chapter 425 violates the Fourteenth Amendment's Due Process Clause because it is impermissibly vague (Count II); (3) Chapter 425 violates the First Amendment's Free Exercise Clause because impermissibly targets Plaintiff's sincerely held religious beliefs (Count III). (SAC ¶¶ 157-206). Plaintiffs, in their preliminary injunction motion, do not mention their third claim for relief under the First Amendment's Free Exercise Clause, and as such they have failed to establish a likelihood of success on the merits for that claim. The Court will now turn to Plaintiffs' likelihood of success on the merits for their first and second claims for relief.

    A.   <u>First Claim for Relief: Violation of the First Amendment's</u>
            <u>Free Speech Clause</u>

Plaintiffs press two arguments in support of their first claim for relief: first, that Chapter 425 is an impermissibly content-based restriction on their speech and second, that Chapter 425 is impermissibly overbroad. The Court addresses each of these arguments seriatim.

    1.   <u>Content Neutrality</u>

Plaintiffs argue that Chapter 425 "is a content-based restriction of speech and fails strict scrutiny." (Pl. Br. at 18). The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. Amend. I. A government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be

justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

This Court recently held that Section 425.31(i)—which makes it unlawful to "knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling"—is a content-neutral restriction that is "narrowly tailored to advance Westchester County's significant governmental interest in protecting individuals attempting to enter health care facilities from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Vitagliano v. Cnty. of Westchester*, No. 22-CV-09370, 2023 WL 24246, at *3 (S.D.N.Y. Jan. 3, 2023). The same holds true for Section 425.31(c).[4] Like the Colorado statute upheld by the Supreme Court in *Hill v. Colorado*, Section 425.31(c) "is not limited to those who oppose abortion" but instead "all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." 530 U.S. 703, 725 (2000). An individual violates Section 425.31(c) when they knowingly follow and harass another within 25 feet of a reproductive health care facility, this is true regardless of what that individual is saying or the content of the leaflet that they may be attempting to hand out to a passerby. Put simply, Section 425.31(c) regulates the location of conduct, not speech. "That is the level of neutrality that the Constitution demands." *Id.*

Plaintiffs argue, relying on comments made in a press release by the County's Legislative Committee Chair, that Chapter 425 is an impermissible content-based restriction enacted because

---

[4] Indeed, Plaintiffs do not even attempt to distinguish Section 425.31(i) or this Court's decision in *Vitagliano*. (*See generally*, Pl. Br.).

of Defendant's disagreement with pro-life messages. (Pl. Br. at 21-22). The Supreme Court recently cautioned that "inquiries into legislative motives are a hazardous matter" and that "even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole . . . what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022). The comment made by the County's Legislative Committee Chair and relied on by Plaintiffs in pressing their argument was not made during a legislative session and did not concern or even refer to Chapter 425. (SAC, Ex. L). Rather, like in *Dobbs*, the text of the statute itself shows "ample evidence that the passage of [Chapter 425] was instead spurred by a sincere belief" regarding the need to provide safe access to reproductive healthcare facilities by staff and patients. 142 S. Ct. at 2256. The preamble of Chapter 425, Section 425.11, provides that the statue was enacted in order to "protect persons seeking access to reproductive health care facilities and services both inside facilities as well as outside said facilities." (Doc. 82-1 at 3-4). The text of the statute itself makes clear that Chapter 425 was enacted not out of disagreement with pro-life messaging, but rather as a desire to protect safe access to reproductive health care facilities. "Persons who are attempting to enter health care facilities—for any purpose—are often in particularly vulnerable physical and emotional conditions." *Hill*, 530 U.S. at 729. Defendant, in enacting Chapter 425, was properly responding "its substantial and legitimate interest in protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Id.*

Accordingly, Plaintiffs have not shown a likelihood of success on the merits with respect to their challenge that Section 425.31(c) is an improper content-based restriction.

2.  Overbreadth

Plaintiffs argue that Section 425.31(c) is impermissibly overbroad because it "prohibits continued speech after an implied request to cease." (Pl. Br. at 17). In the First Amendment context, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The Supreme Court, in *Hill*, held that the Colorado statute at issue was not overbroad because it "merely regulates the places where communications may occur." 530 U.S. at 731. The same is true here, Section 425.31(c) merely regulates conduct–namely, following and harassing another–within 25 feet of a reproductive health care facility. As in *Hill*, Plaintiffs have not put forward any evidence that would allow the Court to conclude that the impact of Chapter 425 "on the conduct of other speakers will differ from its impact on their own sidewalk counseling." *Id.* Like Plaintiffs' own activities, the conduct of other protestors at all reproductive health care facilities in Westchester County "are encompassed within the statute's legitimate sweep." *Id.*

Accordingly, Plaintiffs have failed to establish a likelihood of success on the merits with respect to their first claim for relief under the First Amendment's Free Speech Clause.

