UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OKSANA HULINSKY, et al.,

                    Plaintiffs,

          -against-

COUNTY OF WESTCHESTER,

                    Defendant.

**OPINION AND ORDER**

22-CV-06950 (PMH)

PHILIP M. HALPERN, United States District Judge:

Oksana Hulinsky and Regina Molinelli ("Plaintiffs") commenced this action against the County of Westchester ("Defendant") on August 15, 2022. (Doc. 1). On December 20, 2022, Plaintiffs filed a Second Amended Complaint, adding White Plains 40 Days for Life ("40 Days White Plains") and 40 Days for Life ("40 Days National") as plaintiffs in this action and pressed three claims for relief. (Doc. 52, "SAC"). Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging (1) Defendant violated their First Amendment rights to free speech and assembly (Count I); (2) Defendant violated the Due Process Clause of the Fourteenth Amendment in enacting Local Law 9-2022 ("Chapter 425") (Count II); and (3) Defendant violated their First Amendment right to free exercise of religion (Count III). (*Id*. ¶¶ 157-206).

Pending before the Court is Defendant's motion for summary judgment seeking the complete dismissal of Plaintiffs' action. Defendant served its motion for summary judgment, in accordance with the briefing schedule set by the Court, on March 21, 2024. (Doc. 110; Doc. 111, "Macleod Decl."; Doc. 112; Doc. 113, "Def. Br."). Plaintiffs served their opposition on May 21, 2024 (Doc. 114, "Pl. Br."; Doc. 115, "Ferrara Decl."). Defendant filed its reply on June 21, 2024 (Doc. 116), and Plaintiffs filed, with the Court's permission, a sur-reply on June 27, 2024 (Doc. 120).

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement with Plaintiffs' responses thereto and statement of additional material facts (Doc. 112, "56.1"), as well as the parties' affidavits and exhibits annexed thereto.

I. Factual Background

On June 27, 2022, Defendant enacted Chapter 425, "adding [it] to the Laws of Westchester County to ensure safe access to reproductive health care facilities." (56.1 ¶ 1). Chapter 425 provides for both criminal penalties and a civil cause of action. *See* §§ 425.41, 425.51. The law also contains a severability provision. *Id.* § 425.91.[1]

Chapter 425's stated purpose is to "prohibit interference with accessing reproductive health care facilities and obtaining reproductive health care services." *Id.* § 425.11. The Westchester County legislature asserted that Chapter 425 was a response to escalating violent and disruptive conduct occurring at reproductive healthcare clinics. (Macleod Decl., Ex. A at SAC 142[2]). To that end, the specific precipitating event for this legislation was a November 2021 incident in which members of Red Rose Rescue, an anti-abortion activist group, temporarily obstructed access to the waiting rooms of All Women's Medical Office Based Surgery, PLLC in White Plains, New York. (*Id.* at SAC 139, 223). The applicable legislative committee also considered "recent instances"

---

[1] Plaintiffs, in Count I of the Second Amended Complaint, allege that each of the Challenged Provisions are non-severable from the rest of Chapter 425. (SAC ¶ 191). The Court expresses no opinion on that question as it has not been raised in the extant motion for summary judgment.

[2] Exhibit A to the MacLeod Declaration is a copy of the Second Amended Complaint and its exhibits, Bates Stamped as "SAC 001" through "SAC 273." Citations to "SAC ___" are references to the Bates-stamped exhibits that had been attached to the Second Amended Complaint.

concerning Planned Parenthood, "includ[ing] a protestor and patient escort getting into a physical altercation outside of a facility entrance; and protestors throwing nails and other sharp metal objects on the ground of a reproductive healthcare center's driveway." (*Id.* at SAC 142; *see also* Ferrara Decl., Ex. 1 at 42:16-20).

Chapter 425, as originally enacted, contained nine provisions. Westchester County, in 2023, repealed one of these provisions, which is not challenged in this action.[3] Plaintiffs challenge six provisions of Chapter 425: Sections 425.31(a), (c), (e), (f), (g), and (h). (SAC, Wherefore Clause).[4] Defendant's motion for summary judgment only challenges Sections 425.31(a), (c), (e), (f), and (h) (the "Challenged Provisions").

Sections 425.31(a) prohibits forms of "physically obstructing or blocking" that amount to interfering with and/or intimidating persons obtaining access at a reproductive health care facility. Sections 425.31(e) and (f) prohibit interfering with and/or intimidating persons obtaining access at a reproductive health care facility "[b]y force or threat of force,[5] or by physically obstructing or blocking[.]" Section 425.31(c) prohibits "knowingly follow[ing] and harass[ing] another person

---

[3] Specifically, Westchester County repealed Subdivision (i) of Section 425.31 and its accompanying definitions. *See* Local Law Intro. No. 309-2023. As such, the section numbers in the definitional section of Chapter 425 were also revised in 2023. The County made no other material changes to Section 425.31. The Court refers to definitional section numbers for Chapter 425 as they appeared in the originally enacted version of the law because those are the numbers that Plaintiffs reference in the Second Amended Complaint and the parties reference in their submissions to the Court.

[4] Plaintiffs, in the Second Amended Complaint, also challenged Subdivision (d). (*See* SAC, Wherefore Clause). But Plaintiffs expressly abandoned their claims against that provision. *See Hulinsky v. County of Westchester County Department of Public*, No. 23-00804 (2d Cir. May 15, 2023), Doc. 72 at 1 ("Plaintiffs have informed the County they no longer seek permanent injunctive relief against §425.31(d)[.]"). Accordingly, Plaintiffs' claims challenging Section 425.31(d) are thus deemed withdrawn and are dismissed.

[5] Plaintiffs, in light of the Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), abandoned their challenge to the "force or threat of force" element of Sections 425.31(e) and (f). (56.1 ¶ 22 & n.2).

within twenty-five (25) feet of" a "reproductive health care facility." Section 425.31(h) prohibits "knowingly interfer[ing] with the operation of a reproductive health care facility."

Plaintiffs have engaged in "sidewalk counseling." (56.1 ¶ 5). This practice includes approaching individuals leaving or entering a reproductive health care facility and engaging them in conversations about alternatives to abortion. (*Id.*; *see also id.* ¶¶ 6-12). Plaintiffs, in connection with their sidewalk counseling, "exchange[d] ideas," "opinions," and "information" with individuals leaving or entering reproductive health care facilities. (*Id.* ¶¶ 8, 11). Plaintiff Hulinsky generally would get around an "arms-length away" from an approaching person during these counseling interactions (Macleod Decl., Ex. C ("Hulinsky Tr.") at 27:20-21); and Plaintiff Molinelli generally stood "within a foot of the car" with which she was engaging (*id.*, Ex. B ("Molinelli Tr.") at 17:12-15). Plaintiffs assert that the Challenged Provisions have caused them to cease their sidewalk counseling and even physical presence at County clinics. (56.1 ¶ 28; *see also* Molinelli Tr. at 14:15-17; Hulinsky Tr. at 24:19-21, 26:1-6).

