UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---

OKSANA HULINSKY, et al.,

                Plaintiffs,

-against-

COUNTY OF WESTCHESTER,

                Defendant.

**OPINION AND ORDER**

22-CV-06950 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Oksana Hulinsky and Regina Molinelli ("Plaintiffs") commenced this action against the County of Westchester ("Defendant" or "Westchester County") on August 15, 2022. (Doc. 1). On December 20, 2022, Plaintiffs filed a Second Amended Complaint, challenging certain provisions of Local Law 9-2022, Chapter 425 ("Chapter 425") of the Laws of Westchester County. (Doc. 52, "SAC"). Plaintiffs brought claims under 42 U.S.C. § 1983 alleging (1) Defendant violated their First Amendment rights to free speech and assembly; (2) Defendant violated the Due Process Clause of the Fourteenth Amendment; and (3) Defendant violated their First Amendment right to free exercise of religion. (*Id.* ¶¶ 157-206). Plaintiffs sought in the Second Amended Complaint injunctive and declaratory relief, as well as an award of one dollar in nominal damages. (*Id.*, Wherefore Clause).

      The Court, on March 14, 2025, granted in part and denied in part Defendant's motion for summary judgment seeking to dismiss Plaintiffs' action. (Doc. 121, "Summary Judgment Opinion" or "SJ Op."). The parties thereafter agreed by stipulation to, *inter alia*, resolve the remaining open issues in this case on the existing evidentiary record already available to the Court together with supplemental memoranda of law. (Doc. 131; Doc. 139, "Stipulation"). Plaintiffs served their memorandum of law on May 20, 2025. (Doc. 132, "Pl. Br."). Defendant served its

memorandum of law on June 3, 2025 (Doc. 133, "Def. Br."), and Plaintiffs' reply was served on June 10, 2025 (Doc. 134, "Reply"). All the parties' papers were filed on June 10, 2025.

This Opinion and Order constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rule of Civil Procedure 52(a)(1). To the extent any statement labeled as a finding of fact is a conclusion of law, it shall be deemed a conclusion of law, and vice versa.

For the reasons set forth below, judgment is entered in favor of Plaintiffs that the 2022 version of Section 425.31(h) violated their constitutional rights, and Plaintiffs are awarded one dollar in nominal damages.

## BACKGROUND

The Court hereby incorporates and adopts by reference the background and findings of fact laid out in its Summary Judgment Opinion and recites the facts herein only to the extent necessary to adjudicate the remaining extant issues in this action.

I. Chapter 425 and Plaintiffs

On June 27, 2022, Defendant enacted Chapter 425, "adding [it] to the Laws of Westchester County to ensure safe access to reproductive health care facilities." (Doc. 52-9 at 12).[1] Chapter 425 provides for both criminal penalties and a civil cause of action. *See* §§ 425.41, 425.51. The law also contains a severability provision. *Id.* § 425.91. Chapter 425's stated purpose is to "prohibit interference with accessing reproductive health care facilities and obtaining reproductive health care services." *Id.* § 425.11.

As relevant to this Opinion and Order, Plaintiffs challenged, among other provisions, Section 425.31(h). That section made it unlawful to "[k]nowingly interfere with" the "operation[s] of a reproductive health care facility." "Interfere with" was defined in Chapter 425 to mean "to

---

[1] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

stop or to restrict a person's freedom of movement, or to stop, obstruct, or prevent, through deceptive means or otherwise."[2]

Plaintiffs are both pro-life "advocates." (SAC ¶¶ 1, 12-13). Consistent with their beliefs, they have engaged in "sidewalk counseling." (Doc. 111-3 ("Molinelli Tr.") at 12:1-5; Doc. 111-4 ("Hulinsky Tr.") at 21:22-24). This practice includes approaching individuals leaving or entering a reproductive health care facility and engaging them in an "exchange [of] ideas," "opinions," and "information" about alternatives to abortion. (Molinelli Tr. at 14:2-14, 16:2-10; Hulinsky Tr. at 13:6-23). Plaintiffs assert that the challenged provisions, for the purpose of this Opinion and Order limited to Section 425.31(h), in Chapter 425 have caused them to cease their sidewalk counseling. (Molinelli Tr. at 14:15-21; Hulinsky Tr. at 24:19-21, 26:1-6).