B.  Second Claim for Relief: Violation of the Fourteenth Amendment's
    Due Process Clause

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Where, as here, the statutes at issue are "capable of reaching expression sheltered by the First Amendment, the vagueness doctrine would demand a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16

F.4th 992, 1015 (2d Cir. 2021). "There are two types of vagueness challenges: as-applied challenges, which concern the clarity of the law as applied to a plaintiff's conduct, and facial challenges, in which the court considers a statute's application to hypothetical circumstances." *Kosinski*, 2023 WL 2185901, at *17. While Plaintiffs claim to assert both a facial and an as-applied vagueness challenge to Section 425.31(c), their as-applied challenge merely states in a conclusory fashion that the statute is "standardless" and "has no core meaning." (Pl. Br. at 13-14). "A plaintiff making an as-applied challenge must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited." *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010). Plaintiffs fail to make the requisite showing that Section 425.31(c) did not provide them with sufficient notice that their sidewalk counseling was prohibited. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n. 4 (2d Cir.2000) (holding that a "single, conclusory, one-sentence argument" was insufficient to adequately raise an issue). Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits with respect to their as-applied vagueness challenge. The Court turns next to Plaintiffs' facial vagueness challenge.

A vagueness inquiry "should begin with the text of the provision, considered in context, and, where appropriate, with the benefit of canons of statutory construction and legislative history." *Rothenberg v. Daus*, 481 F. App'x 667, 671 (2d Cir. 2012). Section 425.31(c) makes it unlawful to "knowingly follow and harass another person within 25 feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public." Section 425.21(c) defines "harass" to mean "to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person and which serve no legitimate purpose." The definition further provides that "for the purposes of the definition, conduct or acts that serve no legitimate purpose

include, but are not limited to, conduct or acts that continue after an express or implied request to cease has been made." *Id.*

Defendant modeled Chapter 425 after the City Act, N.Y.C. Admin. Code § 10-1001 *et seq.*, and the follow-and-harass prohibition in Section 425.31(c) is nearly identical to Section 8–803(a)(3) of the City Act. (SAC, Ex. I at 12-20). The Supreme Court struck down a Massachusetts regulation on sidewalk counseling in *McCullen v. Coakley* but noted in that opinion that the follow-and-harass provision of the City Act "could in principle constitute a permissible alternative" in New York. 573 U.S. 464, 491 n.8 (2014). This does not end the inquiry, however, because the *McCullen* court went on to note that it did not give its "approval" to the City Act, and that, "whether such a law would pass constitutional muster would depend on a number of other factors, such as whether the term 'harassment' had been authoritatively construed to avoid vagueness and overbreadth problems." *Id.* Chapter 425's legislative history makes clear that the definition of "harass" is "derived from N.Y. Penal Law § 240.26(3), and related interpretations in the case law." (SAC, Ex. I at 17).

Plaintiffs press two vagueness arguments as to Section 425.31(c). First, that the "serves no legitimate purpose" clause in the definition is vague because it includes a potential violator's continuing "conduct or acts" following another person's "implied request to cease" the conduct. (Pl. Br. at 12). Second, that the definition of "harass" comprises an "unascertainable standard" because it targets acts that "alarm or seriously annoy" others. (Pl. Br. at 13). The Court addresses each of these two arguments in turn.

Plaintiffs contend that because Chapter 425 does not define the term "implied request to cease" the term is rendered "standardless." (Pl. Br. at 13). The Court disagrees. New York Penal Law § 240.26 and its associated case law provide guidance on what constitutes an "implied request

to cease." The defendant in *People v. Richards*, a balloon-seller convicted of harassment under

Penal Law § 425.26, "repeatedly blocked the path of a pedestrian, who was attempting to travel

unmolested down the street with her two small children." 22 Misc. 3d 798, 807 (Crim. Ct. 2008).

The court found that while the balloon-seller's "initial offer to engage in a commercial transaction

may have served a legitimate purpose, his continuing to aggressively hawk his wares to an

unwilling customer, did not." *Id. Richards* illustrates an implied request to cease, namely

attempting to evade unwanted communication by traveling down the street. *Id.* Further, any

vagueness concerns with respect to Section 425.31(c) is "ameliorated by [the statute's] scienter

requirement." *Hill*, 530 U.S. at 732. The statute only applies to a person who "knowingly" follows

and harasses another within 25 feet of a reproductive health care facility. Section 425.31(c). An

offender must continue a course of conduct after learning that a request–either express or implied–

to cease that course of conduct has been made.