II.    Procedural Background

On March 1, 2023, Plaintiffs, along with 40 Days White Plains and 40 Days National, moved for a preliminary injunction seeking to restrain and enjoin Defendant from enforcing, threatening to enforce, or attempting to enforce Sections 425.31(a), (c), (d), (e), (f), and (h). (Doc. 80). On April 24, 2023, the Court issued an opinion and order denying the motion for a preliminary injunction. (Doc. 94, "2023 Opinion and Order").[6] The Court first determined that neither 40 Days White Plains nor 40 Days National had standing to challenge any provision in Chapter 425, and thus terminated them as parties to this action. Next, the Court determined that Plaintiffs only had

---

[6] This decision is available on commercial databases. *Hulinsky v. Cnty. of Westchester*, 670 F. Supp. 3d 100 (S.D.N.Y. 2023).

standing to challenge Section 425.31(c). The Court then held that Plaintiffs had failed to establish a likelihood that they would prevail on any of their claims. The Second Circuit later affirmed the 2023 Opinion and Order in a summary order. (Doc. 109).[7]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[8] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function

---

[7] This decision is also available on commercial databases. *40 Days for Life v. Cnty. of Westchester*, No. 23-804-CV, 2024 WL 2813930, at *1 (2d Cir. June 3, 2024).

[8] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

It is equally clear that the Court may not generally adjudicate issues at the summary judgment phase which were not raised in the movant's motion. *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 96 (2d Cir. 2016) (citing Fed. R. Civ. P. 56(f)); *see also Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 271 (S.D.N.Y. 2016) ("Significantly, . . . [the movant] has not argued on summary judgment that Plaintiff falls short of alleging a sufficient connection of its products to any particular time, place, or employer. . . . The Court will not consider arguments not raised by the moving party."); *Bryant v. Rudman*, 933 F. Supp. 270, 275 (S.D.N.Y. 1996) ("These issues would not be a proper basis on which to grant summary judgment because they were not raised by the defendants on this motion.").[9]

---

[9] The narrow exception to the rule against granting summary judgment on issues not raised by the moving party is when "the facts before the district court were fully developed so that the moving party suffered no procedural prejudice." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000). The practice, however, has been "firmly discouraged" by the Second Circuit. *Id.*

As will be discussed, *infra*, Defendant has left open and unaddressed a number of issues raised by Plaintiffs' Second Amended Complaint.

## ANALYSIS

### I. Standing

Defendant first argues that Plaintiffs lack an injury in-fact to sustain pre-enforcement standing to challenge any of the provisions in Section 425.31 at issue. (Def. Br. at 11-14).[10] With respect to Plaintiffs' First and Second free speech and due process claims, Defendant disputes whether Plaintiffs have established the second or third elements of the pre-enforcement test. More specifically, Defendant urges the Court not to "disturb" its prior ruling with respect to Sections 425.31(a), (e), (f), and (h). (*Id.* at 12). Defendant also argues that discovery has "revealed" that Plaintiffs lack standing to challenge Section 425.31(c) because they do not intend to "follow[] and harass" individuals entering abortion clinics. (*Id.* at 12-13). With respect to Plaintiffs' Third free exercise claim, Defendant argues that Plaintiffs "have not adduced evidence" demonstrating "that their freedom to practice religion is affected" by Chapter 425. (*Id.* at 13-14). Plaintiffs respond that, under more recent Second Circuit precedent, they have established pre-enforcement standing for all their claims and each challenged provision. (Pl. Br. at 20-22 & n.4).

The Supreme Court has held that parties pressing claims in federal courts must have standing to bring their claims to ensure that there is an actual case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* at 560-61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury-in-fact,

---

[10] Citations to the parties' briefs correspond to the pagination generated by ECF.

meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. To establish injury-in-fact in the pre-enforcement context, a plaintiff may show: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "proscribed by" the challenged law; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *accord Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022). Courts "assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013); *see also Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (explaining that a plaintiff need only meet "low threshold" to establish pre-enforcement standing).

The Court, in its 2023 Opinion and Order, held, among other things, that Plaintiffs had standing to challenge Section 425.31(c). (2023 Opinion and Order at 13). The Court also held that Plaintiffs lacked pre-enforcement standing to challenge Sections 425.31(a), (e), (f), and (h). (*Id.*). The Court found that Plaintiffs' "intended conduct is not arguably proscribed by" these provisions. (*Id.*).

Since then, however, the Second Circuit has in several decisions underscored the minimal burden a plaintiff carries to establish pre-enforcement standing. Most relevant to this action, the Second Circuit, in *Vitagliano v. Cnty. of Westchester*, held that a plaintiff who sought to "engage in sidewalk counseling" outside abortion clinics had standing to challenge Section 425.31(i). 71 F.4th 130 (2d Cir. 2023). The court, in finding that the plaintiff's conduct was arguably proscribed by the challenged provision, stressed the low burden under this test: "a plaintiff's intended conduct need only be '*arguably* proscribed by the challenged statute,' not necessarily '*in fact* proscribed.'"

*Id.* at 138 (emphasis in the original; citations omitted). The court also found, concerning the existence of a credible threat of prosecution, that "[w]ith no reason to doubt that the County will enforce its recently enacted law against those who violate its terms, we may presume that [the plaintiff] faces a credible threat of enforcement if she pursues her intention to counsel on the sidewalk." *Id.* at 139.

Similarly, in *Cerame v. Slack*, the Second Circuit held that a group of Connecticut-licensed lawyers had standing to challenge a recently enacted rule of professional conduct prohibiting "conduct that the lawyer knows or reasonably should know is harassment or discrimination . . . in conduct related to the practice of law." 123 F.4th 72, 83 (2d Cir. 2024). The commentary of the subject rule defined discrimination to "include[] harmful verbal or physical conduct directed at an individual or individuals that manifests bias or prejudice"; and harassment to "include[] severe or pervasive derogatory or demeaning verbal or physical conduct." *Id.* Although the plaintiffs did not assert that they intended to engage in such acts—instead merely "speak[ing] out" on hot-button issues in "legal blogs, articles in legal publications, continuing legal education events, legal seminars, press releases, and public speeches"—the court held that the plaintiff's conduct was still arguably proscribed by the rule. *Id.* The court explained: "While it is indeed *possible* that none of the speech specified in the complaint is actually proscribed by Rule 8.4(7), [the plaintiff's] contrary conclusion that such speech could be deemed professional misconduct is both 'arguable' and 'reasonable.'" *Id.*; *see also Antonyuk v. James*, 120 F.4th 941, 1008 (2d Cir. 2024) (describing the burden on a party to establish pre-enforcement standing as "forgiving").

The Court finds, in light of the aforementioned recent decisions by the Second Circuit, that Plaintiffs have satisfied all three elements to establish that they suffered an injury in fact related to Plaintiffs' free speech and due process claims. Plaintiffs' sidewalk counseling is arguably and

reasonably proscribed by each of these provisions. The uncontested record reflects that both Plaintiffs engaged in sidewalk counseling at reproductive healthcare facilities. (56.1 ¶¶ 5, 6, 10). The record further reflects that in connection with this counseling, Plaintiffs would approach "someone walk[ing] down the sidewalk" or "approaching in vehicles" towards a Planned Parenthood facility to share the pro-life "ideas," "opinions," or "literature." (*Id.* ¶¶ 7-8, 11-12). The nature of counseling also required Plaintiffs to get extremely close to the person with whom they were engaged in conversation (Hulinsky Tr. at 27:20-21; Molinelli Tr. at 17:12-15); and each one of these provisions separately regulates Plaintiffs' close-encounter counseling interactions.