## II. Summary Judgment Opinion and Order

The Court, on March 14, 2025, granted in part and denied in part Defendant's motion for summary judgment seeking to dismiss Plaintiffs' action. (*See generally* SJ Op.).[3] The Court first held, after discussing recent Second Circuit precedent, that Plaintiffs had established pre-enforcement standing for all the challenged provisions in Chapter 425. (*Id.* at 8-12). Next, the Court granted Defendant's motion concerning Plaintiffs' First Amendment Free Speech theory in their first claim for relief, and Plaintiffs' second claim for relief as to Sections 425.31(a), (c), (e) and (f); and granted Defendant's motion concerning Plaintiffs' third claim for relief as to Sections 425.31(a), (c), (e), (f), and (h). (*Id.* at 16-18, 23, 25-26, 28-31, 33-34).

---

[2] The Court previously applied in the Summary Judgment Opinion, while analyzing Plaintiffs' claims, the definition of "interfere with" in Chapter 425 as amended in 2023 pursuant to established precedent. (SJ Op. at 18 n.12).

[3] This decision is available on commercial databases. *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950, 2025 WL 835646 (S.D.N.Y. Mar. 14, 2025).

Then, the Court denied Defendant's motion as to Plaintiffs' first and second claims for relief concerning Section 425.31(h).[4] The Court held that the inclusion of the phrase "deceptive means or otherwise" in Chapter 425's definition of "interfere with," combined with the lack of a physical force or threat requirement, rendered Section 425.31(h) as facially overbroad, not narrowly tailored, and vague, both as-applied to Plaintiffs and on its face. (*Id.* at 18-24, 32-34).

Finally, the Court identified several open issues left to be resolved: (1) Defendant's liability on Section 425.31(h) as Plaintiffs did not cross-move for summary judgment; (2) the viability of Plaintiffs' Freedom of Assembly theory in their first claim for relief; (3) the viability of Plaintiffs' challenge to Section 425.31(g); (4) the viability of Plaintiffs' theory that the term "prevent" in the definition of "[i]nterfere with" rendered the definition vague as used in Section 425.31(h); (5) Plaintiffs' entitlement, or not, to a permanent injunction with respect to Section 425.31(h), and the scope of any such injunction; (7) whether Section 425.31(h) is severable from the rest of Chapter 425; and (8) Plaintiffs' entitlement, or not, to attorney's fees under 42 U.S.C. § 1988. (*Id.* at 2 n.1, 34-35).

On April 28, 2025, the Court denied Plaintiffs' motion for partial reconsideration of the Summary Judgment Opinion. (Doc. 125).[5]

III.    Chapter 425's Amendments

On April 22, 2025, Westchester County amended Chapter 425 ("2025 Amendments"). (Doc. 126). The 2025 Amendments, according to the legislature's committee notes, clarify Westchester County's legislative "intent" in light of the Court's "interpretation of the plain text of

---

[4] Had Plaintiffs moved for summary judgment this post motion trial on liability and damages would have been unnecessary.

[5] This decision is also available on commercial databases. *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950, 2025 WL 1225169 (S.D.N.Y. Apr. 28, 2025).

§ 425.31(h)." (Doc. 126-1 at 3). Among other things, Westchester County amended Section 425.31(h) and the definition of "[i]nterfere with." Section 425.31(h), as amended, now prohibits: "knowingly interfer[ing] with the operation of a reproductive health care facility, or attempt to do the same, by physically interfering with, or attempting to physically interfere with (i) medical procedures or treatments being performed at such reproductive health care facility; (ii) the delivery of goods or services to such reproductive health care facility; or (iii) persons inside the facility." (*Id.* at 10).[6] The amended definition of "[i]nterfere with" now reads: "'Interfere with' shall mean to stop, to obstruct, or to restrict a person's freedom of movement." (*Id.* at 7).