Next, Plaintiffs contend that the term "alarm or seriously annoy" is vague because it is an

"unascertainable standard." (Pl. Br. at 13). However, conduct that causes alarm or serious

annoyance is already prohibited under N.Y. Penal Law § 240.26(3) and therefore not vague. *See*

*Jaegly v. Couch*, 439 F.3d 149, 152-53 (2d Cir. 2006) (quoting N.Y. Penal Law § 240.26(3) and

upholding probable cause on an arrest for violation of this subsection). With respect to

ascertainability, it is well-settled that New York's harassment statutes assume a reasonable person

standard. *See People v. Lagano*, 39 N.Y.3d 108, 112 (2022) (construing Penal Law § 240.26(1)

and explaining that a "'true threat' is one that a reasonable person in the victim's position would

consider to be an unequivocal statement of intended physical harm").

Plaintiffs have not met their burden in showing that the terms "implied request to cease"

or "alarm or seriously annoy" render Section 425.31(c) vague. Accordingly, Plaintiffs have failed

to demonstrate a likelihood of success on the merits with respect to their second claim for relief under the Fourteenth Amendment's Due Process Clause.

III. Irreparable Harm

"The burden of proof and persuasion rests squarely on the party moving for a preliminary injunction to show that irreparable harm is likely." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 34 (2d Cir. 2015). To satisfy their burden to show irreparable harm, "plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *JTH Tax*, 62 F.4th at 672 (affirming the district court's holding that plaintiff failed to show irreparable harm where plaintiff "presented no evidence that [defendant's] continuing operations would irreparably harm its goodwill, client relationships, or ability to compete in the geographic area").

Plaintiffs argue, with respect to irreparable harm, that Chapter 425 has "effectively stifled Plaintiffs' pro-life sidewalk advocacy at County abortion facilities." (Pl. Br. at 24). Plaintiffs have failed to put forward any specific facts to support this contention. To the contrary, there is ample evidence that anti-abortion protestors have continued to engage in sidewalk counseling, protesting, and literature distribution outside of reproductive health care facilities in Westchester County. (*See* Doc. 82; Doc. 83; Doc. 84; Doc. 85). Defendant, in opposition to Plaintiff's preliminary injunction motion, has submitted photographs and videos documenting anti-abortion protestors and counselors carrying out these activities after the enactment of Chapter 425 without incident. (*Id.*). Plaintiffs' contention that Chapter 425 has "stifled" their pro-life advocacy is not supported by the record, and Plaintiffs have failed to rebut the evidence submitted by Defendant or otherwise put

forward any specific facts showing that they will imminently suffer an injury "if the court waits until the end of trial to resolve the harm." *JTH Tax*, 62 F.4th at 672.

Plaintiff further argues that they have satisfied the irreparable harm requirement because "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (Pl. Br. at 24 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This argument fails because, as discussed above, Section 425.31(c) is a content-neutral regulation narrowly tailored to Westchester County's significant interests and as such, is not violative of the First Amendment. *See Agudath*, 983 F.3d at 637. Plaintiffs have failed to show that Section 425.31(c) deprived them, for any period of time, of their First Amendment freedoms.

Accordingly, Plaintiffs have failed to demonstrate irreparable harm.

IV. <u>Public Interest</u>

As this Court previously held in *Vitagliano*, Defendant has a "significant governmental interest in protecting individuals attempting to enter health care facilities from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." 2023 WL 24246, at *3. Where a law furthers the government's interests and Plaintiffs have not shown a likelihood of success on the merits of a constitutional violation claim, an injunction does not serve the public interest. *We the Patriots*, 17 F.4th at 296. Accordingly, Plaintiffs have failed to demonstrate that the public interest weighs in favor of granting injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court holds that: (i) Plaintiffs 40 Days National and 40 Days White Plains lack standing; and (ii) the Individual Plaintiffs lack pre-enforcement standing to challenge Sections 425.31(a), (e), (d), (f), and (h). With respect to Section 425.31(c), the Individual Plaintiffs have standing but have failed to meet their burden of proof with regards to their likelihood of success on the merits of their claims, irreparable harm, and that the public interest weighs in favor of granting injunctive relief. Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 80. The Clerk of Court is further directed to terminate Plaintiff White Plains 40 Days for Life and Plaintiff 40 Days for Life as parties to this action.

**SO ORDERED.**

Dated:    White Plains, New York
          April 24, 2023

_____
PHILIP M. HALPERN
United States District Judge

23