Defendant's arguments to the contrary are unpersuasive. Defendant, in particular, points to each Plaintiff's deposition testimony that they would not engage in the exact conduct described by the Challenged Provisions. (Def. Br. at 12-14). For instance, Defendant, in arguing that Plaintiffs lack standing to challenge Section 425.31(c), highlights Plaintiffs' testimony that they would never follow individuals who were not open to a discussion. (*Id.* at 13 (citing 56.1 ¶¶ 17-18)). Nevertheless, the Plaintiffs' conduct, under *Vitagliano*, is arguably proscribed by the challenge statute.

Plaintiffs have also demonstrated that they face a credible threat of enforcement of the Challenged Provisions if they follow through with their intention to engage in sidewalk counseling. Defendant argues that "[b]ecause no reasonable reading of the challenged sections of Chapter 425 would encompass the conduct and speech in which the Plaintiffs wish to engage, their fear of prosecution is subjective and imaginary." (Def. Br. at 13). But, as just explained, a "reasonable reading of the challenged sections of Chapter 425 would" arguably proscribe Plaintiffs' conduct. In any case, as this Court previously found, Defendant "has not foresworn enforcement of [Chapter 425], and courts are generally willing to presume that the government will enforce the law as long

as the relevant statute is recent and not moribund." (2023 Opinion and Order at 12-13) (collecting cases). A credible threat of enforcement has been established.

With respect to the free exercise third claim for relief, Defendant argues that Plaintiffs fail to establish that the Challenged Provisions affect "their freedom to practice religion." (Def. Br. at 13-14). Plaintiffs do not directly respond to this argument, instead asserting that the Court should deploy the same analysis for all three of Plaintiffs' claims. (Pl. Br. at 20 n.4). But "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs fail to respond to Defendant's argument about standing with respect to their free exercise claim, thus deeming the argument waived. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n.4 (2d Cir. 2000). Although Plaintiffs have failed to establish pre-enforcement standing for their free exercise claim, the Court notes the undisputed facts reflect that Plaintiffs considered sidewalk counseling to be part of their religious practice. For instance, Plaintiffs would participate in "prayer vigils" in front of reproductive health care facilities. (56.1 ¶¶ 9, 13). Accordingly, and despite the fact that Plaintiffs waived  (other than indicated) any argument that they have standing to press their free exercise claim (Count III), the Court considers the merits of each of Plaintiffs' three claims for relief with respect to the Challenged Provisions.

II.    <u>First and Third Claims for Relief: Violation of the First Amendment's Free Speech Clause and Free Exercise Clause</u>

Plaintiffs press two claims for relief under the First Amendment: (A) that the Challenged Provisions abridge Plaintiffs' right to free speech (Claim I) (SAC ¶¶ 158-191); and (B) that the Challenged Provisions violate Plaintiffs' right to the free exercise of religion (Claim III) (*id.* ¶¶ 200-206). Plaintiffs bring both facial and as-applied challenges. (*Id.* ¶¶ 164, 188, 200).

Plaintiffs, in their First Claim of the Second Amended Complaint, also assert that the

Challenged Provisions abridge Plaintiffs' right to freedom of assembly. (*Id.* ¶ 159). Defendant, however, has not moved for summary judgment on Plaintiffs' free assembly claim in connection with this branch of the first claim; and the Court will not consider it *sua sponte. See In re 650 Fifth Ave. & Related Properties*, 830 F.3d at 96.

### A. First Claim for Relief: Free Speech

Defendant argues that all of Chapter 425's provisions are "content-neutral" and meet the intermediate scrutiny test. (Def. Br. at 14-20). Defendant also maintains that none of Chapter 425's provisions implicate overbreadth concerns. (*Id.* at 20-21). Plaintiffs, on the other hand, argue that Section 425.31 is an animus-based law adopted to target Plaintiffs' speech and thus subject to the strict scrutiny test, which Section 425.31 cannot meet. (Pl. Br. at 29-30). Plaintiffs also argue that the Challenged Provisions are not narrowly tailored to survive intermediate scrutiny; and run afoul of the First Amendment as impermissibly overbroad because they reach a "substantial amount of constitutionally protected conduct." (*Id.* at 31-32). The arguments are addressed *seriatim*.

### i. Content Neutrality

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I. A government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional" and subject to strict scrutiny review. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A challenged law may only survive strict scrutiny review "if the government proves that [the challenged law is] narrowly tailored to serve compelling state interests." *Id.*

By contrast, "[c]ontent-neutral time, place, and manner restrictions are subject to intermediate scrutiny." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013). This level of scrutiny is a "less demanding" test. *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021). A challenged law passes muster under intermediate scrutiny review if the government proves that the challenged law is "narrowly tailored to serve a significant governmental interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

"As always, in construing a challenged statute, [the court] start[s] with [the challenged law's] text." *Melendez v. City of New York*, 16 F.4th 992, 1011 (2d Cir. 2021) (citing *Babb v. Wilkie*, 589 U.S. 399, 403 (2020)). Courts "ascertain the word's intended meaning by looking to (1) the word's 'ordinary, contemporary, common meaning,' . . . (2) the context in which it is used, . . .and (3) [to the extent applicable,] relevant state court decisions[.]" *Id.* (collecting cases). "For the common, ordinary meaning," courts often look to a word's "dictionary definition." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Courts will also look to canons of statutory construction to help ascertain the meaning of ambiguous words. *See, e.g.*, *Babb*, 589 U.S. at 410 n.4.

As the Court previously explained in its 2023 Opinion and Order, Section 425.31(c), on its face, is content neutral. It "'is not limited to those who oppose abortion' but instead 'all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision.'" (2023 Opinion and Order at 15 (quoting *Hill v. Colorado*, 530 U.S. 703, 725 (2000))).[11] The same holds true for Sections 425.31(a), (e), (f), and (h). Each of these provisions applies to all demonstrators regardless of their position on

---

[11] Indeed, the definition of "[r]eproductive health care facility" in Chapter 425 is neutral about whether a protected facility provides or prohibits abortions. Instead, such a protected "facility" includes "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services." § 425.21(k).

abortion. Indeed, this conclusion is bolstered by the Second Circuit's recent decision in *Vitagliano*, holding that a separate, now-repealed provision of Chapter 425—enacted into law with the Challenged Provisions—was content neutral. 71 F.4th at 141 (finding that "[a]lthough not identical in all respects, the [Westchester] County's bubble zone law was modeled after this Colorado law.").

Plaintiffs' citations to legislative statements do not establish that Chapter 425 is an animus driven law. (Pl. Br. at 11-13, 29). The Supreme Court has long cautioned that "inquiries into legislative motives are a hazardous matter." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253 (2022); *see also United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."). That is because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Id.* at 384. The Court's job is "not to read the hearts and minds of legislators," *L. W. by & Williams v. Skrmetti*, 83 F.4th 460, 487 (6th Cir. 2023), but instead review the "text of the statute itself," *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). The Challenged Provisions are content neutral; these provisions do not "require[] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014).