IV. <u>Open Issues</u>

After the 2025 Amendments, the parties agreed to narrow the open issues to be adjudicated. Plaintiffs, at a May 6, 2025 status conference, voluntarily waived their right to continue their challenge to Section 425.31(g) and their freedom of assembly theory in the first claim for relief. The Court therefore dismissed both claims. (Stipulation at 1). The next day, Plaintiffs withdrew their claim for injunctive relief "regarding challenged provisions" subject to the 2025 Amendments. (*Id.* at 1-2; *see also* Doc. 127). Specifically, Plaintiffs withdrew their claim for injunctive relief regarding Section 425.31(h) and the definition of "interfere with" set forth in the pre-2025 Amendments. (*Id.*). Plaintiffs did not, however, withdraw their claims for declaratory relief or for nominal damages.

On May 20, 2025, the parties filed a stipulation, which the Court later so-ordered, laying out the "remaining issues in this action" and the procedure to adjudicate them. With respect to the open issues in this action, the Court must still adjudicate: (1) liability with respect to Section 425.31(h); (2) if the Court makes a liability finding with respect to Section 425.31(h), Plaintiffs'

---

[6] Unless otherwise indicated, references to Section 425.31(h) herein are to the 2022 version.

5

entitlement, or not, to nominal damages on any of their claims; and (3) whether Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988. (Stipulation at 2). The parties further agreed that these issues "shall be adjudicated by a nonjury trial" and "[i]n lieu of a formal nonjury trial, the parties shall proceed" on the papers. (*Id.*). Finally, the parties agreed that the "issues shall be decided on the existing evidentiary record already available to the parties and the Court." (*Id.*).

## STANDARD OF REVIEW

I. Standing

The Supreme Court has held that parties pressing claims in federal courts must have standing to bring their claims to ensure that there is an actual case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The 'case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).[7] A suit lacks a case or controversy "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* The case, under these circumstances, becomes "moot." *Id.* "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.*

A plaintiff has standing, and thus a live case or controversy, if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Lujan*, 504 U.S. at 560-61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury-in-fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. To establish injury-in-fact in

---

[7] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the pre-enforcement context, a plaintiff may show: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "proscribed by" the challenged law; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *accord Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022). Courts "assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

II.   First Amendment

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I. A government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional" and subject to strict scrutiny review. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A challenged law may only survive strict scrutiny review "if the government proves that [the challenged law is] narrowly tailored to serve compelling state interests." *Id.*

By contrast, "[c]ontent-neutral time, place, and manner restrictions are subject to intermediate scrutiny." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013). This level of scrutiny is a "less demanding" test. *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021). A challenged law passes muster under intermediate scrutiny review if the government proves that the challenged law is "narrowly tailored to serve a significant governmental interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

7

"As always, in construing a challenged statute, [the court] start[s] with [the challenged law's] text." *Melendez v. City of New York*, 16 F.4th 992, 1011 (2d Cir. 2021) (citing *Babb v. Wilkie*, 589 U.S. 399, 403 (2020)). Courts "ascertain the word's intended meaning by looking to (1) the word's 'ordinary, contemporary, common meaning,' . . . (2) the context in which it is used, . . . and (3) [to the extent applicable,] relevant state court decisions[.]" *Id.* (collecting cases). "For the common, ordinary meaning," courts often look to a word's "dictionary definition." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Courts will also look to canons of statutory construction to help ascertain the meaning of ambiguous words. *See, e.g.*, *Babb*, 589 U.S. at 410 n.4.