Nor have Plaintiffs, for their as-applied challenge, offered any evidence that Defendant has applied any of the Challenged Provisions in a discriminatory manner. *Cf. Univ. at Buffalo Young Americans for Freedom v. Univ. at Buffalo Student Ass'n Inc.*, No. 23-CV-00480, 2024 WL 5119779, at *24 (W.D.N.Y. Dec. 15, 2024) ("The fact that a policy is facially neutral does not rule out the possibility that it has been applied in a discriminatory manner.").

In any event, "[t]he First Amendment interests of petitioners are clear and undisputed." *Hill*, 530 U.S. at 714. First, Chapter 425 "affects public ways" at the entrance of reproductive health care facilities in the County. *Id.*; *see, e.g.*, § 425.31(c) ("[F]ollow and harass another person within 25 feet of: (i) the premises of a reproductive health care facility; or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility[.]"). Second, "the public sidewalks, streets, and ways affected by the statute are 'quintessential' public forums for free speech." *Hill*, 530 U.S. at 714. Third, Plaintiffs' sidewalk counseling (56.1 ¶ 5) is protected by the First Amendment. *Id.* Accordingly, because the contested provisions are content-neutral, the Challenged Provisions are subject to a review under the intermediate scrutiny test. *See id.*; *Vitagliano*, 71 F.4th at 141.

### ii. Intermediate Scrutiny

Under the intermediate scrutiny test, a challenged law is valid so long as the law is "narrowly tailored to serve a significant governmental interest, and that [it] leave[s] open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. The Supreme Court has recognized the legitimacy of the state's interests in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services," *McCullen*, 573 U.S. at 487, all of which are Defendant's stated interests for the enactment of Chapter 425. *See* § 425.11 ("Legislative intent" of Chapter 425 is to ensure safe access to "reproductive health care facilities").

Sections 425.31(a), (c), (e), and (f) are narrowly tailored. This prong of the test "is satisfied 'so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation' and does not 'burden substantially more speech than is necessary'

to further that interest." *TikTok Inc. v. Garland*, 604 U.S. ----, No. 24-656, 2025 WL 222571, at *8 (Jan. 17, 2025) (quoting *Ward*, 491 U.S. at 790). Here, the legislative record demonstrates that the Westchester legislature examined examples of violent incidents inside of and in front of reproductive healthcare facilities, both within and outside the County, which the legislature found necessitated Chapter 425. (Macleod Decl., Ex. A at SAC 142). Each of the Challenged Provisions furthers those significant interests, while leaving open ample alternative channels for communication. *Cf. Vitagliano*, 71 F.4th at 141 (holding that Section 425.31(i)'s prohibition on "knowingly approach[ing] another person within eight feet of such person, unless such other person consents . . . within a radius of one hundred (100) feet from any door to a reproductive health care facility" was narrowly tailored). In particular, Sections 425.31(a), (c), (e), and (f) do nothing to "prevent a leafletter from simply standing near the path of oncoming pedestrians and proffering his or her material, which the pedestrians can easily access." *Hill*, 530 U.S. at 726; *see also United States v. Weslin*, 156 F.3d 292, 298 (2d Cir. 1998) (the challenged provisions were narrowly tailored because, among other things, they "le[ft] anti-abortion protestors and all other persons wishing to exercise free speech rights under the First Amendment at liberty to hold signs, [and] pass out handbills").

Plaintiffs argue that the legislature's identification of only one prior incident involving an abortion clinic *in Westchester County* is an insufficient justification for Chapter 425. (Pl. Br. at 13-15, 31). But Plaintiffs fail to cite any authority that a county legislature may only consider a certain number of incidents or incidents within the county to justify new laws in that county. To that end, it is not the Court's job to "second-guess decision[s] [made] by" legislators. *Mastrovincenzo v. City of New York*, 435 F.3d 78, 100 (2d Cir. 2006); *see also Ward*, 491 U.S. at 800 ("The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible

17

decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." (alteration in original)). The Court's role instead is to evaluate whether a law is narrowly tailored to serve the significant governmental interests and leaves open ample alternative channels for communication. Sections 425.31(a), (c), (e), and (f), on this record, meet this standard.

By contrast, Section 425.31(h), on this record, is not narrowly tailored. That section makes it unlawful to "[k]nowingly interfere with" the "operation[s] of a reproductive health care facility." Unlike the other prohibited conduct in Chapter 425, one does not have to use physical force or deploy threats to violate Section 425.31(h). Rather, the only limitation on liability under this section is that one acts "[k]nowingly" and "interfere[s] with the operation of a reproductive health care facility, or attempt to do the same."

"Interfere with" is defined to mean "to stop or to restrict[12] a person's freedom of movement, or to stop, obstruct, or prevent, *through deceptive means or otherwise*." *See* § 425.21(d) (emphasis

---

[12] Plaintiffs filed their action in August 2022. (Doc. 1). Thereafter, Defendant, in the 2023 amendment discussed *supra*, added the words "to stop or" before the words "to restrict" in Chapter 425's definition of "[i]nterfere with." *See* Local Law Intro. No. 309-2023. Courts generally "apply the law in effect at the time it renders its decision." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). However, Courts will not give an amendment retroactive operation absent an indication of "clear" intent by the legislature. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994). Courts, in determining if an amendment applies retroactively, ask whether "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. "A statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment[.]" *Id.* There is no statutory direction or legislative history indicating the legislature's intent in amending the definition of "[i]nterfere with." Nevertheless, application of the amended definition of "[i]nterfere with" here will not have a retroactive effect. Plaintiffs bring a pre-enforcement action, and thus, the Court is not examining "events completed [by Plaintiffs] before [the] enactment" of the 2023 amendment. Plaintiffs are therefore not at risk of being subject to an "increase . . . [in] liability for past conduct, or [an] impos[ition] [of] new duties with respect to transactions already completed." *Id.* at 280. To that end, according to Plaintiffs, they "cease[d] their sidewalk counseling and even physical presence at County clinics" after the enactment of Chapter 425. (56.1 ¶ 28). Accordingly, the Court applies the amended definition of "[i]nterfere with." *See, e.g.*, *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279, 1282-85 (10th Cir. 2010) (applying "the amended definition of governmental plan . . . to the events at issue," even though the plaintiff filed the action before "Congress amended the statute").The Court notes, however, that the conclusions reached herein are the same under both the 2022 definition of "[i]nterfere with" and its amended, 2023 definition.

added). Under this definition, "through deceptive means or otherwise" modifies the preceding acts

of interference. That is, "deceptive" or "otherwise" describes the "means"[13] by which one "stop[s]"

or "restrict[s] a person's freedom of movement," "stop[s]," "obstruct[s]," and "prevent[s]."

Further, as indicated by the disjunctive "or," Section 425.21(d) creates two "means": "deceptive"

or "otherwise." *See Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) ("The word 'or' is

almost always disjunctive[.]"). As such, common sense suggests that "otherwise" necessarily

includes, at the very least, all nondeceptive means. *See id.* ("or" in a statute is "generally used 'to

indicate . . . an alternative'" (quoting Webster's Third New International Dictionary 1585 (1993)).