III. <u>Due Process</u>

The Fourteenth Amendment to the United States Constitution prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The vagueness doctrine is a component of the right to due process." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Id.* Where the statute at issue is "capable of reaching expression sheltered by the First Amendment, the vagueness doctrine [] demand[s] a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021). "There are two types of vagueness challenges: as-applied challenges, which concern the clarity of the law as applied to the plaintiff's conduct[;] and facial challenges, in which the court considers a statute's application to hypothetical circumstances." *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*, 657 F. Supp. 3d 504, 531 (S.D.N.Y. 2023).

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732; *accord Farrell*, 449 F.3d at 486. To sustain a facial vagueness challenge that implicates the First Amendment, a plaintiff must also show that the challenged regulation "reaches a substantial amount of constitutionally protected conduct." *Id.* at 496.

## ANALYSIS

I. Standing

The bulk of the parties' briefing is devoted to whether the 2025 Amendments rendered Plaintiffs' claims moot. Defendant argues that as Section 425.31(h) "no longer exist[s]," there is no longer a case or controversy for the Court to resolve. (Def. Br. at 7). Plaintiffs counter that their claim for nominal damages for the "chilling" of their constitutional rights saves this action from mootness. (Pl. Br. at 9).[8] Only the injury in-fact element is in dispute.

At the outset, Defendant urges the Court to adopt a bright line rule: "for nominal damages to keep a claim regarding" a repealed provision "alive," "the [provision] must have been enforced against someone." (Def. Br. at 11). Put differently, Defendant argues that, once a challenged provision is repealed, pre-enforcement "chilling" alone can never constitute an injury in-fact for

---

[8] Although Plaintiffs never withdrew their claim for declaratory judgment, they fail to advance any argument about—or even mention—this claim in either their opening brief or reply. Plaintiffs instead only discuss their claim for nominal damages and thus appear to have abandoned the declaratory-judgment claim. Regardless, the Court holds that Plaintiffs' claim for a declaration that Section 425.31(h) violates the constitution is moot. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists."). As Defendant has repealed the challenged provision, there is nothing for the Court to declare unconstitutional. Nor is there any "reason to think," and there is no evidence in the record to suggest, "that having completely revised [Section 425.31(h) and the related definition of 'interfere with'] through proper procedures, [Defendant] ha[s] any intention of returning to the prior regulatory regime." *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451–52 (2d Cir. 2002) (per curiam).

9

an action seeking nominal damages. Defendant, for this proposition, relies on the recent Supreme Court decision in *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). (*Id.* at 9-11). But that decision only addressed the third element of Article III standing, redressability. *See Uzuegbunam*, 592 U.S. at 292 ("Our holding concerns only redressability."). Indeed, as other courts have observed, *Uzuegbunam* "said nothing about what it takes to plead a cognizable past injury under Article III." *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 176 (6th Cir. 2022). *Uzuegbunam* thus does not support Defendant's proposed rule.

Nor does Supreme Court precedent that has addressed the injury in-fact element. Most relevant, the Supreme Court, in *Virginia v. Am. Booksellers Ass'n, Inc.*, declared that in the context of a pre-enforcement action, the "alleged danger of [a challenged] statute is, in large measure, one of self-censorship; a harm that can be realized *even without an actual prosecution*." 484 U.S. 383, 392 (1988) (emphasis added). Likewise, in *Babbitt v. United Farm Workers Nat. Union*, the Supreme Court explained in addressing a First Amendment challenge: "[w]hen [a] plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he *should not be required to await and undergo a criminal prosecution as the sole means of seeking relief*." 442 U.S. 289, 298 (1979) (emphasis added). In other words, contrary to Defendant's argument, it is well-established that a statute's chilling effect can suffice as a completed injury in-fact—as long as a plaintiff meets each element of the pre-enforcement-standing test discussed *supra*. This reading of controlling precedent tracks recent decisions across the country. *See, e.g.*, *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801–04 (7th Cir. 2016) (affirming an award of nominal damages in a pre-enforcement First Amendment challenge to an ordinance that had not been enforced against the plaintiff and was repealed after the plaintiff commenced the