Indeed, courts have long found that the common, ordinary meaning of "otherwise" is "a

different manner[,] [] another way, or [] other ways" from the words proceeding it. *E.g.*, *Dunham

v. Omaha & Council Bluffs St. Ry. Co.*, 106 F.2d 1, 3 (2d Cir. 1939); *see also Otherwise*, Black's

Law Dictionary (11th ed. 2019) ("[E]xcept for what has just been mentioned."). In *Texas Dep't of

Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, for instance, the Court considered a

provision of the Fair Housing Act ("FHA") that made it unlawful "[t]o refuse to sell or rent after

the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make

unavailable*[.]" 576 U.S. 519, 533 (2015) (emphasis added). The case centered on whether

disparate-impact claims were cognizable under the FHA. The Court, in reaching its conclusion,

based its holding on the meaning of "otherwise make unavailable." The Court first defined

"otherwise" to mean "in a different way or manner." *Id.* at 535. Then, the Court reasoned that

---

[13] "The 'plain meaning' of 'means' is 'something that helps to attain an end[.]'" *Fund Texas Choice v. Deski,* No. 22-CV-00859, 2023 WL 8856052, at *6 (W.D. Tex. Dec. 21, 2023) (quoting *Means*, Black's Law Dictionary (11th ed. 2019)); *accord Means*, *Definition of Means at Dictionary.com*, Dictionary.com, https://www.dictionary.com/browse/means (March 28, 2021) ("[T]he medium, method, or instrument used to obtain a result or achieve an end"). Means, in the context of Section 425.21(d), *see Melendez*, 16 F.4th at 1011 (courts must look to the "context in which [words are] used" to "ascertain" their "intended meaning"), refers to the methods by which one "stop[s]" or "restrict[s] a person's freedom of movement," "stop[s]," "obstruct[s]," and "prevent[s]." § 425.21(d).

"otherwise" must mean something different then to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of"—all intentional acts. Thus, the Court concluded, "otherwise" in the statute "signal[ed] a shift in emphasis from an actor's intent to the consequences of his action," allowing for the inclusion of disparate impact claims. *Id.* The same logic applies here. The common, ordinary meaning of "or otherwise" in Section 425.21(d)'s definition "signal[s] a shift" from "deceptive means" to something "different": here, nondeceptive means.

Assuming that it is necessary and appropriate, consideration of the canons of statutory interpretation does not change this conclusion. As a general matter, courts will deploy the canon of *ejusdem generis*, which provides that "general terms that follow specific ones are interpreted to embrace only objects of the same kind or class as the specific ones," to ascertain the meaning of catchall words, such as otherwise. *United States v. Amato*, 540 F.3d 153, 160 (2d Cir. 2008). But that canon is inapplicable here. The Supreme Court has explained that *ejusdem generis* does not apply when—as is the case with Section 425.21(d)'s definition—the relevant "phrase is disjunctive, with one specific and one general category, not . . . a list of specific items separated by commas and followed by a general or collective term." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218, 225 (2008) (dispute about the meaning of the statutory language, "any officer of customs or excise or any other law enforcement officer"). Courts, for such statutes, stick to the words' or phrases' common, ordinary meaning. *Id.* Similarly, courts deploy *noscitur a sociis*, "a word is known by the company it keeps," to interpret the meaning of catchall words or phrases. *Id.* at 226. Yet that canon also does not change the result here. The Supreme Court has explained that application *noscitur a sociis* must be supported by "strong[] contextual cues" in the rest of the statute. *Id.* at 226 ("[A]lthough customs and excise are mentioned twice in § 2680(c), nothing in

the overall statutory context suggests that customs and excise officers were the exclusive focus of the provision."). The "contextual cues" in Chapter 425 does not support restricting "otherwise" to "deceptive means" (*i.e.*, "the company it keeps"). To the contrary, the statute sweeps far more broadly than prohibiting deceptive conduct. *See, e.g.*, § 425.31(e) (prohibits conduct achieved "by force or threat of force, or by physically obstructing or blocking"); § 425.31(f) (same); § 425.31(c) (prohibiting acts of "harass[ment]").

Defendant argues that the language "through deceptive means or otherwise" was added to address incidents where "individuals . . . gained entry to a reproductive health care facility under deceptive means." (Def. Br. at 27). Defendant's wordsmithing, however, has created a broader swath; and Defendant fails to articulate why this statutory context should produce an alternative construction of "otherwise." If the statutory definition merely meant other "deceptive means," such a construct would render "or otherwise" superfluous. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("This Court's duty [is] to give effect, where possible, to every word of a statute[.]"); *United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994) ("[C]ourts will avoid statutory interpretations that render provisions superfluous."). Surely, reading words in a statute to become superfluous is not the proper result here. The Court will therefore apply the common, ordinary meaning of "otherwise."

Accordingly, under this construction of Section 425.31(h) and its related definition, one can be found to violate this section by deploying *any* nondeceptive "means" to "to stop or to restrict a person's freedom of movement, or to stop, obstruct, or prevent" in order to affect "the operation of a reproductive health care facility." Under this construct, Section 425.31(h) is not narrowly

tailored. As explained *supra*, this provision is not connected to physical acts or threats.[14] It instead includes one using any non-deceptive "means." That, in turn, naturally includes large swaths of protected speech.

Indeed, during the oral argument before the Second Circuit on Plaintiffs' appeal of the 2023 Opinion and Order, Defendant's counsel struggled to explain why Section 425.31(h) would not encompass sidewalk counseling. (Ferrara Decl., Ex. 4 at 44:8-25–46:1-25). Specifically, Defendant's counsel failed to adequately explain why "interfere with"—in light of the lack of a physical force or threat requirement in Section 425.31(h) and the inclusion of the catch-all "or otherwise" in the section's related definition—would not prohibit sidewalk counseling. To that end, one appears to "[k]nowingly interfere with the operation of a reproductive health care facility," and thus violate Section 425.31(h), by convincing another person through counseling to cancel their appointment at the facility. (*Cf. id.* at 46:1-25). One, in such a scenario, "interfere[s] with the operation of a reproductive health care facility" through other, nondeceptive "means."

Moreover, Section 425.31(h), in conjunction with the provision's related definition, is problematic in another way: it leaves law-enforcement officials unfettered discretion to determine liability. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002) ("We have [] required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review."). As explained *supra*, in the context of Section 425.31(h), one "interfere[s] with" by exerting any nondeceptive "means" "to stop or to restrict a person's freedom of movement, or to stop, obstruct, or prevent." Those words provide no guidance at all to law enforcement about what "means" one must use when determining whether one violates

---

[14] By contrast, both Sections 425.31(e) and (f)—which also include the term "interfere with"—are cabined to physical acts or threats. Specifically, one only violates these sections if he or she uses "force or threat of force, or by physically obstructing or blocking."

Section 425.31(h). *See Deferio v. City of Syracuse*, 306 F. Supp. 3d 492, 514 (N.D.N.Y. 2018) (granting the plaintiff's motion for summary judgment challenging the application of a "buffer zone" around a "pride parade" because "the discretion with which" a law enforcement official enforced the challenged city permit "was incompatible with a narrowly tailored time, place, and manner restriction"), *aff'd*, 770 F. App'x 587 (2d Cir. 2019).

Section 425.31(h) thus "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486.

iii.  Overbreadth

"Overbreadth challenges are a form of First Amendment challenge" that allow a party to claim that a statute "would violate the First Amendment rights of hypothetical third parties if applied to them." *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) "[A] law may be invalidated as overbroad [in the First Amendment context] if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010).