action); *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) (reversing a district court's ruling granting defendants' summary judgment motion on standing and finding that the plaintiff's "request for nominal damages redresses her alleged retrospective harm" of being chilled by the challenged law in a pre-enforcement action); *McDonald v. City of Pompano Beach, Fla.*, 742 F. Supp. 3d 1202, 1226, 1247–48 (S.D. Fla. 2024) (granting the plaintiff nominal damages for the chilling effect of an unconstitutional ordinance provision, despite the defendant repealing the ordinance after the plaintiff commenced the action and the challenged provision "never [being] enforced").

Defendant's policy concerns are misplaced. Defendant warns that without its bright-line rule, "litigants could too easily manufacture Article III jurisdiction." (Def. Br. at 12). But this argument ignores the standard to bring a pre-enforcement challenge. Not everyone can challenge Section 425.31(h) and seek nominal damages. Only those persons that can demonstrate (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "proscribed by" the challenged law; and (3) that "there exists a credible threat of prosecution thereunder" may be entitled to nominal damages. *Susan B. Anthony List*, 573 U.S. at 159; *see also Cerame v. Slack*, 123 F.4th 72, 81 & n.12 (2d Cir. 2024) (explaining that the pre-enforcement standing inquiry for a First Amendment claim does not "turn on whether there is 'a real and imminent fear of . . . chilling'" but rather on the "three-pronged test that the Supreme Court set forth in *Susan B. Anthony List*" because the presence of "a credible threat of prosecution" demonstrates that a plaintiff suffered more than "subjective chill[ing]" (alteration in the original)).

Under this standard, the Court finds, based on the record presented, that this action is not moot, and Plaintiffs have established an injury in-fact that is redressable by their claim for nominal damages. First, both Plaintiffs testified during their depositions that they regularly engaged in

"sidewalk counseling" in front of abortion clinics but stopped after the passage of Chapter 425. (Hulinsky Dep. at 21:22-24 (Q. "Prior to the enactment of Chapter 425, how often did you do sidewalk counselling?" A. "Okay. So, how often. Once a week."); *id.* at 24:19-21 (Q. "Once Chapter 425 was enacted, did you continue to perform sidewalk counselling?" A. "No. No"); Molinelli Dep at 12:3-5 ("I would say I, basically, counselled maybe once or twice a month for, I would say -- well, since 2018 until 2020, two years."); *id.* 14:15-17 (Q. "Once Chapter 425 was enacted, did you continue sidewalk counselling?" A. "No, sir.")). Plaintiffs also singled out in their depositions Chapter 425's definition of "interfere with" as affecting their pro-life advocacy. (Hulinsky Tr. at 61:10-24; Molinelli Tr. at 49:13-24, 50:1-14.). This testimony more than suffices to establish Plaintiffs' intention to engage in a course of conduct arguably affected with a constitutional interest. Second, Plaintiffs' testimony during their depositions demonstrates that the nature of this counseling required them to get close to the person with whom they were engaged in conversation. (Hulinsky Tr. at 27:11-21 (generally "an arm-length away" from persons with whom she engaged in counseling); Molinelli Tr. at 17:12-15 (generally "get[ting] within a foot of the car" of a person whom she engaged in counseling). The Court has already found that this undisputed fact is sufficient to establish that all of the challenged provisions in Chapter 425—including Section 425.31(h)—"proscribed" Plaintiffs' conduct. (SJ Op. at 11). Finally, the Court sees no reason to disturb its prior holding that Plaintiffs faced a credible threat of prosecution. (*Id.*). To that end, the Second Circuit recently held, while analyzing a separate, now-repealed provision of Chapter 425, that the plaintiff there had "no reason to doubt that [Westchester] County will enforce its recently enacted law against those who violate its terms." *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 139 (2d Cir. 2023). In short, Plaintiffs self-censored in response to the credible threat that Westchester County would enforce, among other provisions, Section 425.31(h)

against them.