Sections 425.31(a), (c), (e), and (f) are not overly broad. Like the challenged law in *Hill*, these provisions "merely regulate[] the places where communications may occur." 530 U.S. at 731. Indeed, they do not ban any protected speech; they regulate conduct. Like Plaintiffs' own activities, the conduct of other protestors at all reproductive health care facilities in Westchester County "are encompassed within the [Sections 425.31(a), (c), (e) and (f)'s] legitimate sweep." *Id.*

Section 425.31(h), however, implicates overbreadth concerns. As discussed *supra*, Section 425.31(h) on its face could be read to cover an "alarming" number of speeches. *Stevens*, 559 U.S. at 473. Indeed, the phrase "or otherwise" in Section 425.21(d)'s definition appears to encompass any and all forms of speech deployed "to stop or to restrict a person's freedom of movement, or to

23

stop, obstruct, or prevent." Liability under Section 425.31(h) is not limited to physical acts or threats. Moreover, Defendant has not identified an analogous New York state statute or binding judicial or administrative narrowing construction of the "through deceptive means or otherwise" language in Section 425.21(d)'s definition. *Cf. MacDonald v. Safir*, 206 F.3d 183, 191 (2d Cir. 2000) ("When evaluating a First Amendment challenge of this sort, we may examine not only the text of the ordinance, but also any binding judicial or administrative construction of it."). Thus, Section 425.31(h), in conjunction with Section 425.21(d)'s definition, sweeps in a substantial number of protected speeches. For instance, as noted *supra*, one appears to "[k]nowingly interfere with the operation of a reproductive health care facility" by merely convincing another person through counseling to cancel their appointment at the facility.

Moreover, under Section 425.31(h), law enforcement officials appear to be given unbridled discretion to determine what constitutes "interfere with"—given the breadth of this defined term as well as the lack of a physical or threat requirement in Section 425.31(h).  Such selective law enforcement strikes at the very core of the overbreadth doctrine. *See Long Island Vietnam Moratorium Comm. v. Cahn*, 437 F.2d 344, 350 (2d Cir. 1970) (holding a statute unconstitutional on its face because it "vests local law enforcement officers with too much arbitrary discretion . . . permit[ting] only that expression which local officials will tolerate"); *Dean v. Town of Hempstead*, No. 14-CV-04951, 2024 WL 3849688, at *16 (E.D.N.Y. Aug. 16, 2024) (granting plaintiff's summary judgment motion on its overbreadth claim because, among other things, the challenged provision, "in conjunction with the regulations' definition," was "broad and provide[d] little guidance," thus affecting a substantial number of speech). As such, Section 425.31(h)'s prohibition, on this record, appears to extend to a substantial number of constitutionally protected speeches. *See Stevens*, 559 U.S. at 481 ("Our construction of [of the challenged statute] decides

the constitutional question[.]").

Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' free speech claim is granted as to Sections 425.31(a), (c), (e) and (f) but denied as to Section 425.31(h).

B.    Third Claim for Relief: Free Exercise

Defendant argues that Plaintiffs' free-exercise claim fails for similar reasons that their free-speech claim should fail: "Chapter 425 is content-neutral and generally applicable, and tailored to [Defendant's] legitimate interests." (Def. Br. at 22). Plaintiffs, again relying on legislative statements, argue that Chapter 425 was the product of "overt anti-religious sentiment." (Pl. Br. at 32).

The First Amendment forbids the enactment of laws, either state or federal, that "prohibit[] the free exercise" of religion. U.S. Const. amend. I. The Free Exercise Clause, however, "'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting *Empl. Div., Dep't of Hum. Resources of Or. v. Smith*, 494 U.S. 872, 879 (1990)). A "law that is facially neutral [may] still run afoul of the neutrality principle if it 'targets religious conduct for distinctive treatment.'" *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 330 (2d Cir. 2024). Such laws that are non-neutral or not generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 531-32 (1993). On the other hand, "when the government seeks to enforce a law that is neutral and generally applicable, it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Commack*

25

*Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 212 (2d Cir. 2012).

Here, the Challenged Provisions are facially neutral and generally applicable. That is, each of the Challenged Provisions applies equally to all persons, "both secular and religious." *Slattery v. Hochul*, 61 F.4th 278, 292 (2d Cir. 2023). To that end, Chapter 425's definition of "reproductive health care facility," *see* § 425.21(k), encompasses both facilities such as Planned Parenthood and crisis pregnancy centers. *Cf. Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 239 (2d Cir. 2014) (describing crisis pregnancy centers "as organizations that provide non-medical pregnancy services and are opposed to abortion"). Contrary to Plaintiffs' arguments, stray remarks by individual legislators, for similar reasons discussed *supra*, do not "establish that the purpose of the legislature was to target religion." *Id.* (subjecting a challenged law to rational basis review despite the legislative history reflecting that legislator statements "could be read to suggest hostility on the part of some legislators to the religious exercise of employers").

Defendant thus must only show a "rational basis" for the enactment of the Challenged Provisions to prevail. *Id.* Defendant easily clears that hurdle: Defendant had a rational basis for enacting time, place, or manner restrictions around reproductive health care facilities to ensure safe access into these facilities. *See* § 425.11. Such laws have long been accepted legislative actions. *See, e.g.*, *Hill*, 530 U.S. at 726.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' free exercise claim is granted.

III.   <u>Second Claim for Relief: Violation of the Fourteenth Amendment's Due Process Clause</u>

The Fourteenth Amendment to the United States Constitution prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The vagueness doctrine is a component of the right to due process." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). "[A] statute which either forbids or requires the doing of an act

in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Id.* Where, as here, the statute at issue is "capable of reaching expression sheltered by the First Amendment, the vagueness doctrine [] demand[s] a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021).

"There are two types of vagueness challenges: as-applied challenges, which concern the clarity of the law as applied to the plaintiff's conduct[;] and facial challenges, in which the court considers a statute's application to hypothetical circumstances." *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*, 657 F. Supp. 3d 504, 531 (S.D.N.Y. 2023). Plaintiffs press both types of challenges in their Second Amended Complaint. (SAC ¶¶ 193-199; Pl. Br. at 25-28).

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732; *accord Farrell*, 449 F.3d at 486. To sustain a facial vagueness challenge that implicates the First Amendment, a plaintiff must also show that the challenged regulation "reaches a substantial amount of constitutionally protected conduct." *Id.* at 496.

Defendant seeks a summary judgment ruling that each of the Challenged Provisions are not impermissibly vague facially and as applied to Plaintiffs' conduct. (Def. Br. at 22-28). Because a "court should [] examine [a plaintiff's] conduct before analyzing other hypothetical applications" of a challenged law, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982), the Court turns first to Plaintiffs' as-applied challenge.