Accordingly, Plaintiffs have standing to challenge Section 425.31(h) and seek retrospective relief through nominal damages.

II.     Liability

Before turning to Plaintiffs' entitlement or not to nominal damages, the Court must first make a liability determination. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 431 (2d Cir. 1995) (explaining that a plaintiff may be "entitled to an award of nominal damages" in a Section 1983 action if she "has proven a civil rights violation"); *see also* Restatement (Third) of Torts: Remedies § 38 TD No 3 (2024) (explaining that a plaintiff must "establish liability" to be awarded nominal damages). After the Court's ruling on Defendant's summary judgment motion and Plaintiffs' agreement to withdraw some of their claims, only two theories of liability remain to be adjudicated: (1) whether Section 425.31(h) violated Plaintiffs' First Amendment rights to free speech; and (2) whether Section 425.31(h) was impermissibly vague under the Due Process Clause of the Fourteenth Amendment.[9]

The Court incorporates by reference the legal findings in the Summary Judgment Opinion. The Court, in denying Defendant's summary judgment motion on Section 425.31(h), held that this provision failed intermediate scrutiny and was facially overbroad because it criminalized "large swaths of protected speech." (SJ Op. at 18-24). The Court also held, with respect to the as-applied and facial Due Process analysis, that the phrase "interfere with" as used in Section 425.31(h) was

---

[9] Plaintiffs never withdrew their theory that the term "prevent" rendered the definition of "interfere with" vague as used in Section 425.31(h). Nevertheless, Plaintiffs make no arguments about the term "prevent" in either their opening brief or Reply. Accordingly, the Court deems this theory abandoned. *See Brown v. Kellogg Sales Co.*, No. 20-cv-07283, 2022 WL 992627, at *5 (S.D.N.Y. Mar. 31, 2022) (deeming a theory of liability "abandoned" because the plaintiff failed to discuss it in its brief); *see also Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("[W]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned[.]"). In any case, the Court *infra* enters judgment in Plaintiffs' favor on their challenge to Section 425.31(h).

"standardless," thus bestowing law enforcement officials "complete discretion." (*Id.* at 32-33).

Defendant does not challenge any of these holdings. Instead, Defendant argues that Plaintiffs cannot make out their Section 1983 claims because they fail to establish that "the section of law that the Court deemed unconstitutional [*i.e.*, Section 425.31(h)]"—as compared to the other challenged provisions in Chapter 425—"actually injured" them. (Def. Br. at 14). Thus, Defendant continues, "Plaintiffs cannot prove causation." (*Id.*). The Court disagrees. As Plaintiffs spotlight (Reply at 7), Defendant's argument overlooks the fact that Plaintiffs are only seeking nominal damages. Time and again, the Supreme Court and Second Circuit have reaffirmed the rule that a plaintiff is entitled to nominal damages if the plaintiff can establish a violation of her constitutional rights—even absent a showing that the violation caused an actual injury. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("[T]he denial of procedural due process [is] [] actionable for nominal damages without proof of actual injury[.]"); *Amato v. City of Saratoga Springs*, N.Y., 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."); *Patterson v. Coughlin*, 905 F.2d 564, 568 (2d Cir. 1990) (noting that a plaintiff is entitled to nominal damages for a violation of constitutional rights, even absent a showing that a "deprivation" of the plaintiff's rights "was caused by the violation"). As Plaintiffs are only seeking nominal, rather than compensatory, damages in this Section 1983 action, Plaintiffs do not need to establish that Section 425.31(h) "actually injured" them. (*Contra* Def. Br. at 14).