A.  As-Applied Challenge

i.  Sections 425.31(a), (e), and (f)

Sections 425(a), (e), and (f) all make it unlawful for a person to, among other things, "physically obstruct" "another person." Section 425.21(h) defines "physically obstruct or block" to mean, in relevant part, "physically hinder, restrain, or impede[] . . . or to otherwise render ingress to or egress from, or render passage to or from the premises of a reproductive health care facility impassable, unreasonably difficult, or hazardous." Defendant argues that these provisions are "virtually identical to the provisions of the [Freedom of Access to Clinic Entrances ('FACE')] and [the New York State Freedom of Access to Clinic Entrances Act ('NYSCAA')] statutes," which have long survived judicial challenges. (Def. Br. at 26, 28). Plaintiffs argue that the inclusion of "hinder" and "impede" in the definition of "physically obstruct" renders the term impermissibly vague. (Pl. Br. at 28).[15]

The Court agrees with Defendant. Section 425.21(h)'s definition of "physically obstruct" largely resembles the definitions in FACE and the NYSCAA. *See* 18 U.S.C. § 248(e)(4) ("The term 'physical obstruction' means rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous."); N.Y. Penal Law § 240.70(3)(d) ("[T]he term 'physical obstruction' means rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous"). Courts have repeatedly rejected

---

[15] Both Sections 425.31(e) or (f) also prohibit "interfer[ing] with." However, Plaintiffs, in response to Defendant's motion, do not argue that "interfere with," as used in Sections 425.31(e) or (f), is vague. That argument is thus deemed waived as to those sections. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n.4 (2d Cir. 2000).

vagueness challenges to FACE's definition of "physical obstruction." *See New York by James v. Rescue*, 705 F. Supp. 3d 104, 132 (S.D.N.Y. 2023) (collecting cases).

The addition of "hinder" and "impede" in Section 425.21(h)'s definition does not change the analysis. That is because these verbs are modified and cabined by the adverb "physically." *See United States v. Giampino*, 680 F.2d 898, 902 (2d Cir. 1982) (explaining that "forcibly" modified the proceeding verbs in 18 U.S.C. § 111, which makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[] or interfere[] with" certain federal officials); *Ruan v. United States*, 597 U.S. 450, 470 (2022) (Alito, J., concurring) (explaining, "[a]s a matter of elementary syntax, the adverbs 'knowingly' and 'intentionally' are most naturally understood to modify the verbs that follow"). Thus, like the definitions in FACE and NYSCAA, the definition of Section 425.21(h) only includes "physical[]" conduct directed at another person "render[ing]  passage to or from the premises of a reproductive health care facility impassable, unreasonably difficult, or hazardous." Finally, any vagueness concerns about Sections 425.31(a), (e), and (f) are "ameliorated by" the statute's requirement that a defendant act "knowingly." *Hill*, 530 U.S. at 732.

### ii. Section 425.31(c)

Section 425.31(c) makes it unlawful to "knowingly follow and harass another person within 25 feet of: (i) the premises of a reproductive health care facility; or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility." Section 425.21(c) defines "harass" to mean "to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person and which serve no legitimate purpose." The definition further provides that "[f]or the purposes of the definition, conduct or acts that serve no legitimate purpose include, but are not limited to, conduct or acts that continue after an express or implied request to cease has been made." *Id.*

Defendant argues that the Court should maintain its prior holding in the 2023 Opinion and

Order that "Section 425.31(c) does not implicate the concerns underlying the vagueness doctrine." (Def. Br. at 23). Plaintiffs counter by repeating their two prior vagueness arguments: (1) that the "serves no legitimate purpose" clause in the definition is vague because it includes a potential violator's continuing "conduct or acts" following another person's "implied request to cease" the conduct; and (2) that the definition of "harass" comprises "an inscrutable standard" because it targets acts that "alarm or seriously annoy" others. (Pl. Br. at 25-27).

With respect to the "serves no legitimate purpose" clause, the Court, in the 2023 Opinion and Order, explained that "New York Penal Law § 240.26 and its associated case law provide guidance on what constitutes an 'implied request to cease.'" (2023 Opinion and Order at 20 (citing *People v. Richards*, 22 Misc. 3d 798, 807 (Crim. Ct. 2008))). The New York case law, specifically *Richards*, illustrates that courts and persons of ordinary intelligence have little trouble understanding the meaning of an "implied request to cease" in the context of an "unwanted communication by traveling down the street." (*Id.*). The Court also explained that "any vagueness concerns with respect to Section 425.31(c) is 'ameliorated by [the statute's] scienter requirement'" (*Id.* (citing *Hill*, 530 U.S. at 732)).

Plaintiffs have failed to offer any reason—legally or based on the factual record—to disturb the Court's prior holding. First, Plaintiffs argue that the Court should ignore the New York precedent because those cases did not involve the First Amendment. (Pl. Br. at 26). But that argument misunderstands the Court's prior analysis. The Court's examination of Plaintiffs' as-applied challenge is "confined to the litigant's *actual* conduct"—here, sidewalk counseling. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010). *Richards* demonstrates that it is well-established that a person of ordinary intelligence would have sufficient notice of what constitutes an implied request to cease during a sidewalk interaction. Second, Plaintiffs seek to

create a factual dispute, arguing that "Plaintiffs' deposition testimony confirms their uncertainty about 'implied request to cease.'" (Pl. Br. at 26). The standard for an as-applied vagueness challenge, however, "is an objective one." *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010). "Courts ask whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed, not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Id.* (cleaned up). Given the judicial precedent described above and Section 425.31(c)'s scienter requirement, the Court finds that an ordinary person has sufficient notice of and the opportunity to understand the meaning of an "implied request."[16]

With respect to the definition of "harass," the Court, in the 2023 Opinion and Order, explained that the "conduct that causes alarm or serious annoyance is already prohibited under N.Y. Penal Law § 240.26(3)." (2023 Opinion and Order at 20). The Court further explained "that New York's harassment statutes assume a reasonable person standard." (*Id.* (citing *People v. Lagano*, 39 N.Y.3d 108, 112 (2022))). Section 425.21(c)'s definition was "derived" from the current version of N.Y. Penal Law § 240.26(3). (Macleod Decl., Ex. A at SAC 144). No court— either state or federal—has held that the current version of § 240.26(3), on which Section 425.21(c)'s definition is based, is unconstitutionally vague. To the contrary, New York courts continue to regularly enforce this statute. *See, e.g.*, *Naas v. Wurth*, No. 23-01049, 2025 WL 353087, at *1 (N.Y. App. Div. Jan. 31, 2025). Plaintiffs, again, fail to offer any argument for the Court to abandon its prior holding, or why the Court should break new ground and throw the viability of New York's harassment statute into question.

---

[16] Plaintiffs, in opposing Defendant's motion, only addressed whether the "serves no legitimate purpose" clause provides sufficient notice, making no argument about whether this phrase provides explicit standards for law enforcement officers to apply. That argument is thus deemed waived. *See Cuoco*, 222 F.3d at 112 n.4.

iii.  Section 425.31(h)

Defendant argues that the challenged defined term—here, "interfere with"—is nearly "identical to [the definition] in FACE." (Def. Br. at 27). Plaintiffs argue that the addition of "deceptive means or otherwise" to the definition renders it impermissibly vague. (Pl. Br. at 27-28).