Accordingly, in light of this well-established rule and the Court's prior rulings in the Summary Judgment Opinion, the Court finds that Defendant is liable under 42 U.S.C. § 1983 for

14

violating Plaintiffs' First Amendment rights to free speech and Fourteenth Amendment rights to due process. Thus, Plaintiffs are entitled to damages.

III. Damages

As discussed *supra*, Plaintiffs only seek nominal damages. Because the Court finds that this action is not moot and that the repealed version of Section 425.31(h) violated Plaintiffs' substantive constitutional rights, Plaintiffs are entitled to an award of nominal damages. *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) ("It is well established that 'an award of nominal damages is not discretionary where a substantive constitutional right has been violated.'" (quoting *Gibeau v. Nellis*, 18 F.3d 107, 110–11 (2d Cir.1994), and citing *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir.1984))).

Accordingly, the Court awards Plaintiffs nominal damages in the amount of one dollar ($1.00).[10]

IV. Section 1988

Section 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of [Section 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Courts in this Circuit follow a two-step inquiry to determine whether to award of attorney's fees under Section 1988. *See Diamond v. O'Connor*, 417 F. App'x 104, 105 (2d Cir. 2011) (summary order). First, a court must determine whether the party seeking fees is a "prevailing party." *Id.* "A prevailing party is one who has favorably effected a material alteration of the legal relationship of the parties by court order." *Garcia v. Hebert*, 622 F. App'x 21, 22 (2d Cir. 2015) (summary order). Second, the court must

---

[10] Plaintiffs also asserted in the Second Amended Complaint that each of the challenged provisions in Chapter 425 is non-severable. (SAC ¶ 191). Plaintiffs, however, neither press their severability theory in their memorandum of law nor mention it in the Stipulation. As such, Plaintiffs have abandoned this theory with respect to Section 425.31(h). *See Malik*, 841 F. App'x at 284.

determine whether the requested fee is "reasonable in view of the plaintiff's overall success." *Diamond*, 417 F. App'x at 105.

Here, the parties appear to agree that a plaintiff who receives nominal damages is a "prevailing party." (*See* Pl. Br. at 14; Def. Br. at 16). That understanding of "prevailing party" status tracks controlling precedent. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988.").

Accordingly, the Court finds that Plaintiffs are "prevailing part[ies]" within the meaning of Section 1988 and eligible for fees. Plaintiffs' entitlement, per the Stipulation, to a fee award and the reasonableness of the amount of any such award will be resolved separately.[11]

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiffs are entitled to judgment in their favor that the 2022 version of Section 425.31(h) violated their constitutional rights; and determines further that Plaintiffs are entitled to an award of one dollar ($1.00) in nominal damages.

Because the Court also finds that Plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. § 1988, they are directed to file their application for attorneys' fees and costs, including supporting records, within 30 days of the date of this Order. Defendant's opposition, if any, shall be filed within 14 days of the filing of Plaintiffs' fee application.

The parties shall meet and confer and file, within 30 days of the date of this Order, a proposed judgment for the Court's consideration.

---

[11] The Court notes that "while prevailing parties are eligible for fees under § 1988, they are not invariably entitled to them." *Husain v. Springer*, 579 F. App'x 3, 4 (2d Cir. 2014) (summary order). Rather, the Court must consider the "degree of success obtained" through this litigation to determine Plaintiffs' "entitlement to a fee award and, relatedly, the reasonableness of the amount of that award." *Id.* (vacating a district court's fee award under Section 1988 and remanding to recalculate because of the "gap between the relief requested in Appellants' complaint and the relief they actually obtained"). The parties are directed to meet and confer within 30 days of the date of this Order to determine whether they can agree to the amount due Plaintiffs for reasonable attorney's fees.

<div style="display:flex; justify-content:space-between;">
<div>
Dated: White Plains, New York<br>
       August 12, 2025
</div>
<div>
**SO ORDERED:**

_____<br>
Philip M. Halpern<br>
United States District Judge
</div>
</div>