The Court does not agree that the inclusion of "deceptive means" renders the definition of "interfere with" vague as it is used in Section 425.31(h). The United States Congress has used the term "deceptive" acts in federal statutes "at least as early as 1938." *In re Barcelo*, 313 B.R. 135, 145 (Bankr. E.D.N.Y. 2004) (holding that 11 U.S.C. § 110(i), which bars "deceptive" acts, is not impermissibly vague). Indeed, the phrase deceptive acts "is a cornerstone of Federal Trade Commission enforcement under 15 U.S.C. § 45(a)(1)," *id.*, and this statute has repeatedly withstood vagueness challenges, *e.g.*, *F.T.C. v. Johnson*, 96 F. Supp. 3d 1110, 1142 (D. Nev. 2015). Plaintiffs fail to articulate what about the context of this action—sidewalk counseling—renders this well-recognized and understood term vague.[17]

On this record, however, the phrase "or otherwise" renders the definition of "interfere with" vague as it is used in Section 425.31(h). As discussed *supra*, the phrase "interfere with," as defined by Section 425.21(d), is standardless within Section 425.31(h). This section is not tied to physical acts or threats, and "interfere with" includes *any* non-deceptive "means." That could be almost anything. Sidewalk counseling, itself, can be a non-deceptive "means." So is chanting a provocative phrase, in this context, while protesting on a public sidewalk. Additionally, law enforcement is imbued with complete discretion to determine the "means" one uses to "interfere with," given the definition's inclusion of "or otherwise."

---

[17] Section 425.21(d)'s definition includes "deceptive means." But Plaintiffs do not argue, and the Court does not find for the reasons provided *supra*, that "means" is vague.

Accordingly, Section 425.31(h) is vague because it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited. Additionally, Section 425.31(h) fails to "provide[] explicit standards for those who apply it." *Farrell*, 449 F.3d at 486. That is, Section 425.31(h) and its related definition give "no explicit standards and place[s] unfettered discretion in the hands of" law enforcement in determining the "means" one uses to violate this section. *Farid v. Ellen*, 593 F.3d 233, 243 (2d Cir. 2010) (holding that a prison-regulation's catch-all provision barring the possession of "those items of contraband specifically identified by this rule series . . . [or] any item unless it has been specifically authorized" was vague because the rule "allowed prison officials to determine in their unbounded discretion what was and was not 'specifically authorized' in the facility"); *see also Kramer v. New York City Bd. of Educ.*, 715 F. Supp. 2d 335, 371 (E.D.N.Y. 2010) (denying a defendant's motion for summary judgment to dismiss the plaintiff's vagueness challenge where the disputed regulation contained a catch-all provision "that allowed the [defendant] 'to determine in [his] unbounded discretion what was and was not' permitted and prohibited").

## B. Facial Challenge

For the reasons stated *supra* in the Court's discussion of Plaintiffs' overbreadth challenge, Sections 425.31(a), (c), (e), and (f) are not facially vague. *Cf. Farrell*, 449 F.3d at 499 ("[T]he analysis of the merits of an overbreadth challenge is essentially the same as the analysis discussed above in the facial vagueness context."); *see also United States v. Hashmi*, No. 06-CR-00442, 2009 WL 4042841, at *10 (S.D.N.Y. Nov. 18, 2009) ("The analysis for [an] overbreadth challenge is essentially the same as a facial challenge for vagueness."). Sections 425.31(a), (c), (e), and (f) do not "reach[] a substantial amount of constitutionally protected conduct." *Farrell*, 449 F.3d at 497. To the contrary, each provision regulates conduct, not protected speech. More specifically,

Section 425.31(a) prohibits forms of "physically obstructing or blocking." Sections 425.31(e) and (f) prohibit interfering with and/or intimidating persons "[b]y force or threat of force, or by physically obstructing or blocking[.]" Section 425.31(c) prohibits "harass[ment]." As a result, Sections 425.31(a), (c), (e), and (f) are "surely valid in the vast majority of [their] intended applications." *Hill*, 530 U.S. at 733.

On the other hand, Section 425.31(h) is facially vague. First, as explained *supra* in the Court's discussion of Plaintiffs' as-applied challenge, the phrase "interfere with" is standardless as used in Section 425.31(h). Given the inclusion of "or otherwise" in Section 425.21(d)'s definition as well as the lack of a physical force or threat requirement in Section 425.31(h), this section lacks "minimal guidelines to govern law enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999). Law enforcement officials are free to determine, in their discretion, what "means" one must use when deciding whether Section 425.31(h) has been violated. Second, as explained *supra* in the Court's discussion of Plaintiffs' overbreadth challenge, Section 425.31(h), in conjunction with its related definition, "reach[es] a substantial amount of innocent conduct." *Id.*; *cf. Farrell*, 449 F.3d at 499. Indeed, Section 425.31(h), on its face, prohibits protected speech—like sidewalk counseling or peaceful protests—if one's speech "interferes with the operation of a reproductive health care facility."

Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' facial and as-applied due process claim is granted as to Sections 425.31(a), (c), (e) and (f) but denied as to Section 425.31(h).

IV.    Open Issues

Because Plaintiffs did not cross-move for summary judgment, the Court's ruling is limited to whether to grant to Defendant summary judgment. Defendant, despite seeking the "dismiss[al] [of the] complaint in its entirety" (Doc. 110), failed to address several issues raised in the Second

Amended Complaint. First, Defendant failed to make any argument about Plaintiffs' Freedom of Assembly First claim for relief. Second, Defendant failed to make any argument about Section 425.31(g).[18] Third, despite Plaintiffs alleging that the term "prevent" in Section 425.21(d)'s definition is vague (SAC ¶¶ 70, 193), Defendant makes no argument as to that term. As a result, the Court could not adjudicate these claims, and they remain extant.

In addition to these outstanding liability issues, there are additional open issues concerning whether Plaintiffs are entitled to a permanent injunction with respect to Section 425.31(h), the scope of any such injunction, and whether Section 425.31(h) is severable from the rest of Chapter 425. Likewise, Plaintiffs' request for attorney's fees under 42 U.S.C. § 1988 also remains extant.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The motion is granted to the extent that Plaintiffs' First Amendment Free Speech theory in their first claim for relief and Plaintiffs' Fourteenth Amendment Due Process claim in their second claim for relief are dismissed as to Sections 425.31(a), (c), (e) and (f). The motion is also granted to the extent that Plaintiffs' First Amendment free exercise claim in their third claim for relief is dismissed as to Sections 425.31(a), (c), (e), (f), and (h).

Defendant's motion is denied as to Plaintiffs' first and second claims for relief concerning Section 425.31(h).

Given what remains extant in this action, an in-person status conference has been scheduled

---

[18] Defendant argues that "Plaintiffs have never challenged" Section 425.31(g). (Def. Br. at 8 & n.4). However, Plaintiffs explicitly seek in the Second Amended Complaint a permanent injunction restraining Defendant from enforcing Section 425.31(g). (*See* SAC, Wherefore Clause). As Defendant has not raised the viability of Plaintiffs' claims as to Section 425.31(g), the Court cannot consider it *sua sponte*. *See In re 650 Fifth Ave. & Related Properties*, 830 F.3d at 96.

for May 6, 2025 at 12:00 p.m. to determine next steps here.

The Clerk of Court is respectfully requested to terminate the pending motion (Doc. 110).


**SO ORDERED:**

Dated: White Plains, New York
      March 14, 2025

_____
Philip M. Halpern
United States District Judge

36